To: Steve
From: Dottie
Re: Standardized Testing/Eligibility Determination/Child Study Team Mtg.
October 22, 2001

    1. These are some ideas for your review that I thought might better structure and streamline testing coordination:
- Assign a counselor to jointly coordinate each of the standardized tests {i.e., Joel for PSAT; Liz for ASVAB; and Tina for DSTP (to assist myself and Steve)}.
- Assign counselors to assist with testing for the entire day of the tests as well as for four hours on the following day.
- Have the vice-principals hand out and collect materials in an effort to enhance accountability in terms of counts, return of materials, etc..
- Enlist the Content Specialist's help since they are not assigned a first period.
- Have the Shared Approach Sp Ed teachers serve as second proctor.
- Secure Sp Ed/504 Accommodation list from Sp Ed Coordinator to attach to rosters.

    2. In follow-up to your question regarding eligibility determination criteria, I found that the regulations were recently changed. The updated regulations are as follows:
    Eligibility Criteria for Learning Disability: In order for an IEP team to determine eligibility for Special Education services under the learning disability category, the following is required:
- Written documentation for the formative intervention process used with the student. (This refers to regulations related to Referral to Instructional Support Team. Referral to the school's instructional support team is a process whereby teachers enlist the help of a team to assist in the identification of potential instructional strategies or solutions for learning and behavior problems. The instructional support team process may or may not lead to referral for initial evaluation to determine eligibility and possible need for special education services. **Documentation of the process should be comprehensive (including baseline and outcome data) and include strategies such as: curriculum based assessment, systematic observation, functional assessment, current health information and analyses of instructional variables.** Referrals for an individual child that do not contain all required documentation, including the evidence as described above, may be returned to the instructional support team with a request for the required information. Thus the documentation needs to specifically include a clear statement of the student's presenting problem(s); summary of diagnostic data collected and the **sources** of that data; and summary of interventions implemented to resolve the presenting problem(s) and the **effects** of the interventions; and
    -A comprehensive psychological assessment to evaluate the student's reasoning and cognitive processes in order to rule out mental retardation and emotional disturbance, and
    -A severe discrepancy between achievement and intellectual ability in one or more of the following areas: oral expression, listening comprehension, written expression, basic reading skills, reading comprehension, mathematics calculation or


PLAINTIFF'S EXHIBIT 1

mathematics reasoning, based on correlation tables approved by the Department of Education.

The exclusion clause which stated that ".. evidence of low achievement in language arts (reading, writing, listening, speaking) and/or math. Low achievement is defined as at or below the 5th percentile on norm referenced measures concomitant with daily class measures of performance; .." was eliminated.

There are some alternative tests we may use such as the Wechsler Memory Scale; Peabody Picture Vocabulary Test; Writing Free Perception Test; and the comprehensive battery of the WIAT II.

Additionally, in terms of the referral process, it may be helpful to establish again that if a parent calls with questions regarding possible testing, he or she needs to be referred to the psychologist. Also if a staff member believes testing is needed, discuss it with the psychologist before discussing testing with the parent.

A procedure of stamping a "received date" on correspondence sent to the Special Education office would be helpful in maintaining timelines.

3. In considering the functions of the Child Study Team it is important that we make use of our bi-monthly Sp Ed meetings to address Functional Behavior Assessments (initial and updating of); counseling; behavior plans; etc. Also scheduling students on the agenda who continue to struggle academically in spite of the IEP goals and objectives that are in place seems important.

Date:    February 4, 2003

To:    Steve Huber, Supervisor of Special Education
From:    Dorothy Houlihan, Coordinator of Special Education/School Psychologist
Re:    **Staff Non-Compliance with Federal IDEA Requirements**

There is a serious problem concerning insubordination which may have repercussions concerning our compliance with the Federal/State IDEA requirements and which requires your guidance and our action.

As we discussed, Lynn Van Hauter has not been in compliance with regulations concerning the IEP's goals and objectives. Despite training and special meetings to discuss her implementation of the requested corrections, she has not complied. Her insubordination makes her assignments out of compliance with IDEA requirements and could result in legal repercussions in the event of a due process action. Further actions seem warranted to correct this ongoing problem with Mrs. Van Hauter.



One example of Mrs. Van Hauter's behavior is that she has failed to make corrections on Josh Bonsall's IEP goals and objectives and submit new goals and objectives after four requests. Another example of her insubordination occurred today. In order to facilitate her compliance, she was given a set of goals and objectives developed by a group composed of several SPED teachers and me to use as a model. I explained again that the goals and objectives examples given to her were developed on the required EDM information. I redirected her focus when she began to discuss unrelated issues; and again referred her to the IEP Process booklet provided through DOE and the AMES manual for verification. She objected to completing her assignment vociferously. She was unprofessional in behavior (e.g. stated she did not like the conversation and indicated she would not comply with my requests for the goals and objectives.) She turned her back and left.

