## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DOROTHY HOULIHAN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C.A. No.  05-00194 JJF |
| v. | ) | |
| | ) | |
| SUSSEX TECHNICAL SCHOOL DISTRICT, | ) | TRIAL BY JURY OF TWELVE |
| SUSSEX TECHNICAL SCHOOL DISTRICT | ) | DEMANDED |
| BOARD OF EDUCATION, SANDRA WALLS- | ) | |
| CULOTTA, individually, and in her official | ) | |
| capacity, and STEVE HUBER, individually, and in | ) | |
| his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT

WHITE AND WILLIAMS, LLP
JOHN D. BALAGUER
Bar ID #2537
WILLIAM L. DOERLER
Bar ID. # 3627
P.O. Box 709
Wilmington, DE 19899-0709
302-467-4508

Attorneys for Defendants Sussex
Technical School District, Sussex
Technical School District Board of
Education, Sandra Walls-Culotta,
and Steve Huber

Date:  June 6, 2005

# TABLE OF CONTENTS

Page

Statement of the Nature and Stage of Proceedings ........................................................1

Summary of Argument ................................................................................................2

Statement of Facts......................................................................................................3

Argument .................................................................................................................4

    I.      Standard for Motions to Dismiss .................................................5

    II.     The Individuals with Disabilities Education Act ......................................5

    III.    Rehabilitation Act ........................................................................7

          A.    Standard for Evaluating Retaliation Claims Under the RA.......................................................................................8

               1.    Although Retaliation Claims are Subject to a Burden Shifting Analysis, the Plaintiff Retains the Ultimate Burden of Proof.............................................9

               2.    To Rise to the Level of an Adverse Employment Action, an Employer's Conduct Must Be Serious and Tangible Enough to Alter an Employee's Compensation, Terms, Conditions, or Privileges of Employment .........................................11

               3.    Establishing a Casual Link Requires More than the Mere Fact that the Adverse Employment Action Occurred after a Protected Activity ....................13

          B.    The Allegations in the Complaint Fail to State a Retaliation Claim under the RA....................................................14

    IV.    First Amendment Retaliation...............................................................26

          A.    Public Concern.........................................................................27

          B.    Balancing of Interests ...............................................................28

          C.    The Plaintiff's Statements Were Not Matters of Public Concern...................................................................................30

DOCS_DE 110446v1

V.    The Plaintiff's State Law Claim Fails .......................................................32

VI.    The Plaintiff's Complaint Fails in All Respects as to Defendant Huber Because the Complaint Does Not Contend That He Was Responsible For Her Termination In Any Manner ................................32

VII.    Alternative Motion for a More Definite Statement ................................32

Conclusion ........................................................................................................33

Exhibits                                                            Exhibit #

*C.M. v. Board of Education of the Union County Regional High School District* ...................................................................................................... A

*Tucker v. Merck & Co., Inc.* ............................................................................ B

*Washington v. Delaware* ................................................................................ C

# TABLE OF AUTHORITIES

## CASES

Aman v. Cort Furniture Rental Corp., 85 F.3d 1074 (3d Cir. 1996) ................................10

Arnett v. Kennedy, 416 U.S. 134 (1974) ...........................................................................29

Badassare v. New Jersey, 250 F.3d 188 (3d Cir. 2001)...................................26, 27, 28, 29

Bartholomew v. Fischl, 782 F.2d 1148 (3d Cir. 1986) ......................................................32

Bristow v. Daily Press, Inc., 770 F.2d 1251 (4th Cir. 1985) ............................................12

Burlington Indus., Inc. v. Ellerth, 118 S. Ct. 2257 (1998)...............................................11

C.M. v. Board of Education of the Union County Regional High School Dist.,
    2005 WL. 899927 (3d Cir.)...............................................................6, 7, 19, 20, 26

Coale v. St. Dept. of Ed., 162 F. Supp. 2d 316 (D. Del. 2001)............................................6

Colgan v. Fisher Scientific, 935 F.2d 1407 (3d Cir. 1991), cert. denied sub nom,
    Fisher Scientific v. Colgan, 502 U.S. 941 (1991) .................................................12

Connick v.Myers, 461 U.S. 138 (1983) ........................................................27, 28, 29, 30

Crenshaw v. Georgetown University, 23 F. Supp. 2d 11 (D. D.C. 1998), aff'd,
    1194 F.3d 173 (D.C. Cir. 1999)......................................................................13

Czurlanis v. Albanese, 721 F.2d 98 (3d Cir. 1983) ..........................................................28

Drinkwater v. Union Carbide Corp., 904 F.2d 853 (3d Cir. 1990)....................................10

Foster v. Time Warner Entertainment Co., L.P., 250 F.3d 1189 (8th Cir. 2001)..............10

Gray v. York Newspapers, Inc., 957 F.2d 1070 (3d Cir. 1992)...................................12, 16

Krouse v. American Sterilizer Co., 126 F.3d 494 (3d Cir. 1997)............................9, 13, 14

McDonnell Douglass Corp. v. Green, 411 U.S. 792 (1973)...............................................10

Mondzelewski v. Pathmark Stores, Inc., 162 F.3d 778 (3d Cir. 1998)........................11, 12

Morris v. Crow, 142 F.3d 1379 (11th Cir. 1998)..............................................................27

Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977).........................27

Pickering v. Brd. of Ed. of Twp. High Sch. Dist. 205, Will County, Illinois, 391 U.S. 563 (1968)..................................................................................................26, 27, 29

Polk v. Cent Susquehanna Interm. Unit 16, 853 F.2d 171 (3d Cir. 1988), cert. denied sub nom, Central Columbia School Dist. v. Polk, 488 U.S. 1030 (1989)..................................................................................................................6

Rappa v. Hollins, 991 F. Supp. 367 (D. Del. 1997)..........................................27

Robinson v. City of Pittsburgh, 120 F.3d 1289 (3d Cir. 1997)....................12, 13

Roseman v.Ind. Univ. of Pennsylvania at Ind., 520 F.2d 1364 (3d Cir. 1975), cert. denied, 424 U.S. 921 (1976) ................................................................28, 29

Sabbrese v. Lowe's Home Centers, Inc., 320 F. Supp. 2d 311 (E.D. Pa. 2004) ................13

Shaner v.Synthes (USA), 204 F.3d 494 (3d Cir. 2000) ................................10, 11

Shiring v. Runyon, 90 F.3d 827 (3d Cir. 1996) .....................................................7

Shore Regional High School Board of Education v. P.S., 381 F.3d 194 (3d Cir. 2004) ........................................................................................................5, 6

Sullivan v. City of Pittsburgh, Pennsylvania, 811 F.2d 171 (3d Cir. 1987), cert. denied sub nom, City of Pittsburgh, Pa v. Sullivan, 484 U.S. 849 (1987) ....................9

Sweet v. Tigard-Tualatin Sch. Dist., 124 Fed.Appx. 482 (9th Cir. 2005)...........8

Swineford v. Snyder County Pennsylvania, 15 F.3d 1258 (3d Cir. 1994) ................28, 29

Trump Hotels and Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478 (3d Cir.1998) ..........................................................................................................5

Tucker v. Merck & Co., Inc., 2005 WL. 1176565 (3d Cir.)..............................13

W.B. v. Matula, 67 F.2d 484 (3d Cir. 1995)........................................................8

W.G. v. Brd. of Trustees, 960 F.2d 1479 (9th Cir. 1992).....................................6

Warth v. Seldin, 422 U.S. 490 (1975)..................................................................9

Washington v. Delaware, 2003 WL. 21697403 (D. Del.) ................................13

Weber v. Cranston Sch. Committee, 212 F.3d 41 (1st Cir. 2000)......................8

Weston v. Pennsylvania, 251 F.3d 420 (3d Cir. 2001) ...............................................12, 17

Woodson v. Scott Paper Co., 109 F.3d 913 (3d Cir. 1997), *cert. denied*, 118 S.Ct.
    299 (1997) .................................................................................................................9, 11,
                                                                                                          13, 14