What further action is required to rectify this situation using the Policies and Procedures of the School and district? Your expertise and direction would be greatly appreciated.

Thank you.


DLH:dh



PLAINTIFF'S EXHIBIT 2

Dorothy Houlihan - procedures                                                                                   Page 1

From:     Dorothy Houlihan
To:       Walls-Culotta, Sandy
Date:     1/12/04 1:40PM
Subject:  procedures

Sandy in follow-up to your request that I notify you of any noted procedural errors rather than notify Carol, I have noted as I reported on Friday 1-9 the Iep team was dismissed prior to IEP completion and a 10-day waiver was used to correct the ommision of IEP development being included on the mtg. invitation rather than parent initials on original invitation indicating approval to develop IEP at that mtg.
In looking at the January calendar the EDM's scheduled for 1-14 and 1-23 should be IEP's, not EDM's. I explained this before and requested IEP's rather than EDM's but it was disregarded.
Also 'permission to test' forms are being mailed out indicating informal assessment w/o it being addressed by the IEP team. How would you like these situations to be handled? Thanks Dottie

Many of the invitations to EDM/IEP thru out the year have not indicated the purposes of the mtg. usually only assessment review is checked. upon notifying Sandy of need to check all purposes of mtg, she refuted what I was saying. I also made suggestions on possible changes on form to address "will do IEP if qualifies". Recently, I noticed changes have been made to the form to reflect my suggestion even though no one notified me of the change.

PLAINTIFF'S EXHIBIT 3

Dorothy Houlihan - EDM                                                                 Page 1

**From:** Dorothy Houlihan
**To:** Walls-Culotta, Sandy
**Date:** 1/15/04 3:26PM
**Subject:** EDM

Sandy also the EDM on 1/14 should not have been an EDM. Sandy this is very awkward for me since I feel like a tattle-tale. I think we need to revisit our plan if that's OK w/ you. Dottie

To:     Dottie Houlihan

Date:   January 20, 2004

From:   Sandy Walls-Culotta

c:      Steve Huber
        Carol Schreffler
        Carol Terry
        Wayne Dukes

RE:     Meeting concerning reevaluation discussion

Dottie,
Thank you for the copies that you gave me, I had hoped that you would stop and see me so that we could discuss it instead of putting it in my mailbox. After reviewing the materials you gave me you still have not provided anything that states an IEP meeting must be held to review what data needs to be collected. The sentence that you had highlighted, p 109, does not say a meeting is required, just that all technical and procedural safeguards in law and regulation must be followed. When reviewing the section from the law and state regulations on evaluation and reevaluation it specifically states a meeting is not required, that it can be conducted through contacting the team members. Because of your concern we also contacted Jennifer Brierley, district's special education attorney, to ask her opinion. She told us that a meeting is not required.

As I stated in our meeting on January 15, I appreciate your concern. For future concerns, Steve and I will investigate your concerns and then make a decision based on the law and state procedures. Steve and I are the ones responsible for the final decisions made concerning procedures.

Please see me if you have additional questions concerning this situation.


PLAINTIFF'S EXHIBIT 4

To:     Dottie Houlihan

Date:   January 20, 2004

From:   Sandy Walls-Culotta

RE:     Concerns about IEP procedures

c:      Carol Terry
        Steve Huber
        Carol Schreffler
        Wayne Dukes

Dottie:

This is a follow-up to your concerns about identifying the data needed for a reevaluation in the IEP meeting prior to the reevaluation. After reviewing the policy handbook (Federal Law and state procedures) and a meeting with Steve and Carol to discuss this, IEP teams will discuss the data needed for the reevaluation meeting at the prior IEP meeting.

You had a concern about the review of progress (accountability) during an IEP meeting. This is being addressed through training as the process is changing with the Transition IEP format. Carol has set up training for all special education staff for additional training in these areas. I know one was held last week, if you weren't able to attend please see Carol for the information.

If you have any additional questions or concerns please see me.