## STATUTES

20 U.S.C. § 1401(8) ..........................................................................................................5

20 U.S.C. § 1412(1) ..........................................................................................................5

20 U.S.C. § 1414(3) ..........................................................................................................6

29 U.S.C. § 794 .............................................................................................................8, 9

29 U.S.C. § 794a(2) ..........................................................................................................9

29 U.S.C. § 794(d) .....................................................................................................1, 4, 8

42 U.S.C. § 12111, et. seq..................................................................................................8

42 U.S.C. § 12203 .............................................................................................................8

42 U.S.C. § 12203(a) .....................................................................................................8, 15

42 U.S.C.A. § 2000d .........................................................................................................9

34 C.F.R. § 100.7(e) ..........................................................................................................9

34 C.F.R. § 300.505 .........................................................................................................20

34 C.F.R. § 300.531 .........................................................................................................19

34 C.F.R. § 300.7 .............................................................................................................6

Del. Code Ann. tit. 14, 3120, et. seq..................................................................................6

## OTHER AUTHORITIES

Del. Dept. of Ed. Reg. 925, § 3.1 ......................................................................................20

DOCS_DE 110446vTOA

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

The plaintiff filed a complaint in the United States District Court for the District of Delaware on April 4, 2005.  The Complaint alleges that the defendants discriminated against the plaintiff in violation of the First Amendment of the United State Constitution and the Rehabilitation Act, 29 U.S.C. § 794(d), when they retaliated against her by wrongfully terminating her employment contract.

The Complaint was subsequently served upon the defendants and, by agreement of the parties, the time for filing a responsive pleading was extended until June 6, 2005. The defendants have filed a Motion to Dismiss for Failure to State A Claim or, in the Alternative, Motion for a More Definite Statement.  This is the defendants' Opening Brief in support of their motion.

DOCS_DE 110446v1

## SUMMARY OF ARGUMENT

1. The plaintiff's complaint fails to state a claim under the Rehabilitation Act (RA) because the Complaint fails to establish that the plaintiff engaged in protected activity under the RA because she could not reasonable have believed that the claimed procedural violations deprived any student of an educational opportunity.

2. The plaintiff's First Amendment retaliation claims fail because even if the plaintiff's speech addressed a matter of public concern, the disruptive nature of the speech and the manner in which it was delivered created actual or potential disharmony in the workplace. As such, the employers' interest outweighed the plaintiff's as a matter of law.

3. Because the plaintiff's RA claims and First Amendment claims fail, the plaintiff's wrongful termination claim fails because the Complaint fails to establish that there has been a violation of public policy.

DOCS_DE 110446v1

## STATEMENT OF FACTS

For purposes of this motion to dismiss, the facts are as stated in the Complaint and its attached exhibits.

DOCS_DE 110446v1

## ARGUMENT

Plaintiff was a school psychologist for the Sussex Technical School District (STSD). On or about April 5, 2004, the Sussex Technical School District Board of Education ("the Board") voted not to renew the plaintiff's contract. Plaintiff contends that her non-renewal was wrongful, in violation of public policy. She also contends that her non-renewal violated the Rehabilitation Act (RA), 29 U.S.C. § 794(d), as well as rights guaranteed to her under the First Amendment of the U.S. Constitution. According to Plaintiff, the defendants voted not to renew her contract because she identified areas of potential noncompliance with the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, et. seq., to the defendants and sought correction of these identified deficiencies. The plaintiff's Rehabilitation Act claim fails to state a claim upon which relief may be granted.

Although the plaintiff has alleged "violations" of the IDEA, the plaintiff's complaint fails to identify one single violation or cite to a section of the IDEA that has been violated. This failure is not unexpected as there were no violations. Rather, the "violations" identified by Plaintiff were primarily disagreements over internal operating procedures, which do not amount to "protected activity."

This is a wrongful termination claim by a disgruntled employee masquerading as an employment discrimination case. The allegations and exhibits to the complaint establish that the plaintiff had difficulty working with other staff members, a problem which escalated after she resigned her position as the Special Education Coordinator. The plaintiff continually demanded changes to conform to her way of thinking, and the way things were done at her old school, in Maryland. Her changes, however, were not mandated by the IDEA. Some of the plaintiff's suggestions were implemented, some

-4-

were not.  There is no indication in the Complaint, however, that any of the changes implemented corrected violations of the IDEA or that any student was deprived of an educational opportunity.  The alleged deficiencies identified by the plaintiff, therefore, do not amount to protected activity for purposes of the RA.  In addition, the statements about alleged deficiencies are not protected under the First Amendment because either they do not address matters of public concern or, if they do, the defendants' interest in maintaining a cohesive working environment outweighed the plaintiff's free speech interests.

The Court should end the masquerade and dismiss the federal claims.  In addition, the Court should refuse to exercise jurisdiction over any state law claims that remain.

## I.    STANDARD FOR MOTIONS TO DISMISS

This Court should grant a defendant's motion to dismiss if "after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations in the complaint." *Trump Hotels and Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir.1998).

## II.    THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT

The Individuals with Disabilities Education Act (IDEA) requires states receiving federal education funding to provide "free appropriate public education" (FAPE) for all disabled children.  *Shore Regional High School Board of Education v. P.S.*, 381 F.3d 194, 198 (3d Cir. 2004) (*Shore Regional*) (citing 20 U.S.C. § 1412(1)).  FAPE means special education and related services that are provided at public expense, which meet the standards of the State educational agency, and which are provided in conformity with any individualized education program (IEP) required under 20 U.S.C. § 1401(8).  *Shore*

-5-

*Regional*, 381 F.3d at 198. An IEP must be "'reasonably calculated' to enable the child

to receive 'meaningful educational benefits' in light of the student's intellectual

potential." *Id.* (quoting *Polk v. Cent Susquehanna Interm. Unit 16*, 853 F.2d 171, 181 (3d

Cir. 1988), *cert. denied sub nom, Central Columbia School Dist. v. Polk*, 488 U.S. 1030

(1989)).

Pursuant to the IDEA, a child with a disability is a child with, *inter alia,* mental

retardation, serious emotional disturbance, autism, and specific learning disabilities who,

by reason thereof, needs special education or related services. 20 U.S.C. § 1414(3)(A).[1]

States may fashion their own procedures for identifying students and determining

eligibility so long as they satisfy the requirements of the IDEA. *Shore Regional*, 381

F.3d at 198. Delaware has adopted its own procedures, which are set forth in the

Department of Education's Administrative Manual for Special Education Services

(AMSES).[2]

To state a claim under the IDEA, plaintiff's must allege an actionable injury.

*C.M. v. Board of Education of the Union County Regional High School Dist.*, 2005 WL

899927 at *2 (3d Cir.) (Exh. A). Only those procedural violations which result in the loss

of an educational opportunity or seriously infringe on a parent's right to participate in the

IEP formulation process are actionable. *Id.* (citing *W.G. v. Brd. of Trustees*, 960 F.2d

---

[1] *See* 34 C.F.R. § 300.7 defining the term "child with a disability" as:
> A child evaluated in accordance with §§ 300.530-300.536 as having
> mental retardation . . . a speech or language impairment . . . serious
> emotional disturbance . . . an orthopedic impairment, autism . . . another
> health impairment, a specific learning disability . . . or multiple
> disabilities, and who, by reason thereof, needs special education and
> related services.

[2] *See* DEL. CODE ANN. tit. 14, 3120, et. seq.;
http://www.doe.state.de.us/exceptional_child/
Final%20AMSES/AMSESRevised12152004.pdf (AMSES).

-6-

1479 (9th Cir. 1992)); *Coale v. St. Dept. of Ed.*, 162 F.Supp.2d 316, 335 (D. Del. 2001). Technical violations or procedural inadequacies which do not cause a substantive deprivation of educational benefits are not actionable. *C.M.*, 2005 WL 899927 at *2. Plaintiffs alleging violations of the IDEA have the burden of establishing the harm caused by any claimed procedural shortcomings. *Id.* Bare allegations of a deprivation will not suffice. *See Id.* Where there is extensive parental involvement, claims based upon deprivation of the opportunity to participate in particular isolated decisions are rendered insignificant. *Id.* at *3.