**From:** Dorothy Houlihan
**To:** Huber, Steve
**Date:** 2/23/04 2:40PM
**Subject:** Re: test-perm

Steve - Did you specify w/ them the exact procedures and could you please send me the specific procedures. It was my understanding from Sharon she was not aware of the procedures and since the letter is just being sent out that in itself is inconsistent with the procedures you sent me as I understand them. I am testing right now and thus can not really go in much detail but the procedure from the procedures manual as I understand them are different from the past and also that I'm doing both ed and psychological testing changes the previous procedure. I would like to schedule for all of us to meet and firm up the process. For right now, do you me to sign the letter as it is w/o reviewing it. Let me know and I'll do as you say.   thanks Dottie

>>> Steve Huber 02/23/04 01:29PM >>>
Dottie,
Carol and Sharon are aware of the procedures I outline to you in my e-mail from 2/20/04. Please sign the permission form I placed in your mailbox for Eric Beyer and return to Sharon so that we can get it mailed.
Thanks,
swfh

>>> Dorothy Houlihan 2/23/2004 12:01:00 PM >>>
Sharon - I did not sign the permission to test form because I am unclear what my responsibilities are re: obtaining permission to test  To date, the areas to be tested were automatically checked on the computer and the form given to me for signature. Since the form is going out under my signature I would like some clarification from my superiors as to the procedure they want.  Hopefully we can get that addressed quickly.  thanks for your patience, efforts and the good job you always do. It is a pleasure to work with you.  Dottie

| Dorothy Houlihan - EDM's | Page 1 |
|---|---|

**From:** Dorothy Houlihan
**To:** Bennington, Sharon
**Date:** 2/27/04 10:51AM
**Subject:** EDM's

Good grief, Sharon - I just looked at the revised March IEP calendar and there are 12 EDM's scheduled for March and I only have consents for 2 of the students. One is the EDM on the 25th and that student's assessment has already been completed. I'm concerned that it will be very difficult to not have to continue w/ re-scheduling meetings if we don't get the paperwork. At least after I notified Sandy this past December that we need to address re-evaluation needs at the IEP mtg the year prior to tri-ennial due date, I think the teachers are doing so. Hopefully then you won't continue to have this problem of obtaining consents at the last moment. Hang in there- I know you have been very frustrated w/ unclear procedures but hopefully we can slowly get them in place. I think Steve has made some in-roads in working w/ you on them this week. As I have always told you, I think you are doing an excellent job and I hated seeing you so distressed yesterday because of being unclear about what procedures to follow. I think it is going to get more defined and you will know exactly what procedure to follow. As alwyas let me know if there is any way I can be of help.    Chow   Dottie

PLAINTIFF'S EXHIBIT 5

Dorothy Houlihan - response to request to meet and clarify procedures                                                                 Page 1

**From:** Dorothy Houlihan
**To:** Huber, Steve
**Date:** 3/2/04 10:25AM
**Subject:** response to request to meet and clarify procedures

Hi Steve - Sharon informed me this morning that you had answered procedural questions from her related to my job responsibilities, however, she did not feel comfortable sharing them with me without your consent. I would like to request again that you, Sharon, Carol Terry and myself meet to decide on the procedures in question w/in the SPED department and to receive answers to the procedual questions I recently e-mailed to you. I understand that you have been intensely working with Sharon and Carol Terry recently to address these procedures, however I have not been asked to be involved and thus am not aware of actions being taken and/or clarification of procedures being issued. I know your schedule is always extremely busy and think including me would save time so questions can be addressed with all of us at one time; with all of us hearing the same thing; and all of us hearing each others' input. I believe in order to perform my job duties following the procedures you have put in place, it is important for me to be provided with that information and to be involved as part of the team of you, Sharon Bennington, Carol Terry and myself in addressing procedures. Thank you for your consideration of my request and as always I am glad to perform my job following your directives. If you think there is a better approach I am glad to do as you think is best. Dottie

**From:** Dorothy Houlihan
**To:** Huber, Steve; Terry, Carol; Walls-Culotta, Sandy
**Date:** 3/12/04 1:41PM
**Subject:** Re: DVR

Sandy - My first year here in the district I attended a school psych conference where Tom Pledgie did a presentation. As I understood it, he said that procedure was changed and the schools were to provide evaluations only for cognitively limited students.  Dottie

>>> Sandy Walls-Culotta 03/12/04 07:32AM >>>
Dottie - This was instituted approximately 10 years ago to assist in the transitioning of students from high school to DVR services. It is applicable to all disability categories that require psychologicals for determination. It would not be required of the physical disability categories.

>>> Dorothy Houlihan 3/12/2004 7:28:33 AM >>>
Carol- Did you check w/ DOE to ask if the school system is required to provide that evaluation and, if so, for which disability categories? Dottie

>>> Carol Terry 03/11/04 01:59PM >>>
I spoke with Jeanne from DVR this morning in reference to whether they required a psychological less then three years old. She said yes and they will be sending me a copy of their requirements in writing.