III.    **REHABILITATION ACT**

Count I of the Complaint alleges that the defendants violated the Rehabilitation Act because the defendants did not renew the plaintiff's contract in retaliation for her efforts to bring the STSD into compliance with the IDEA. Cmplt., §§ 29-30. Plaintiff further alleges that by not renewing her contract, the defendants discriminated against her and failed to meet the individual education needs of handicapped persons. The plaintiff's complaint does not allege that she is a person with a disability, and the plaintiff is not a person with a disability. The plaintiff's complaint, therefore, fails to state a *prima facie* case of employment discrimination under the Rehabilitation Act.[3] There is a separate

---

[3] "The Rehabilitation Act[, 29 U.S.C. § 701, *et. seq.*,] forbids federal employers from discriminating against persons with disabilities in matters of hiring, placement or advancement." *Shiring v. Runyon*, 90 F.3d 827, 830-31 (3d Cir. 1996). To establish a *prima facie* case under the Rehabilitation Act ("RA"), the employee has the burden of demonstrating:

> 1) that he or she has a disability,
> 2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer, and
> 3) that he or she was nonetheless terminated or otherwise prevented from performing the job.

issue, however, with respect to whether the plaintiff has stated a claim under the RA for

retaliation.

A.    **STANDARD FOR EVALUATING RETALIATION CLAIMS
UNDER THE RA**

The standard for determining whether there has been a violation of the RA is the

same as the standard used to determine whether there has been a violation of the

Americans With Disabilities Act (ADA). *Sweet v. Tigard-Tualatin Sch. Dist.,* 124

Fed.Appx. 482, 484-85, n.1 (9th Cir. 2005). These standards include the ADA's

retaliation provisions, *See* 42 U.S.C. § 12203(a),[4] which § 504(d) of the RA, 29 U.S.C. §

794(d), adopts. *Id.* Thus, individuals who are not disabled may assert retaliation claims

under the RA.[5] Individuals asserting claims, however, may not allege retaliation based

---

*Id.* at 831. *See Id.* at 830 (indicating that employers must comply with the standards set
forth in the Americans with Disabilities Act, 42 U.S.C. § 12111, et. seq.).

   The RA also applies in educational settings. To establish a violation of § 504 of
the RA, 29 U.S.C. § 794(a), a plaintiff must show that:1) she is disabled as defined by the
Act; 2) she is "otherwise qualified" to participate in school activities; 3) the school or the
Board receives federal financial assistance; and 4) she was excluded from participation
in, denied the benefits of, or subject to discrimination at the School. *W.B. v. Matula,* 67
F.2d 484, 494 (3d Cir. 1995).
[4] 42 U.S.C. § 12203 reads:
      (a) Retaliation
      No person shall discriminate against *any individual* because such
      individual has **opposed** any act or practice made unlawful by this chapter
      or because such individual made a charge, testified, assisted or
      participated in any manner in any investigation, proceeding, or hearing
      under this chapter. (emphasis added).
[5] *See Sweet,* 124 Fed.Appx. at 485 n.1 (holding that a school psychologist who alleged
that she was discharged after complaining to school officials about potential IDEA
violations during and after a meeting regarding a student's Individual Education Plan
(IEP) had standing to bring a retaliation claim under the RA). In *Sweet,* the court held
that the psychologists claims fell within the ambit of activity protected from retaliation
under § 504(d) because the RA requires schools to provide appropriate education
designed to meet the individual educational needs of a handicapped person and this
requirement can be met by developing an IEP for each qualified handicapped person. *Id.*
(citing 34 C.F.R. §§ 104.33(b)(1) and 104.33(b)(2)). *See Weber v. Cranston Sch.*

upon generalized grievances related to a class of individuals. Prudential limitations

dictate that plaintiffs do not have standing in situations where they merely allege

generalized grievances, unrelated to specific individuals.[6]

1. **ALTHOUGH RETALIATION CLAIMS ARE SUBJECT TO A BURDEN SHIFTING ANALYSIS, THE PLAINTIFF RETAINS THE ULTIMATE BURDEN OF PROOF**

An employee bringing a retaliation claim under the RA must show: 1) that she

engaged in a protected activity; 2) adverse action by the employer either after or

contemporaneous with the employee's protected activity; and 3) a causal connection

between the employee's protected activity and the employer's adverse action.[7] An

employee engages in protected activity when she *opposes* an action by the employer

based upon an objectively reasonable belief that her employer is engaging or has engaged

---

*Committee*, 212 F.3d 41 (1st Cir. 2000) (relying upon amendments to the RA which incorporated the remedies and procedures set forth in Title VI of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000d, and a regulation corresponding to Title VI, 34 C.F.R. § 100.7(e), and holding that a handicapped student's mother had standing to pursue a retaliation claim under the RA). *See also* 29 U.S.C.A. § 794a(2) (stating that the remedies,, procedures and rights set forth in Title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d, et. seq.] are available to *any person* aggrieved by any act or failure to act under 29 U.S.C.A. § 794).

[6] *Sullivan v. City of Pittsburgh, Pennsylvania*, 811 F.2d 171, 176 (3d Cir. 1987), *cert denied sub nom, City of Pittsburgh, Pa v. Sullivan*, 484 U.S. 849 (1987) (citing *Warth v. Seldin*, 422 U.S. 490 (1975), as the leading case on the issue of standing).

[7] *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (citing *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997), *cert. denied*, 118 S.Ct. 299 (1997)). Title VII and ADA retaliation claims are analyzed under the same framework. *Krouse*, 126 F.3d at 500.

Where a plaintiff contends that an employer's proffered reasons for adverse action are pretextual, the McDonnell Douglas burden-shifting analysis applies. *See Woodson*, 109 F.3d at 920 n.2 (explaining the burden shifting analysis in a retaliation case); *Krouse*, 126 F.3d at 500 (following the burden shifting analysis in analyzing a retaliation claim).

in unlawful, discriminatory conduct.[8]  An employee need not prove the merits of the

underlying complaint of discrimination, but only that she acted with a good faith,

reasonable belief that a violation of the applicable law existed.[9]  In determining the

reasonableness of an individual's belief that an act is unlawful, it is necessary to look first

at pre-existing case law.[10]

Retaliation claims under the ADA are analyzed using the burden-shifting

framework set forth in *McDonnell Douglass Corp. v. Green*, 411 U.S. 792, 793 (1973).

This same framework is applicable to the plaintiff's RA claims because the retaliation

provisions of the ADA apply, as was noted above.

Pursuant to *McDonnell Douglass*, the plaintiff has the burden of establishing a

prima facie case of retaliation.  *See Shaner v.Synthes (USA)*, 204 F.3d 494, 500 (3d Cir.

2000) (discussing *McDonnell Douglass*).  If the plaintiff succeeds in establishing a *prima*

*facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory

reason for the adverse action.  *Id.*  If the defendant meets this burden, the plaintiff has the

burden of proving that the proffered reason was a pretext for discrimination.  *Id.*

While the burden of production may shift to the defendant with respect to

providing a non-discriminatory reason, the burden of persuading the trier of fact that the

defendant intentionally discriminated against the plaintiff remains with the plaintiff at all

times.  *Shaner*, 204 F.3d at 500-501.  The plaintiff must persuade the trier of fact *both*

---

[8] *Foster v. Time Warner Entertainment Co., L.P.*, 250 F.3d 1189 (8th Cir. 2001)
(discussing an ADA case);
[9] *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996) (discussing a
Title VII retaliation case).
[10] *Drinkwater v. Union Carbide Corp.*, 904 F.2d 853 (3d Cir. 1990) (discussing a
retaliation claim brought under New Jersey's Law Against Discrimination (NJLAD),
which applies the same reasonable belief standard as is used in Title VII cases).

that the reason was false, and that discrimination was the real reason. *Id.* at 501. To

discredit an employer's proffered reason, the plaintiff must show more than the fact that

the employer's decision was wrong or mistaken. *Id.* Rather, the plaintiff "must

demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or

contradictions in the employer's proffered legitimate reasons for its action that a rational

fact finder could rationally find them unworthy of credence, and hence infer that the

employer did not act for the asserted non-discriminatory reasons."[11] The plaintiff can

demonstrate these weakness, etc. using circumstantial evidence. *Shaner*, 204 F.3d at 503.

The plaintiff's ultimate burden in a retaliation case is to convince the jury that the

retaliatory intent had a "'determinative effect" on the employer's decision.[12]

> ## 2. TO RISE TO THE LEVEL OF AN ADVERSE EMPLOYMENT ACTION, AN EMPLOYER'S CONDUCT MUST BE SERIOUS AND TANGIBLE ENOUGH TO ALTER AN EMPLOYEE'S COMPENSATION, TERMS, CONDITIONS, OR PRIVILEGES OF EMPLOYMENT

An adverse employment action is conduct which "constitutes a *significant* change

in employment status, such as hiring, firing, failing to promote, reassignment with

significantly different responsibilities, or a decision causing a significant change in

benefits." *Burlington Indus., Inc. v. Ellerth*, 118 S.Ct. 2257, 2268 (1998) (emphasis

added). The adverse employment action must be material. *Mondzelewski v. Pathmark

Stores, Inc.*, 162 F.3d 778, 787 (3d Cir. 1998). The concept of discrimination with

respect to retaliation claims refers to "job application procedures, the hiring,

---

[11] *Id.* (citing *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)).
[12] *Shaner*, 204 F.3d at 501 n.8 (citing *Woodon v. Scott Paper Co.*, 109 F.3d 913, 931-35 (3d Cir. 1997)).

advancement, or discharge of employees, employee compensation, job training, and other

terms, conditions, and privileges of employment." *Id.*

As the Court noted in *Robinson*, however, "[m]inor or trivial actions that merely

make an employee 'unhappy' are not sufficient to qualify as retaliation . . ., for otherwise

every action that an irritable chip-on-the-shoulder employee did not like would form the

basis of a discrimination suit." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d

Cir. 1997); *Mondzelewski,* 162 F.3d at 787.  Likewise, civil rights law suits cannot be

transformed into a forum for every workplace grievance, real or imagined, nor must they

be permitted to become a mechanism to inhibit ordinary managerial decisions or handcuff

owners and managers of businesses to the status quo. *Gray v. York Newspapers, Inc.*,

957 F.2d 1070, 1083 (3d Cir. 1992) *overruling on other grounds recognized in, Abrams*

*v. Lightolier*, 841 F.Supp. 584 (D.N.J. 1994) (quoting *Bristow v. Daily Press, Inc.*, 770

F.2d 1251, 1255 (4th Cir. 1985)).  Civil rights statutes cannot be read so broadly as to

provide relief from the minutiae of day-to-day business decisions.  *See Colgan v. Fisher*

*Scientific*, 935 F.2d 1407, 1421 (3d Cir. 1991) *cert. denied sub nom, Fisher Scientific v.*

*Colgan*, 502 U.S. 941 (1991) (noting the negative consequences which would follow if

employees were encouraged to file charges whenever they were dissatisfied with day-to-

day or interim incidents in the workplace).

Oral reprimands are not sufficiently adverse to qualify as actionable employment

action. *Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2001) (citing *Robinson,* 120

F.3d at 1301).  To qualify as adverse action in a retaliation case, the plaintiff must show

that written reprimands affected the terms and conditions of her employment.  *Weston,*

251 F.3d at 431.  In *Weston,* the Third Circuit found that a written reprimand was not

-12-

adverse action in a retaliation case where the plaintiff "was not demoted in title, did not

have his work schedule changed, was not reassigned to a different position or location . .

., did not have his hours or work changed or altered in any way, and he was not denied

any pay raise or promotion as a result of [the] reprimands." *Id.*[13]

      3.     **ESTABLISHING A CASUAL LINK REQUIRES MORE THAN THE MERE FACT THAT THE ADVERSE EMPLOYMENT ACTION OCCURRED AFTER A PROTECTED ACTIVITY**

In establishing a causal link between the protected activity and the adverse action,

the plaintiff must generally show more than the mere fact that the adverse employment

action occurred after a protected activity. *Krouse*, 123 F.3d at 503; *Crenshaw v.*

*Georgetown University*, 23 F.Supp.2d 11, 18 (D. D.C. 1998), *aff'd*, 194 F.3d 173 (D.C.

Cir. 1999) (stating that mere coincidence does not establish causation in the absence of

other evidence). "Even if timing alone could ever be sufficient to establish a causal link,

. . . the timing of the alleged retaliatory action must be 'unusually suggestive' of

retaliatory motive before a causal link will be inferred." *Krouse*, 123 F.3d at 503  (citing

*Robinson*, 120 F.3d at 1302).  Lack of temporal proximity, however, by itself, is not

conclusive proof against retaliation. *Woodson*, 109 F.3d at 919.

---

[13] *See Tucker v. Merck & Co., Inc.*, 2005 WL 1176565 at *4 (3d Cir.) (Exh. B) (holding that two negative yearly evaluations did not constitute adverse employment action absent evidence of lower raises as a result of the evaluations); *Washington v. Delaware*, 2003 WL 21697403 at *3 (D. Del) (Exh. C) (holding that two written grievances did not amount to adverse action where the employee was not fired, denied a promotion, reassigned or denied any benefits of her employment); *Sabbrese v. Lowe's Home Centers, Inc.*, 320 F.Supp.2d 311, 319-20 (E.D. Pa. 2004) (holding that a written reprimand did not deprive the plaintiff of a *significant* employment benefit or effect a *material* change in the terms of the plaintiff's employment even though the warning would stay in his file permanently and was part of a progressive disciplinary system).   In *Tucker*, the court noted that even if a negative evaluation lead to a lower than expected merit wage increase or bonus, it would probably not constitute an adverse employment action. *Tucker*, 2005 WL 1176565 at *4.

When temporal proximity is missing, courts may look to the intervening period between the protected activity and the allegedly retaliatory conduct for other evidence of retaliatory animus. *Krouse*, 126 F.3d 503-04. Where sufficient time has passed between the two activities, absent evidence of intervening antagonism or retaliatory animus, passage of time may be conclusive and the court may grant judgment as a matter of law for the defendant on the issue of causation. *See Id.* at 504 (ruling on a motion for summary judgment that the plaintiff failed to establish a causal link as a matter of law).

In the absence of temporal proximity, one way that the plaintiff can establish a link between her protected activity and the defendant's subsequent adverse employment decision is by showing that the employer engaged in a pattern of antagonism in the intervening period. *Woodson*, 109 F.3d at 920-21 (leaving open the question of whether other types of evidence might also support finding a causal link in the absence of temporal proximity).

B.    **THE ALLEGATIONS IN THE COMPLAINT FAIL TO STATE A RETALIATION CLAIM UNDER THE RA**

In this case the plaintiff contends that she was retaliated against for questioning the defendants about various incidents of non-compliance with the IDEA. *See e.g.* Cmplt. at ¶¶ 9, 13, 14, 21. The plaintiff incorporated a variety of documents in the Complaint. Neither the allegations in the Complaint nor the attached documents set forth a cause of action for retaliation under the RA because the incidents referred to: 1) do not amount to adverse employment action; 2) do not refer to protected activity; or 3) do not create an inference of discrimination. The Court, therefore, should dismiss Count I of the Complaint.

Paragraph 9 of the Complaint alleges that almost immediately after being hired[14] she began "to bring to attention of STSD and Mr. Huber various incidents of non-compliance with the IDEA." In support of this assertion, Plaintiff cites to Exhibit 1, an October 22, 2001 memorandum to Steve Huber, the Vice Principal and Supervisor of Special Education at the High School. A review of Exhibit 1, however, establishes that the memo: 1) suggests ways to streamline internal operating procedures; 2) responds to a question regarding eligibility determination criteria; and 3) suggests additional topics for discussion at bi-monthly special education meetings. The contents of the memorandum do not amount to "protected activity" under the IDEA.

It was the plaintiff's job to evaluate students for eligibility. Making suggestions regarding streamlining procedures for the job the plaintiff is supposed to perform does not evidence an opposition[15] to illegal activity, nor does the memorandum specifically identify any illegal activity. The memorandum, moreover, is general in nature and does not refer to any student who would qualify as disabled. Even if the memorandum referred to procedural violations, any such violations would not, as a matter of law, result in the loss of an educational opportunity or deprive a student of educational benefits. As such, even if the memorandum could be viewed as opposition to an illegal activity, the plaintiff could not have had an objectively reasonable belief that the memorandum amounted to protected activity. Under no set of circumstances could the memorandum in ¶ 9 be viewed as protected activity. The Court, therefore, should dismiss any allegations of retaliation under the RA based upon Exhibit 1 of the plaintiff's Complaint.

---

[14] The plaintiff was hired by the School Board on October 8, 2001.
[15] The ADA's retaliation provisions to refer to individuals *opposing* unlawful activity. *See* 42 U.S.C. § 12203(a).

-15-

The allegations in ¶¶ 10 and 11 of the Complaint do not assert protected activity or adverse employment action. Rather, these allegations establish that despite Ms. Houlihan's suggesting procedural changes, she was *promoted* to the position of Special Education Coordinator, a position which she later voluntarily resigned. The memorandum referred to as Exhibit 2 does not detail protected activity as it merely refers to conflict between two staff members. Conflicts between Ms. Houlihan and staff members were not uncommon during her tenure as the coordinator and these conflicts continued after she resigned her position as coordinator. *See* Aug. 2, 2003 Performance Appriasal (Cmplt. Exh. 7); Cmplt. Exh. 6 (referring to unprofessional behavior and negative staff interactions).

While the memorandum refers to possible legal repercussions in the event of a due process action, this bald, unsupported assertion does not, in fact, allege a violation. Moreover, the deficiencies noted are merely alleged procedural errors which the plaintiff could not reasonably believe would result in a substantive deprivation of education benefits to a student. Moreover, there is no assertion that these procedural deficiencies resulted in a deprivation of education benefits to a student. Personnel disputes do not give rise to retaliation claims under the RA. *Cf. Gray*, 957 F.2d at 1083 (indicating that civil rights lawsuits cannot be transformed into a forum for everyday workplace disputes).

In paragraph 12, the plaintiff contends that she was "removed" from the coordinator position. The plaintiff, however, admitted in ¶ 11 that she asked to be relieved of the position due to staff conflicts. Having Ms. Walls-Culotta[16] become her

---

[16] Ms. Walls-Culotta's name is misspelled in the caption of the Complaint.

-16-

supervisor, moreover, cannot be viewed as an adverse action, as employers must be permitted to make routine employment decisions without fear of lawsuits. The allegations in ¶ 12 do not establish any of the elements of a retaliation claim and, therefore, should be stricken.

Paragraph 13 is stated in conclusory terms and cannot be responded to because the allegation fails to set forth dates on which the incidents occurred or the people involved. The allegation also fails to identify the procedures alleged to be missing. Even if the activities alleged were, however, protected activity, being accused of dragging out meetings and being unfocused does not amount to adverse action. *Weston*, 251 F.3d at 430 (indicating that oral reprimands are not actionable). Moreover, internal operating procedures regarding the length of meetings are matters which cannot, as a matter of law, give rise to a retaliation lawsuit under the RA as employers must not be inhibited from making ordinary managerial decisions. Paragraphs 13-17 suffer from similar deficiencies as they do not contain dates or identify individuals, they refer to routine operating procedures at the school, and the only adverse action alleged are oral reprimands.

Paragraph 18 also fails to assert either protected activity or actionable adverse employment action. The gist of this paragraph is that the plaintiff was instructed that instead of reporting incidents of suspected violations to the coordinator or the suspected violator, she should report them to the principal, who was supervising the plaintiff at the time. In light of the difficulties that the plaintiff was having communicating with staff at the time, this change was neither unusual nor retaliatory.

Being required to report suspected violations to the principal, who was ultimately responsible for IDEA compliance, and who was also acting as the plaintiff's supervisor at

-17-

the time cannot as a matter of law be deemed adverse action. Moreover, the plaintiff does not allege that the action was adverse. Rather, she contends that the reason the change was made was to permit Ms. Walls-Cultotta and Mr. Huber to decide what action to take and to look like they knew what they were doing. Allegations such as this do not support a retaliation claim. Rather, they support the proposition that the plaintiff is an unhappy employee with a chip on her shoulder who did not feel that she was appreciated. Civil rights statutes are not intended to provide relief from disagreements about day to day business decisions. Paragraph 18 fails to state a claim of retaliation.

In paragraph 19 of the Complaint, the plaintiff acknowledges her growing resentment based upon having to report suspected technical violations to Ms. Walls-Culotta. She also identifies a number of e-mails, Cmplt. Exh. 3, wherein she purportedly reports suspected violations of the IDEA.

In the plaintiff's January 12, 2004 e-mail, she identifies several potential "violations:"

1)  The dismissal of the IEP team prior to the completion of the IEP;

2)  The signing of a 10 day waiver to correct the omission of "IEP development" being included on the IEP meeting invitation rather than having the parents initial the original invitation indicting their approval that the IEP be developed at the meeting;

3)  Her desire to have certain eligibility determination meetings (EDM) reclassified to IEP's;[17] and

4)  Permission test forms being mailed out indicating there would be informal assessment without the IEP team addressing the issue.

There is no indication in these allegations who the students involved were or that the students that the students were disabled or qualified for services. Moreover, there is

---

[17] This is the same issue addressed in the second e-mail included with Exhibit 3.

-18-

no claim that the dismissal of the team prior to completion of the meeting or having

certain EDM meetings reclassified resulted in the student's being deprived of an

educational opportunity.  Even if the plaintiff asserted a deprivation, bare allegations of a

deprivation will not suffice.  *C.M.*, 2005 WL 899927 at *2.

Having EDM's occur prior to IEP's, moreover, cannot be viewed as depriving a

student of an educational opportunity because students are not entitled to IEP's unless

and until they are deemed eligible.[18]  As such, this allegation does not refer to protected

activity, as it cannot be viewed as opposing what the plaintiff reasonably believed were

violations amounting to a student's being deprived of an educational opportunity.

Plaintiff's complaint about the waiver being signed clearly refers to a minor

technical issue which would not, as a matter of law, deprive a student of an educational

opportunity or the student's parent's an opportunity to participate.  The parents,

moreover, obviously signed the waiver.  This complaint cannot be viewed as protected

activity as the plaintiff could not have reasonably believed that this was anything other

than a minor procedural violation, which would not deprive the plaintiff of an educational

opportunity.

As for the plaintiff's complaint about permission test forms being mailed out

indicating that informal assessment would occur without being addressed by the IEP

team, this allegation does not identify students and, therefore, the plaintiff cannot

establish protected activity because the plaintiff has failed to identify a disabled student.

Moreover, the plaintiff is raising a procedural issue without identifying any specific

---

[18] *See* 34 C.F.R. § 300.531 (requiring an initial evaluation prior to the provision of
services).

-19-

IDEA provision that was violated.[19]  Rather, the plaintiff is simply stating her belief as to a better system.  Disputes over internal procedures do not give rise to civil rights retaliation claims.  Even if the plaintiff could establish an IDEA violation based upon how the notices were sent out, it is well settled that disputes over minor procedural issues do not amount to protected activity as the plaintiff could not reasonably have believed that checking off informal assessment would deprive students of an educational opportunity.  *See C.M.*, 2005 WL 899927 at *2 (stating that technical violations or procedural inadequacies which do not cause a substantive deprivation of educational benefits are not actionable).

With respect to the handwritten note on the bottom of the January 12, 2004 e-mail included with Exhibit 3, the plaintiff indicates that she complained about invitations being mailed out without indicating all of the purposes being addressed at meetings.  The note goes on to say that the plaintiff wanted the form changed to indicate that the IEP would also be done, "if [the child] qualifies."  Consistent with her past allegations, the plaintiff fails to identify a specific section of the IDEA that was violated and, instead, is simply attempting to impose her view of "best practices" for compliance.  This complaint

---

[19] In fact, despite plaintiff's bald assertion of a violation, 34 C.F.R. § 300.505, and Del. Dept. of Ed. Reg. 925, § 3.1 *require* parental consent before conducting an initial evaluation.

Throughout her history with the school district plaintiff identified alleged "violations."  She could not, however, substantiate these allegations by pointing to specific requirements in the law.  Plaintiff's complaints typically referred to suggestions on different ways to do things.  Differences of opinion over procedural issues do not implicate civil rights laws.  To the extent that the Court believes that any of plaintiff's allegations of "violations" might otherwise have merit, the Court should require the plaintiff to specifically identify where in the law, by reference to specific code requirements, the alleged procedure violates the IDEA.  Absent support in the law, the plaintiff could not have reasonably believed that any of her alleged violations were, in fact, violations.

again refers to minor disagreements over procedural issues which the plaintiff could not reasonable believe resulted in a serious deprivation of parental rights or the deprivation of an educational opportunity for the student. This complaint, therefore, does not qualify as "protected activity" which will support a retaliation claim.

Although the note implies that Ms. Walls-Culotta adopted the suggestion and changed the form, this does not establish that there was a violation of the IDEA. Absent specific identification of an IDEA requirement violated, the change is evidence of nothing more than acquiescence in a request to change a procedure. Bald assertions regarding violations do not support retaliation claims.

The remaining allegations in ¶ 19 suggest that the plaintiff was disgruntled because her "expertise" with respect to the IDEA was being questioned by her superiors. Again, she refers to unsubstantiated and unidentified "violations" of the IDEA without offering any citation to the Code. In support of the allegation that her superiors did not blindly adopt her suggestions, the plaintiff refers to Exhibit 4 of the Complaint. The first memorandum in Exhibit 4, dated January 20, 2004, establishes that Ms. Walls-Culotta reviewed the plaintiff's concerns over the collection of data and disagreed with the plaintiff's interpretation with respect to one issue, and contacted the school's attorney to confirm compliance. The memorandum discusses a disagreement over a procedural issue. There is no indication that any particular student was deprived of an educational opportunity or that any student's IEP was not reasonably calculated to provide meaningful educational benefits to the child. The plaintiff, therefore, could not reasonably have believed that her suggestion was "protected activity" under the civil rights statutes. In addition, absent the identification of a disabled student, the plaintiff's

-21-

complaint with respect to this issue fails to state a claim because she does not have standing to assert the rights of all students with respect to generalized grievances.

The second memorandum from January 20, 2004 discusses the plaintiff's suggestion about identifying data needed for triennial reevaluations in the IEP meeting prior to the reevaluation and agreed to set up a meeting to discuss the proposal. This issue clearly refers to an in-house procedural issue, suggesting a way to improve the data collection process, not a violation of the IDEA. This memorandum does not involve protected activity within the meaning of the IDEA and, therefore, cannot form the basis of a retaliation claim.

The second memorandum also refers to concerns the plaintiff expressed about procedures at IEP meetings related to reviewing a student's progress. There is no indication that these "concerns" implicate a violation of the IDEA and, moreover, other than a bald assertion regarding an IDEA violation, no IDEA violation has been established. The concerns, moreover, address procedural issues and there is no suggestion that any particular student was deprived of an educational opportunity as a result of the procedures used. The plaintiff, therefore, has failed to establish that she engaged in protected activity. As such, she cannot maintain a retaliation claim based upon the "concerns" identified in this memorandum. Moreover, the plaintiff lacks standing to assert generalized grievances.

The final item in Exhibit 4, an e-mail from Plaintiff dated February 23, 2004, refers to questions and a disagreement over internal operating procedures related to who should sign requests for permission to test students. Once again, this complaint addresses nothing more than internal operating procedures and does not implicate any violation of

-22-

the IDEA. Indeed, this e-mail offers further evidence of the plaintiff's continued inability to cooperate with staff members on even routine tasks. Because this e-mail does not refer to protected activity, it cannot support a claim of retaliation. As such, it should be stricken from the Complaint.

In ¶¶ 20-21, the plaintiff alleges that she complained to STSD Board member Charles Mitchell about issues of IDEA non-compliance. For the reasons set forth above, there was no reasonable basis for the plaintiff to believe that there were violations and, therefore, any complaint to Mr. Mitchell about unfounded allegations cannot be considered protected activity. Moreover, the plaintiff's concerns were not directed to a particular student and the plaintiff does not have standing to address generalized grievances related to non-compliance. In addition, the plaintiff failed to identify any students who were actually deprived of an educational opportunity.

In support of her contention that after she spoke to Mr. Mitchell she continued to raise concerns about IDEA violations, the plaintiff refers to three e-mails. *See* Cmplt. Exh. 5. The first e-mail, dated February 27, 2004, addresses solely an internal issue with respect to the number of IEP's scheduled by the department secretary and the fact that some may need to be rescheduled because all of the paperwork may not be completed. This issue refers to internal office procedures, not violations of the IDEA, and cannot be viewed as "protected activity."

The second part of the e-mail acknowledges that teachers are complying with the plaintiff's suggestion that re-evaluation needs be addressed earlier. This merely anecdotal report is not a complaint in opposition to any procedures. The e-mail, moreover, is addressed to the department secretary, who is not a party to this litigation

-23-

and who had no control over any decisions by the defendants to terminate the plaintiff. This e-mail fails to refer to protected activity in any manner and, therefore, cannot support a retaliation claim. Thus, the e-mail should be stricken from the Complaint.

The second e-mail in Exhibit 5, dated March 2, 2004, went from the plaintiff to Defendant Huber. This e-mail does not address violations of the IDEA. Rather, it requests clarification of internal operating procedures and asks for a meeting to discuss these procedures. This e-mail does not identify any violations of the IDEA and does not address protected activity. As such, this e-mail cannot support a retaliation claim.[20]

The final e-mail in Exhibit 5 is dated March 12, 2004. This is actually a chain of e-mails discussing what testing the Division of Vocational Rehabilitation (DVR) requires with respect to students transitioning out of high school. The e-mail does not address or even assert a violation of the IDEA. The e-mail, moreover, is a discussion of proper procedures, and properly solicited the plaintiff's input. This e-mail does not evidence any statements in opposition to STSD procedures allegedly violating the IDEA. This e-mail, therefore, does not involve protected activity and the plaintiff could not reasonable believe that it did. This e-mail, therefore, cannot support a retaliation claim.

Paragraph 22 alleges that following her conversation with Mr. Mitchell, rather than address the plaintiff's concerns regarding the IDEA, Mrs. Walls-Culotta gave the plaintiff numerous written reprimands. These reprimands are incorporated as Exhibit 6. These reprimands, however, do not provide evidence of adverse employment action as

---

[20] In the unlikely event that the Court concludes that one or more of the plaintiff's allegations survive the motion to dismiss, the Court should strike any allegations and exhibits from the Complaint which do not state a claim.

there is no evidence that these reprimands affected the terms and conditions of the plaintiff's employment.

The reprimands, moreover, are clearly not in response to complaints raised by the plaintiff. As the March 8, 2004 letter states, the plaintiff acted unprofessionally when she and Ms. Walls-Culotta met to discussed the plaintiff's conduct at an EDM meeting held on February 5, 2005. At the EDM meeting, the plaintiff had a bad exchange with Wendy McKeever, one of the special education teachers. Disciplinary actions following particularly onerous interactions with other staff members are matters outside the purview of the civil rights laws. Even if the plaintiff's prior complaints could be considered protected activity, the letter unequivocally establishes that there is no connection between the plaintiff's prior complaints and the letter. Rather, the letter clearly addresses a specific incident between two employees, and the school principal's attempt to intervene and determine what occurred. These types of routine personnel matters do not implicate the civil rights laws.

The letter further evidences the plaintiff's insubordination and continued refusal to cooperate with her superiors, and establishes that the plaintiff continued to have difficulty dealing with other members of her department. After Plaintiff requested that the meeting with Ms. Walls-Culotta be taped, the plaintiff, unconscionably, insinuated that Ms. Walls-Culotta would alter her copy of the tape and, therefore, refused to provide a copy of the tape. In addition, the plaintiff accused Ms. Walls-Culotta, the school principal and her supervisor, of being incompetent. Such insubordination is clearly intolerable under any standard. The remaining letters and the plaintiff's ultimate dismissal are, as demonstrated in the letters, based upon the plaintiff's inability to work

-25-

with other staff members, refusal to cooperate with a plan improve her working

relationships and her refusal to return paperwork, including a signed copy of the March 8,

2004 letter.

In ¶ 30 of the Complaint, the plaintiff contends that by terminating her "because

of her efforts to bring STSD into compliance with the IDEA, Defendants failed to meet

the individual educational needs of handicapped persons." Such an allegation is

conclusory and lacks any basis in fact. Bare allegations of a deprivation will not suffice.

*C.M.*, 2005 WL 899927 at *2. Moreover, the Complaint fails to identify any individual

whose educational needs were not met, or whose needs the plaintiff reasonably believed

were not being met. The asserted "violations" were, at best, minor procedural violations

which the plaintiff could not have reasonably believed deprived any student of an

educational opportunity. The plaintiff's RA retaliation claim, therefore, fails as a matter

of law as there is no conceivable set of facts upon which she can prevail.

## IV.    FIRST AMENDMENT RETALIATION

Public employees have a right to speak on matters of public concern without fear

of retaliation. *Badassare v. New Jersey*, 250 F.3d 188, 194 (3d Cir. 2001). First

Amendment retaliation claims are analyzed under a three step process. *Id.* at 194-95.

The first step requires the plaintiff to establish that her speech was protected. *Id.* To be

protected, the speech must address a matter of public concern. *Id.* If the plaintiff

satisfies this step, she must then demonstrate that her interest in the speech outweighs the

state's countervailing interest as an employer in promoting the efficiency of the public

services it provides through its employees. *Id.* (citing *Pickering v. Bd. of Educ.*, 391 U.S.

563, 68 (1968)). Determining whether the employee's interests outweigh the employer's

requires the Court to engage in a balancing test. *Id.* These questions involve questions of

law, for the Court to decide. *Id.* Public employees have a greater burden of establishing

retaliation than other citizens because of the government's interest in promoting the

efficiency of public services. *Rappa v. Hollins*, 991 F.Supp. 367, 374 (D. Del. 1997),

*aff'd* 178 F.3d 1280 (3d Cir. 1999).

If the plaintiff gets by these steps, she must then show that her protected speech

was a substantial or motivating factor in the allegedly retaliatory conduct. *Baldassare*,

250 F.3d at 195 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274,

278 (1977)). If the plaintiff meets her burden on this point, the defendant can rebut the

claim of retaliation by demonstrating that it would have reached the same decision even

in the absence of the protected conduct. *Id.*

A.    **PUBLIC CONCERN**

Speech by a public employee involves a matter of public concern if it can be

fairly considered as relating to any matter of political, social or other concern to the

community. *Baldassare*, 250 F.3d at 195. The determination of whether speech is a

matter of public concern focuses on the content, form and context of the speech. *Id.*

Speech which attempts to bring to light actual or potential wrongdoing or breach of the

public trust on the part of governmental officials may involve a matter of public concern.

*Id.* To qualify for protection, the speech at issue must be made primarily in the

employee's role as a citizen, as opposed to her role as an employee. *Morris v. Crow*, 142

F.3d 1379, 1382 (11th Cir. 1998). *See Pickering v. Brd. of Ed. of Twp. High Sch. Dist.*

*205, Will County, Illinois,* 391 U.S. 563, 568 (1968) (noting that the teachers interests, as

a citizen, in commenting on matters of public concern must be balanced against the states

interest as an employer); *Connick v.Myers*, 461 U.S. 138, 143 (1983) (noting that the

emphasis in *Pickering* on the right of public employees, *as citizens*, to comment on

-27-

matters of public concern was not accidental, and recognizing that government offices could not function if every employment decision became a constitutional matter).

The test for whether speech addresses a matter of public concern focuses on the value of the speech. *Baldassare*, 250 F.3d at 197. If the value of the speech, based upon its content and the circumstances of communication, are such that the message conveyed would be relevant to the process of self-governance if disseminated to the community at large, the communication should be considered a matter of public concern. *Id.* (citing *Azzaro v. County of Allegheny*, 110 F.3d 968, 977-78 (3d Cir. 1997) (*en banc*)). Speech intended to disclose misfeasance by public employees is protected, while speech disclosing personal grievances is not.[21]

B. **BALANCING OF INTERESTS**

The balancing test takes into consideration a variety of factors. *Baldassare*, 250 F.3d at 198. Communications made in forums not open to the general public are entitled to less protection than communication made to the general public. *Roseman v. Ind. Univ. of Pennsylvania at Ind.*, 520 F.2d 1364, 1368 (3d Cir. 1975), *cert denied*, 424 U.S. 921 (1976) (holding that a teacher's complaints to other members of her department were essentially private communications, entitled to less protection than statements made to the general public). Employers have a substantial interest in maintaining discipline and harmony among co-workers. *Baldassare*, 250 F.3d at 198.

As the Supreme Court stated in *Connick*:

[T]he Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs. This includes

---

[21] *Swineford v. Snyder County Pennsylvania*, 15 F.3d 1258, 1271 (3d Cir. 1994). *See Czurlanis v. Albanese,* 721 F.2d 98, 104 (3d Cir. 1983) (finding that a county auto mechanic's criticism of internal management of the Dept. of Motor Vehicles was a matter of public concern).

-28-

the perogative to remove employees whose conduct hinders efficient
operation and to do so with dispatch. Prolonged retention of a disruptive
or otherwise unsatisfactory employee can adversely affect discipline and
morale in the work place, foster disharmony, and ultimately impair the
efficiency of an office or agency.

*Connick*, 461 U.S. at 151 (quoting Justice Powell's separate opinion in *Arnett v. Kennedy*,
416 U.S. 134, 168 (1974)). *Potential* disruptiveness is enough to outweigh whatever
First Amendment value speech may otherwise have. *Watters v. City of Philadelphia*, 55
F.3d 886, 896 (3d Cir. 1995).

The employee's placement in the organizational hierarchy is a significant factor in
respect to the detrimental impact speech has on the working relationships within an
organization. *Baldassare*, 250 F.3d at 198 (citing *Swineford v. Snyder County Pa.*, 15
F.3d 1258, 1272-73 (3d Cir. 1994), which held that the county voter registrar's interest in
comments regarding electoral improprieties did not outweigh the State's interest in
effiency). "When close working relationships are essential to fulfilling public
responsibilities, a wide degree of deference to the employer's judgment is appropriate."
*Connick*, 461 U.S. at 151-52. Employers do not need to allow events to unfold to the
point of actual disruption of the office and the destruction of working relationships before
taking action. *Id.* at 152.

The disruption is particularly relevant where the speaker's statements call into
question the integrity of the person immediately in charge of running a department. *See*
*Roseman*, 520 F.2d at 1368 (rejecting a First Amendment claim where the speaker called
into question the integrity of the person in charge of running the department). In some
positions, the relationship between superior and subordinate is of such a nature that
public criticism by the subordinate seriously undermines the effectiveness of the working
relationship. *Pickering*, 391 U.S. at 569-70.

-29-

When an employee personally confronts her immediate superior, the employer's institutional efficiency may be threatened not only by the content of the message, but by the manner, time and place in which it is delivered. *Connick*, 461 U.S. at 153. When an employee's speech concerns office policy and arises from an employment dispute concerning the very application of the policy to the speaker, additional weight must be given to the supervisor's view that the employee has threatened the authority of the employer to run the office. *Id.*

The Court, therefore, must determine whether the disruption in discipline or disruption in harmony rises to such a level the that government's interests outweigh any free speech interest the plaintiff may have.

C.    **THE PLAINTIFF'S STATEMENTS WERE NOT MATTERS OF PUBLIC CONCERN**

Even the most cursory review of the plaintiff's Complaint and exhibits, which are detailed at length in Section III(B), *supra*, establishes that the majority of the statements for which the plaintiff seeks protection were made not in her role as citizen, but in her role as the school psychologist. The procedures she suggested or questioned went to how her job would be performed. Similarly, her personnel disputes were personal matters, which did not arise outside of her job. Her statements were made solely in her capacity as the school psychologist, and not as a private citizen. *Cf. Pickering*, 461 U.S. at 148 (indicating that questions on a survey circulated by a disgruntled employer related to coworkers' confidence in superiors, office morale, and the need for a grievance procedure were not matters of public concern but, rather, related to personal grievance issues). These statements, therefore, are not matters of public concern as a matter of law.

Even if the court concludes, however, that some of the plaintiff's speech related to matters of public concern, the adverse action about which she complains is her termination. The vote regarding the non-renewal of her contract occurred in April of 2004. The exhibits attached to the plaintiff's complaint establish that by March of 2004, the plaintiff had a total lack of confidence in the abilities of her immediate superior, Ms. Walls-Culatta, and she was more than willing to express those opinions. *See* Exh. 6. Plaintiff's insubordination and willingness to impugn the integrity of her immediate supervisor, accuse her superior and the rest of her department of being incompetent, and make false accusations regarding both past and present employees,[22] is clear evidence of the plaintiff's inability to continue working with Mrs. Walls-Culotta, her immediate superior, or the rest of the staff in the Special Education Department.

As the school's only psychologist, it is obvious that the plaintiff could no longer work with or tolerate her co-workers or superiors and, as such, the defendants had ample cause to terminate her contract. The threat to institutional efficiency and the obvious destruction of working relationships was clear and the defendants were not required to stand by and let it continue. Thus even if the statements by the plaintiff prior to and at the meeting addressed matters of public concern, in light of the limited protection provided to public employees making statements in private or semi-private settings, STSD's interests in preventing disruption and continued destruction of working relationships clearly outweighed any interests that the plaintiff may have had with respect

---

[22] To the extent that there is any question with respect to what was said at the meeting on February 9, 2005, the meeting was taped at the plaintiff's request. The plaintiff is in the possession of the only copy of the tape and should be able to make the tape available at the Court's request.

to these statements as a matter of law. The plaintiff's first amendment claim, therefore,

fails to state a claim upon which relief can be granted.

## V.    THE PLAINTIFF'S STATE LAW CLAIM FAILS

The plaintiff's wrongful termination claim under state law is based upon violation

of public policy. For the reasons set forth in Sections III and IV, *supra*, the plaintiff's

public policy arguments fail as a matter of law.

## VI.    THE PLAINTIFF'S COMPLAINT FAILS IN ALL RESPECTS AS TO DEFENDANT HUBER BECAUSE THE COMPLAINT DOES NOT CONTEND THAT HE WAS RESPONSIBLE FOR HER TERMINATION IN ANY MANNER

All counts in the Complaint allege that the defendant's adverse action was the

plaintiff's wrongful termination. The Complaint contains numerous allegations against

Mrs. Walls-Culotta, but there are not allegations against Mr. Huber regarding her

termination as he was not her supervisor at the time. As such, there are no allegations in

the Complaint alleging that Mr. Huber was in any way responsible for any adverse action

taken against the plaintiff. With respect to Mr. Huber, therefore, the Complaint fails to

state a claim as there is no set of facts under which the plaintiff may recover from Mr.

Huber. The Complaint against Mr. Huber should be dismissed.

## VII.    ALTERNATIVE    MOTION    FOR    A    MORE    DEFINITE STATEMENT

Suits alleging civil rights violations must meet heightened standards of specificity

in pleadings. *Bartholomew v. Fischl*, 782 F.2d 1148, 1151 (3d Cir. 1986). The

allegations in civil rights complaints must make specific allegations of unconstitutional

conduct, rather than vague and conclusory allegations. *Id.* at 1152. Where the complaint

fails to allege facts upon which the court can weigh the substantiality of the claim,

plaintiffs must amend their complaints or suffer dismissal. *Id.* As such, to the extent that

the Court concludes that the allegations otherwise state a claim, Defendants hereby demand a more definite statement as to the allegations of the Complaint, including the of identification of the dates on which the statements/violations occurred, the procedures allegedly violated, the IDEA code sections violated, the relevant parties involved and the meetings where statements were made.

**CONCLUSION**

The plaintiff's complaint fails to establish that she engaged in protected activity under the RA because she could not reasonably have believed that the claimed procedural violations deprived any student of an educational opportunity. The Court, therefore, should dismiss the plaintiff's RA claim. In light of the nature and context of her statements, there is no set of facts under which the plaintiff could recover. The Court should also dismiss the plaintiff's First Amendment retaliation claims because even if the plaintiff's speech addressed a matter of public concern, the disruptive nature of the speech and the manner in which it was delivered created actual and/or potential disharmony in the workplace. As such, the employer's interests outweighed the plaintiff's. In light of the fact that the plaintiff's retaliation claims fail, no public policy was violated and, as such, the plaintiff's wrongful termination claim fails as a matter of law as there is no set of facts under which the plaintiff could recover. Alternatively, the court should exercise its discretion to dismiss this pendent state law claim.

To the extent that the Court concludes that one or more of the plaintiff's claims survive, the Court should order the Plaintiff to amend her complaint to plead her retaliation claims with specificity, including the names of the individuals involved, the dates on which statements were made, the precise nature of the statements, and the specific sections of the IDEA violated with respect to each allegedly improper procedure.

-33-

RESPECTFULLY SUBMITTED,

WHITE AND WILLIAMS, LLP

_____
JOHN D. BALAGUER
Bar ID. # 2537
WILLIAM L. DOERLER
Bar ID. # 3627
P.O. Box 709
Wilmington, DE 19899-0709
302-467-4508

Attorneys for Defendants Sussex
Technical School District, Sussex
Technical School District Board of
Education, Sandra Walls-Culotta,
and Steve Huber

Date: 6-6-05

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DOROTHY HOULIHAN,                      )
                                       )
            Plaintiffs,                )
                                       )    C.A. No.  05-00194 JJF
    v.                                 )
                                       )
SUSSEX TECHNICAL SCHOOL DISTRICT,      )    TRIAL BY JURY OF TWELVE
SUSSEX TECHNICAL SCHOOL DISTRICT       )    DEMANDED
BOARD OF EDUCATION, SANDRA WALLS-      )
CULOTTA, individually, and in her official )
capacity, and STEVE HUBER, individually, and in )
his official capacity,                 )
                                       )
            Defendants.                )

### CERTIFICATE OF SERVICE

I, William L. Doerler, Esquire, do hereby certify that on this 6th day of June, 2005, two copies of the foregoing **DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT** were delivered via First Class Mail, postage prepaid, upon:

> Brian F. Dolan, Esquire
> Stumpf, Vickers & Sandy, P.A.
> 8 West Market Street
> Georgetown, DE 19947

WHITE AND WILLIAMS, LLP

JOHN D. BALAGUER
Bar ID. # 2537
WILLIAM L. DOERLER
Bar ID. # 3627
P.O. Box 709
Wilmington, DE 19899-0709
302-467-4508

Attorneys for Defendants Sussex Technical School District, Sussex Technical School District Board of Education, Sandra Walls-Culotta, and Steve Huber