# EXHIBIT B.

Westlaw.

128 Fed.Appx. 876

Page 1

128 Fed.Appx. 876, 198 Ed. Law Rep. 58

(Cite as: 128 Fed.Appx. 876)

C

**Briefs and Other Related Documents**

This case was not selected for publication in the Federal Reporter.

NOT PRECEDENTIAL

Please use FIND to look at the applicable circuit court rule before citing this opinion. Third Circuit Local Appellate Rule 28.3(a) and Internal Operating Procedure 5.3. (FIND CTA3 Rule 28.0 and CTA3 IOP APP I 5.3.)

United States Court of Appeals,
Third Circuit.
C.M. R.M., individually and on behalf of their minor child, B.M.,
Appellants,
v.
BOARD OF EDUCATION OF THE UNION COUNTY REGIONAL HIGH SCHOOL DISTRICT, Union
County New Jersey; Donald Merachnik, Superintendent, in his official
capacity; John Christiano, Director of Special Services, in his official
capacity and individually; Carol Riegel, School Psychologist, in her official
capacity and individually; Patricia Hanigan, School Learning Disabilities
Teacher/Consultant, in her official capacity and individually; Frank Imbriaco,
School Social Worker, in his official capacity and individually; Martin Mayer,
in his official capacity and individually; Laurie Neurodevelopmental
Institute, in its official capacity.
No. 04-1407.

Argued Nov. 2, 2004.

Decided April 19, 2005.

**Background:** Parents, individually and on behalf of their minor child, brought civil rights action against board of education, county, and school personnel alleging violation of Individuals with Disabilities in Education Act (IDEA), Rehabilitation Act, and Federal Educational Rights and Privacy Act (FERPA). The United States District Court for the District of New Jersey, Dennis M. Cavanaugh, J., granted summary judgment for defendants. Plaintiffs appealed.

**Holdings:** The Court of Appeals held that:
(1) student's graduation from high school did not moot his § 1983 claim under IDEA;
(2) parents did not suffer identifiable injury;
(3) three month gap between filing of complaint and alleged retaliatory incident was not so close as to be unusually suggestive of retaliatory motive;
(4) parents' right to privacy under substantive due process clause was not violated;
(5) disclosure of student's school records did not breach confidentiality;
(6) disclosure of student's records did not violate his right to privacy; and
(7) parents' right under due process clause to educate their child as they saw fit was not violated.
Affirmed in part, vacated in part, and remanded.

Stapleton, Circuit Judge, filed concurring and dissenting opinion.

West Headnotes

**[1] Schools ⇌155.5(2.1)**
345k155.5(2.1) Most Cited Cases
Student's graduation from high school did not moot his § 1983 claim under Individuals with Disabilities in Education Act (IDEA), where student sought full panoply of remedies, including declaratory and injunctive relief and compensatory and punitive damages; student could recover compensatory

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

128 Fed.Appx. 876                                                                                                         Page 2
128 Fed.Appx. 876, 198 Ed. Law Rep. 58
**(Cite as: 128 Fed.Appx. 876)**

damages if he could demonstrate that he suffered quantifiable harm through violations of IDEA and injunctive relief could be appropriate if copies of student's records remained outstanding. Individuals with Disabilities in Education Act, § 601 et seq., 20 U.S.C.A. § 1400 et seq; 42 U.S.C.A. § 1983.

**[2] Records** 35
326k35 Most Cited Cases
Issue was waived, of whether student's claims under Federal Educational Rights and Privacy Act (FERPA) were moot, since statute was mentioned only once in 80-page brief and no legal argument was offered as to why district court's holding was erroneous. General Education Provisions Act, § 444, as amended, 20 U.S.C.A. § 1232g.

**[3] Action** 3
13k3 Most Cited Cases

**[3] Civil Rights** 1070
78k1070 Most Cited Cases
Private right of action did not exist under Federal Educational Rights and Privacy Act (FERPA) itself or through § 1983. General Education Provisions Act, § 444, as amended, 20 U.S.C.A. § 1232g; 42 U.S.C.A. § 1983.

**[4] Schools** 155.5(1)
345k155.5(1) Most Cited Cases
Alleged procedural violations of Individuals with Disabilities in Education Act (IDEA) were not actionable where student did not lose educational opportunity and parents were not seriously deprived of their participation rights. Individuals with Disabilities in Education Act, § 601 et seq., 20 U.S.C.A. § 1400 et seq.

**[5] Schools** 155.5(2.1)
345k155.5(2.1) Most Cited Cases
Parents did not suffer identifiable injury by their exclusion from participation in isolated decisions in student's education, for purpose of claim under Individuals with Disabilities in Education Act (IDEA), where parents had extensive influence and actively participated in development of student's individualized educational program (IEP) at multiple stages. Individuals with Disabilities in Education Act, § 601 et seq., 20 U.S.C.A. § 1400 et seq.

**[6] Schools** 155.5(5)
345k155.5(5) Most Cited Cases
Award of damages was not available on claims of procedural violations of Individuals with Disabilities in Education Act (IDEA) where student's educational interests were not prejudiced. Individuals with Disabilities in Education Act, § 601 et seq., 20 U.S.C.A. § 1400 et seq.

**[7] Schools** 155.5(5)
345k155.5(5) Most Cited Cases
Award of damages was not available on § 1983 claims based upon alleged violations of Individuals with Disabilities in Education Act (IDEA), since nothing more than de minimis injury occurred. Individuals with Disabilities in Education Act, § 601 et seq., 20 U.S.C.A. § 1400 et seq.; 42 U.S.C.A. § 1983.

**[8] Schools** 175
345k175 Most Cited Cases
Three-month gap between filing of complaint by student and alleged retaliatory incident was not so close as to be unusually suggestive of retaliatory motive of school personnel, for purpose of § 1983 claim under First Amendment, especially where obvious and unimpeached non-retaliatory motive existed. U.S.C.A. Const.Amend 1; 42 U.S.C.A. § 1983.

**[9] Constitutional Law** 82(12)
92k82(12) Most Cited Cases

**[9] Schools** 155.5(2.1)
345k155.5(2.1) Most Cited Cases
Parents' right to privacy under substantive due process clause was not violated by including their addresses, ages, occupations, and educational histories on student's school records and dissemination of that information to various parties related to ongoing litigation under Individuals with Disabilities in Education Act (IDEA). U.S.C.A. Const.Amend 14; 42 U.S.C.A. § 1983; General Education Provisions Act, § 444, as amended, 20

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

128 Fed.Appx. 876            Page 3

128 Fed.Appx. 876, 198 Ed. Law Rep. 58

**(Cite as: 128 Fed.Appx. 876)**

U.S.C.A. §§ 1232g; Individuals with Disabilities Education Act, § 617, 20 U.S.C.A. § 1417.

**[10] Constitutional Law** 278.5(5.1)
92k278.5(5.1) Most Cited Cases

**[10] Records** 31
326k31 Most Cited Cases
Disclosure of student's school records, including his psychological reports, to Department of Education Office for Civil Rights (OCR), did not breach confidentiality of student's records under Federal Educational Rights and Privacy Act (FERPA), as incorporated by Individuals with Disabilities in Education Act (IDEA), and did not violate his right to privacy under substantive due process clause, since parent filed complaint with OCR alleging that school district discriminated on basis of disability and records were disclosed to OCR only after it requested them in letter citing federal regulations requiring disclosure of all pertinent documents. U.S.C.A. Const.Amend 14; 42 U.S.C.A. § 1983; General Education Provisions Act, § 444, as amended, 20 U.S.C.A. § 1232g(b)(3); 34 C.F.R. §§ 99.31(1)(3)(iii), 100.6(c), 104.61.

**[11] Constitutional Law** 278.5(5.1)
92k278.5(5.1) Most Cited Cases

**[11] Records** 31
326k31 Most Cited Cases
Disclosure of student's school records to school's insurer did not breach confidentiality of student's records under Federal Educational Rights and Privacy Act (FERPA), as incorporated by Individuals with Disabilities in Education Act (IDEA), and did not violate his right to privacy under substantive due process clause, since insurance carrier was entitled to legal documents, including attachments, pursuant to terms of its insurance agreement with school; school stood in special relationship with insurer, who as real party of interest, was entitled to access documents upon which its liability may have turned. U.S.C.A. Const.Amend 14; 42 U.S.C.A. § 1983; General Education Provisions Act, § 444, as amended, 20 U.S.C.A. § 1232g(b)(3); Individuals with Disabilities Education Act, § 614, 20 U.S.C.A. § 1414.

**[12] Constitutional Law** 278.5(5.1)
92k278.5(5.1) Most Cited Cases

**[12] Records** 31
326k31 Most Cited Cases
School official could disclose student's school records to attorney from whom he sought possible legal representation without breaching confidentiality of student's records under Federal Educational Rights and Privacy Act (FERPA), as incorporated by Individuals with Disabilities in Education Act (IDEA), and without violating student's right to privacy under substantive due process clause; official did not have to wait until he formally engaged attorney before he shared documents critical to his case because those documents were needed for lawyer and official to make informed decision regarding representation. U.S.C.A. Const.Amend 14; 42 U.S.C.A. § 1983; General Education Provisions Act, § 444, as amended, 20 U.S.C.A. §§ 1232g(b)(3); Individuals with Disabilities Education Act, § 614, 20 U.S.C.A. § 1414.

**[13] Constitutional Law** 278.5(5.1)
92k278.5(5.1) Most Cited Cases

**[13] Records** 31
326k31 Most Cited Cases
Disclosure of student's records to school's expert did not breach confidentiality of student's records under Federal Educational Rights and Privacy Act (FERPA), as incorporated by Individuals with Disabilities in Education Act (IDEA), and did not violate his right to privacy under substantive due process clause, since expert functioned as agent of counsel and he was bound by duty to not disseminate confidential documents he received in that capacity. U.S.C.A. Const.Amend 14; 42 U.S.C.A. § 1983; General Education Provisions Act, § 444, as amended, 20 U.S.C.A. §§ 1232g(b)(3); Individuals with Disabilities Education Act, § 614, 20 U.S.C.A. § 1414.

**[14] Constitutional Law** 278.5(5.1)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

128 Fed.Appx. 876                                                                                                        Page 4
128 Fed.Appx. 876, 198 Ed. Law Rep. 58
**(Cite as: 128 Fed.Appx. 876)**

92k278.5(5.1) Most Cited Cases

**[14] Records** ⊱31
326k31 Most Cited Cases
Disclosure of student's records to psychiatrist, as school's expert, did not breach confidentiality of student's records under Federal Educational Rights and Privacy Act (FERPA), as incorporated by Individuals with Disabilities in Education Act (IDEA), and did not violate his right to privacy under substantive due process clause. U.S.C.A. Const.Amend 14; 42 U.S.C.A. § 1983; Individuals with Disabilities Education Act, § 614(c)(1), (d)(1)(B), 20 U.S.C.A. § 1414(c)(1), (d)(1)(B).

**[15] Constitutional Law** ⊱278.5(5.1)
92k278.5(5.1) Most Cited Cases

**[15] Records** ⊱31
326k31 Most Cited Cases

**[15] Schools** ⊱148(2.1)
345k148(2.1) Most Cited Cases
Parents' right under due process clause to educate their child as they saw fit was not violated by alleged procedural violations of Individuals with Disabilities in Education Act (IDEA) and by alleged unauthorized disclosures of school records. U.S.C.A. Const.Amend 14; 42 U.S.C.A. § 1983.
*879 On Appeal from an Order of the United States District Court for the District of New Jersey. (Dist. Court No. 95-cv-02743). District Court Judge: Dennis M. Cavanaugh.

Carol Matula (Argued), Haber & Silver, Florham Park, NJ, for Appellant.

Stephen J. Edelstein (Argued), (Bd of Ed of the Union Cty., et al.), Schwartz, Simon, Edelstein, Celso & Kessler, Florham Park, NJ, Mary J. Hammer (Argued), (Carol Riegel, etc.), Bucceri & Pincus, Clifton, NJ, Franz J. Skok (Argued), (Martin Mayer, etc.), Johnstone, Skok, Loughlin & Lane, Westfield, NJ, for Appellees.

Before ALITO, FUENTES, and STAPLETON, Circuit Judges.

STAPLETON, Circuit Judge, concurring and dissenting.

OPINION OF THE COURT

PER CURIAM.

The parties are familiar with the facts of this case, so we need not recite them. We affirm in part, vacate in part, and remand to the District Court so that it may decide whether Plaintiffs are entitled to injunctive, declaratory, or other appropriate relief with respect to the Individuals with Disabilities in Education Act ("IDEA") claims that the District Court found moot.

I.

[1][2][3] The District Court held that Plaintiffs' claims under the IDEA, 20 U.S.C. § 1400 *et seq.,* are moot because B.M. graduated from high school in 1996. [FN1] *See* Joint Appendix ("A") 41; 47-48. Citing *Board of Education of Oak Park v. Nathan R.,* 199 F.3d 377 (7th Cir.2000), the District Court reasoned that, since B.M. is "not seeking compensatory education or other ongoing relief," there is no live controversy to adjudicate. *See* A48. We disagree.

> FN1. The District Court also held that Plaintiffs' claims under the Federal Educational Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C. § 1232g(a)(2), are moot. Plaintiffs only mention this statute once in their 80-page brief, and they offer no legal arguments as to why the District Court's holding was erroneous. We therefore deem the issue waived. *See Laborer's Int'l Union v. Foster Wheeler Corp.,* 26 F.3d 375, 398 (3d Cir.1994) (finding an issue waived because "passing reference to an issue ... will not suffice to bring that issue before this court") (citations and quotations omitted). Even if it were not waived, Plaintiffs have no private right of action under the FERPA itself or via 42 U.S.C. § 1983. *See Gonzaga Univ. v. Doe,* 536 U.S. 273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

128 Fed.Appx. 876                                                                                                          Page 5
128 Fed.Appx. 876, 198 Ed. Law Rep. 58
**(Cite as: 128 Fed.Appx. 876)**

A.

Nathan R. cannot control the outcome of this case for two reasons. First, unlike the Third Circuit, the Seventh Circuit forecloses the compensatory and punitive damages sought here. It limits money awards under the IDEA to reimbursements of the cost of obtaining educational services that the school districts should have provided under the IDEA. See *880*Sch. Comm. v. Dep't of Educ.*, 471 U.S. 359, 369-70, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985) (authorizing reimbursement and prospective injunctive relief under the IDEA's predecessor); *Charlie F. v. Board of Educ.*, 98 F.3d 989 (7th Cir.1996) ("we conclude that damages are not 'relief that is available under' the IDEA"); *Weyrick v. New Albany-Floyd County Consol. Sch. Corp.*, 2004 WL 3059793 at *6-8 (S.D.Ind.2004) ("To the extent plaintiffs seek 'monetary damages' ... or 'punitive damages' ..., as opposed to reimbursement or compensatory services, they seek relief that is not available under the IDEA.").

In this Circuit, a broader array of remedies is available for 42 U.S.C. § 1983 suits seeking redress of IDEA violations. Although we have "not settled whether damages are recoverable in an action arising solely under IDEA," *Bucks County Dep't of Mental Health / Mental Retardation v. Pennsylvania*, 379 F.3d 61, 68 n. 5 (3d Cir.2004) (citations omitted), we have held that "in a § 1983 action to enforce IDEA, ... compensatory damages are available to remedy IDEA violations." *W.B. v. Matula*, 67 F.3d 484, 494 (3d Cir.1995) (citation omitted). See also *Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 252 (3d Cir.1999). We found "that the traditional presumption in favor of all appropriate relief is not rebutted as to § 1983 actions to enforce IDEA," and suggested that "compensatory damages for generalized pain and suffering" may be available in certain § 1983-based IDEA claims. *Matula*, 67 F.3d at 495. Thus, so long as the relief B.M. seeks is deemed "appropriate" in this case, it is awardable under *Matula*. [FN2]

> FN2. According to *Matula*, even punitive damages may be available. See 67 F.3d at 495 (citing *Woods v. N.J. Dep't of Educ.*, 796 F.Supp. 767 (D.N.J.1992) with approval for the proposition that "compensatory and punitive damages are available in [a] § 1983 action for IDEA violations").

Second, beyond this legal difference between our Circuit and the Seventh, the specific remedies sought in each case differ as well. Nathan R.'s case was moot because he requested only special education services, which were to be provided while he was in high school. *See id.* at 378. Once he graduated, his need for these services disappeared, and "no action [the Seventh Circuit] could take would affect his or the School's rights." *Id.* at 381. In contrast, B.M. seeks a full panoply of remedies, including declaratory and injunctive relief and compensatory and punitive damages. Remedies of this sort do not expire upon graduation. For example, if B.M. could demonstrate that the Defendants caused him quantifiable harm through violations of the IDEA, he could recover compensatory damages. Plaintiffs may also merit further injunctive relief if they can prove (as they insisted at oral argument) that copies of B.M.'s records remain outstanding. In short, unlike in *Nathan R.*, the District Court can still take actions that will affect Plaintiffs' and Defendants' rights, so the case is not moot. [FN3]

> FN3. Two further points warrant mentioning. First, it is unclear whether the District Court's remark, "It should be noted that this Court gives little weight or credibility to the testimony of the Plaintiffs," was addressed to this claim. *See* A76. If it was, such credibility determinations alone are insufficient to satisfy the requirements of Rule 52(c), under which the District Court purported to act. *See Newark Branch NAACP v. City of Bayonne*, 134 F.3d 113 (3d Cir.1998) (holding that the district court must make findings of fact adequate to understand the basis for the court's decision under Fed.R.Civ.P. 52(c)).
> Second, to the extent, if any, that the Court's disposition of this claim rests on

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

128 Fed.Appx. 876                                                                                                              Page 6
128 Fed.Appx. 876, 198 Ed. Law Rep. 58
**(Cite as: 128 Fed.Appx. 876)**

collateral estoppel, *see* A77, a decision of the Office of Administrative Law is not binding because the erroneous decision of the District Court on mootness rendered that decision unreviewable. *See, e.g., J.S.K. v. Hendry County Sch. Bd.*, 941 F.2d 1563, 1569 (11th Cir.1991) (holding that judicially unreviewed state administrative hearings have no preclusive effect in federal court); *Drinker v. Colonial Sch. Dist.*, 888 F.Supp. 674, 680 (E.D.Pa.1995), *aff'd on other grounds*, 78 F.3d 859 (3d Cir.1996) (unreviewed state administrative law IDEA proceedings do not have a preclusive effect upon the federal court system).

**\*881 B.**

[4] Although we hold that Plaintiffs' claims are not moot, we need not remand all of them. In particular, Plaintiffs' allegations are insufficient to state a claim for damages under the IDEA because they fail to allege any identifiable injury.

Other circuits have established that only those procedural violations of the IDEA which result in loss of educational opportunity or seriously deprive parents of their participation rights are actionable. For example, in *W.G. v. Board of Trustees*, 960 F.2d 1479 (9th Cir.1992), the Ninth Circuit rejected the notion that procedural flaws "automatically require a finding of a denial of a [free and appropriate public education under the IDEA]." *Id.* at 1484. Instead, the Court held that only "procedural inadequacies that result in the loss of educational opportunity or seriously infringe the parents' opportunity to participate in the IEP formulation process clearly result in the denial of a [free and appropriate public education]." *Id.* (citations omitted). Similarly, the First Circuit observed that "procedural flaws do not necessarily render an [Individualized Education Plan ("IEP") ] legally defective" and held that "[b]efore an IEP is set aside, there must be some rational basis to believe that procedural inadequacies compromised the pupil's right to an appropriate education, seriously hampered the parents' opportunity to participate in the formulation process, or caused a deprivation of education benefits." *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 994 (1st Cir.1990) (en banc) (citations omitted). Consistent with those holdings, the Sixth Circuit rejected an IDEA claim for technical noncompliance with procedural requirements where the alleged violations did not result in "substantive deprivation," *see Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 625 (6th Cir.1990), and the Fourth Circuit refused to award compensatory educational services where procedural faults committed by Board did not cause the child to lose any educational opportunity, *see Burke County Bd. of Educ. v. Denton*, 895 F.2d 973, 982 (4th Cir.1990).

A plaintiff bears the burden of establishing the harm caused by the claimed procedural shortcomings, and Plaintiffs here clearly have not met that burden. Their primary contentions relating to harms are that B.M.: (1) was deprived of an "appropriate education" under the IDEA during his sophomore year and the first part of his senior year; (2) was subject to constant harassment at school; (3) was unable to transfer because any new school would require his tainted records; and (4) faced obstacles to his post-secondary education. But Plaintiffs' bare allegations notwithstanding, the District Court found that they were "unable to produce any evidence to convince this Court that B.M. was excluded from participation in, denied the benefits of, or subject to discrimination at school." A50. It follows that B.M. suffered no educational loss.

[5] The record is also adequate to show--based on undisputed facts-- that the parents actively participated in the development of B.M.'s IEP at multiple stages. *See Target Range*, 960 F.2d at 1484 (identifying loss of opportunity for parental participation as an alternative type of educational injury under IDEA); *Roland*, 910 F.2d at 994. B.M.'s parents' claim that they were deprived of the opportunity to participate in particular isolated **\*882** decisions is insignificant in light of their extensive influence over every step of B.M.'s education at Livingston.

[6] Finally, though Plaintiffs did successfully

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

remove certain reports from B.M.'s records, and while other reports were prepared that should not have been, the damages arising from those reports and their brief and limited use are purely speculative. *See Taylor Milk Co. v. Int'l Bro. of Teamsters,* 248 F.3d 239, 247 (3d Cir.2001). Because there are no facts on record that suggest B.M.'s educational interests were prejudiced by his school's various procedural errors, no damages are available to petitioners on their IDEA claims.

[7] The absence of injury similarly precludes any damages award with respect to Plaintiffs' § 1983 claims based on alleged IDEA violations. For the same reasons that Plaintiffs cannot show that B.M. suffered a loss of educational opportunity or that his parents suffered a loss of participation in developing B.M.'s educational program, it cannot be said that petitioners suffered anything more than de minimis injury. Accordingly, no damages are available to petitioners based on their § 1983 claims. *See Suppan v. Dadonna,* 203 F.3d 228, 235 (3d Cir.2000) (stating that to be actionable a Section 1983 tort requires more than de minimis injury).

II.

Plaintiffs appeal the District Court's rulings in favor of the Defendants on several additional claims. They include: 1) summary judgment for Defendant Riegel on Plaintiffs' "brownie incident" claim; 2) summary judgment for the Defendants on Plaintiffs' substantive Due Process claims; 3) the District Court's order appointing Edelstein as custodian; and 4) its denial of certain discovery requests. [FN4]

> FN4. The District Court also granted summary judgment for Defendants on claims under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Plaintiffs did not raise this issue in their brief, so we do not address it on appeal.

A.

[8] Plaintiffs contest the District Court's holding that Defendant Riegel did not violate their rights during the so-called "brownie incident." They argue that Riegel's actions offended the First Amendment because they constituted retaliation against B.M. and his parents for filing a legal complaint in this case. We review the grant of summary judgment de novo, viewing the facts in the light most favorable to the Plaintiffs. *Fogarty v. Boles,* 121 F.3d 886, 887 (3d Cir.1997).

On September 15, 1995, B.M.'s Child Study Team ("CST") held an open house. The CST members stayed in one room, called a "resource room," and teachers stopped in during their free periods to discuss the CST's students and their Individualized Education Plans. The room had a table full of refreshments. As he usually did, B.M. entered the room that morning and dropped off his belongings. He asked a teacher in the room if he could take an item from the refreshment table. She said yes, but he did not take anything at that time. Around lunchtime, B.M. returned and took a brownie from the refreshment table. Carol Riegel jumped up and grabbed B.M.'s arm with one hand, using the other to pry the brownie from B.M.'s hand and set it back on the table. After the incident, B.M. cursed and left the room. He sustained no physical injuries, and did not visit the school nurse. A1303-04. He later explained that he was angry not because of the event itself, but *883 because he could not retaliate without suffering severe consequences. A1306-07.

In a 42 U.S.C. § 1983 suit for retaliation under the First Amendment, a plaintiff must show: (1) that he was engaged in protected activity; (2) that the government responded with retaliation; and (3) that the protected activity was the cause of the retaliation. *Estate of Smith v. Marasco,* 318 F.3d 497, 512 (3d Cir.2003). Defendants object on each element, but their causation argument is most persuasive.

Summary judgment was proper because Plaintiffs failed to raise a genuine issue as to whether there is a causal connection between B.M.'s lawsuit and the brownie incident. *See Robinson v. Pittsburgh,* 120 F.3d 1286, 1302 n. 16 (1997). Riegel appears to have taken the brownie from B.M.'s hand because she thought he was breaking the rules, not because

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

128 Fed.Appx. 876                                                                                                     Page 8

128 Fed.Appx. 876, 198 Ed. Law Rep. 58

**(Cite as: 128 Fed.Appx. 876)**

"she was furious that this litigation had achieved what she had lobbied against when she conspired with Christiano and Simon to make sure that her report would continue to be available for use in planning B.M.'s education." Plaintiff's Brief at 54. The three-month gap between the filing of a complaint and the incident is not so close as to be unusually suggestive of retaliatory motive, especially since such an obvious and unimpeached non-retaliatory motive exists. *Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 504 (3d Cir.1997) (internal quotations and citations omitted).

B.

[9] Plaintiffs also claim that the District Court erred in granting summary judgment for the Defendants on their substantive Due Process claims. First, Plaintiffs allege a violation of their constitutional right to privacy when C.M.'s and R.M.'s addresses, ages, occupations, and educational histories were included on B.M.'s school records, which were disseminated to various parties related to the ongoing litigation. Citing *Nixon v. Adm'r of GSA,* they claim that "[i]f a plaintiff has a reasonable expectation of privacy, the Constitution protects against the disclosure of this information." 433 U.S. 425, 458, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977).

All of the cases Plaintiffs cite are inapposite. *Nixon*, for example, held that the former President's right to privacy was not violated by a statute that required preservation of certain Presidential materials. To the extent that this case is relevant, it actually cuts against Plaintiffs, because it allowed archivists to screen the Presidential materials to separate and give back those materials that were entirely private. *See id.* at 455-65, 97 S.Ct. 2777. Another case cited by Plaintiffs, *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), also militates against their position. *Whalen* sustained the constitutionality of a New York statute requiring a database containing the name, address, and age of every person who obtained prescription drugs for which there were both lawful and unlawful markets. Although the database could be accessed by certain health department and investigatory personnel, the Court found that it did not amount to "an invasion of any right or liberty protected by the Fourteenth Amendment." *Id.* at 605, 97 S.Ct. 869. No case cited by the Plaintiffs even approaches the proposition that the Constitution is offended by disclosure of parents' occupations or educational histories to court reporters, insurers, attorneys, and expert witnesses during the course of litigation.

Moreover, the IDEA, which Plaintiffs claim "provide[s] a basis for an expectation of privacy in school records," does not require that this kind of parental information should be kept confidential in this context. Indeed, it specifically exempts from its confidentiality requirements "the **\*884** student's name, address, telephone listing, date and place of birth, major field of study, dates of attendance, degrees and awards received, and the most recent previous educational agency or institution attended by the student." *See* 20 U.S.C. § 1417(c) (directing the Secretary of Education to comply with 20 U.S.C. § 1232g); 20 U.S.C. § 1232g(A)(5)(A) (defining "directory information" exempt from confidentiality requirements). Nowhere does the IDEA state that parental "directory information" should be confidential. In fact, the only parental information the IDEA protects is financial records. *See id.* § 1232g(a)(1)(C).

[10] Plaintiffs also challenge disclosure of B.M.'s school records, including his psychological reports, to the Department of Education Office for Civil Rights ("OCR"), defendants' insurance carrier, prospective counsel, defendants' expert, and the psychiatrist (Martin Mayer) engaged to evaluate B.M. For the following reasons, we believe these disclosures did not breach the confidentiality of B.M.'s records and did not violate his right to privacy.

C.M. filed a complaint with the OCR in 1993 alleging that the school district discriminates on the basis of disability. Defendant Merachnik disclosed B.M.'s records to the OCR only after it requested them in a letter citing federal regulations requiring that the OCR be provided with all pertinent documents. *See* Defendants' Supplemental Appendix ("DA") at 88-90; *see also* 34 C.F.R. § 100.6(c); 34 C.F.R. § 104.61. Disclosures to the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

128 Fed.Appx. 876                                                                                                          Page 9
128 Fed.Appx. 876, 198 Ed. Law Rep. 58
**(Cite as: 128 Fed.Appx. 876)**

OCR were thus clearly authorized under 20 U.S.C. § 1232g(b)(3), which provides that FERPA's confidentiality provisions, incorporated by IDEA, do not preclude access to student records necessary to enforce federal law. *See also* 34 C.F.R. § 99.31(1)(3)(iii).

[11] Second, Petitioners challenge disclosures to Livingston's insurer. But the insurance carrier was entitled to legal documents, including attachments, pursuant to the terms of its insurance agreement with Livingston. *See* DA3. And it is well-established that insured parties stand in a special relationship with their insurers, who as real parties of interest, are entitled to access documents on which their liability may turn. *See Gray v. Comm. Union Ins. Co.,* 191 N.J.Super. 590, 468 A.2d 721, 725 (1983).

[12] Third, Petitioners claim that defendant John Christiano improperly provided confidential documents to an attorney from whom he sought possible legal representation. But Christiano did not have to wait until he formally engaged an attorney before he shared documents critical to his case; otherwise, neither he nor the lawyer could make an informed decision regarding representation. *See In re Bevill, Bresler & Schulman Asset Manag. Corp.,* 805 F.2d 120, 124 n. 1 (3d Cir.1986).

[13] Fourth, Petitioners challenge Livingston's disclosure of B.M.'s records to its expert. However, because experts function as agents of counsel and are themselves bound by a duty not to disseminate confidential documents they receive in that capacity, disclosure to experts does not constitute a breach of confidentiality or privacy. *See State v. Davis,* 116 N.J. 341, 561 A.2d 1082, 1092 (1989).

[14] Finally, disclosures to Dr. Mayer were permissible because IDEA specifically provides that "individuals who have knowledge or special expertise" and certain "qualified professionals" may participate in the evaluation of disabled children. 20 U.S.C. § 1414(d)(1)(B); 20 U.S.C. § 1414(c)(1) . It is implausible that Congress intended to restrict those individuals' access to children's school reports. Corollary *885 New Jersey state regulations similarly contemplate access by professionals involved in developing a disabled child's IEP. *See* N.J.A.C. 6A:14-2.3(i)(1)(vi). Accordingly, defendants' disclosures to Mayer were not improper.

In sum, though his parents have defended the confidentiality of B.M.'s records with the avowed purpose of protecting his post-secondary educational opportunities, no confidential records were released to any individual or entity that could jeopardize B.M.'s educational or other interests. All those given access were entitled to it.

[15] Plaintiffs' second substantive Due Process claim--that they lost the right to educate their child as they saw fit--merits little discussion. Contrary to Plaintiffs' assertions, the violations alleged in this case do not implicate the right to send one's child to a competent nonpublic school, *see Pierce v. Soc'y of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), the right to study a foreign language, *see Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), or a patient's right to refuse unwanted medical treatment. *See White v. Napoleon,* 897 F.2d 103, 114 (3d Cir.1990). Because Plaintiffs have not offered a single precedent in support of their argument, the District Court properly found that they did not raise an issue of material fact as to whether they were denied the right to educate their child as they see fit.

C.

Plaintiffs next argue that the District Court's Order aimed at preserving the confidentiality of B.M.'s records constituted an abuse of discretion. The Court ordered that Stephen Edelstein, counsel for defendants,

> collect all of B.M.'s school records ... [and] hold these records in his office in a locked and secure location which is accessible only to him, until the termination of this matter or the further Order of this Court, at which time the records and any copies thereof shall be disposed of in accordance with this Court's Order.

A36. It further required Edelstein to obtain any of B.M.'s records that were in the possession of

insurance carriers. *Id.*

Plaintiffs argue that this ruling was an abuse of discretion because it was both too broad and too narrow. First, they fault the District Court for requiring Edelstein to "destroy all of B.M.'s pupil records at the end of this case." Plaintiffs' Brief at 59. But the Order does not mandate destruction. It merely states that B.M.'s records should be collected in one location until the end of litigation, pending further direction from the Court. Second, Plaintiffs argue that "[t]he Court should only have ordered the challenged records to be expunged and the remainder of his records returned to his school district." *Id.* This request is puzzling, since B.M.'s school district was dissolved in 1997. Even if the records could be returned to the defunct district, Plaintiffs have not demonstrated why they should be able to redact records merely because they have challenged them, before any court has determined that they are legally flawed. [FN5] The District Court's Order was not an abuse of discretion.

> FN5. As explained above in Part I, Plaintiffs will have an opportunity on remand to show that redaction or expungement of certain records is "appropriate relief" under the IDEA and § 1983.

### D.

In an October 4, 1999 Order, a Magistrate Judge in this case refused to allow *886 Plaintiffs to subject certain Defendants to additional interrogatories and depositions well after the original discovery deadline had passed. The Judge did permit three interrogatories which he felt were representative of the rest. DA115. He authorized future discovery if the fruits of the three interrogatories justified it. *Id.* Far from being an abuse of discretion, this ruling sensibly balanced the competing interests of justice and efficiency in light of the protracted discovery that had already taken place in this case. *See Lloyd v. Hovensa, LLC.,* 369 F.3d 263, 274-75 (3d Cir.2004); *Brumfield v. Sanders,* 232 F.3d 376, 379-80 (3d Cir.2000).

### III.

For the foregoing reasons, we affirm the ruling of the District Court with respect to all claims except Plaintiffs' pleas for declaratory and injunctive relief under the IDEA. The District Court's holding with respect to those claims is vacated, and the matter is remanded for further consideration. The District Court should also review the need for additional discovery in light of this opinion.

STAPLETON, Circuit Judge.

I am able to join most, [FN6] but not all, of the Court's opinion. I would remand with instructions that the District Court should promptly try plaintiffs' First Cause of Action and determine whether they are entitled to declaratory, injunctive, or damage relief, together with attorneys' fees and costs, on that claim.

> FN6. In particular, I agree that we should affirm the District Court's resolution of all of plaintiffs' constitutional claims, their privacy claims based on statutory grounds, and their claims arising out of the alleged disclosure of B.M.'s records to attorneys, insurers, experts and Dr. Mayer. I also agree that the District Court erred in dismissing plaintiffs' First and Fifth Causes of Action as moot and in giving collateral effect to an administrative determination that was not subject to judicial review because of that mootness ruling.

This controversy originated over twelve years ago, and this suit will soon have its tenth anniversary. It appears to me that in part because of the adversarial stance of the parties over all of those years and the efforts of the plaintiffs to convert a relatively straightforward claim into a *cause celebre,* the parties and the District Court have lost sight of plaintiffs' original and primary claim. Because that claim may have merit, may entitle plaintiffs to important relief, and, yet, has never been adjudicated, I would remand and direct that expedited attention be given to it.

Section 1414(b)(3)(B) of the IDEA provides that "[e]ach local educational agency shall ensure that ...

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

128 Fed.Appx. 876                                                                                                                              Page 11

128 Fed.Appx. 876, 198 Ed. Law Rep. 58

**(Cite as: 128 Fed.Appx. 876)**

any standardized tests that are given to the child ... have been validated for the specific purpose for which they are used." 20 U.S.C. § 1414(b)(3)(B). Section 1415(b) gives a parent a right to "prior notice" whenever the agency proposes to initiate or change the evaluation of the child, which under § 1415(c) must include a description of each evaluation procedure or test. Section 1415(b)(6) provides that parents must be able to file a formal complaint "with respect to any matter relating to the ... evaluation of the child," which necessarily includes the right to complain about not receiving appropriate notice or the giving of a test that was not validated. If the parent is not satisfied with the response to the complaint, access to an administrative process is provided, see § 1415(f) and (g). And finally, under § 1415(i)(2)(A), "any party aggrieved by the findings and decision [in the administrative process] shall have the right to bring a civil action with respect to the complaint" in a state or federal District court, and the court is to grant "such relief as [it] determines to be *887 appropriate." While it must give "due weight" to the administrators' proceedings, it must accept additional evidence and make an independent decision based on "the preponderance of the evidence."

In this case, B.M.'s parents filed a complaint with the school about invalid and unreliable testing and lack of proper parental notice that, along with other procedural violations of IDEA, allegedly produced an evaluation of B.M. which was inaccurate, misleading and damaging to him. They sought expungement of that evaluation, which was denied by the defendants. They proceeded through the administrative process and were ultimately denied relief. The parents then filed this suit in the District Court asking it, *inter alia*, expunge the harmful record.

The plaintiffs' "First Cause of Action" asks the District Court to review the administrative proceedings and grant the appropriate relief there denied. It spells out the various procedural violations of the IDEA that had produced the allegedly misleading evaluation of B.M. and then alleges as follows:

84. B.M. is expected to enter college under admission procedures developed for special education students. The procedures typically require submission of a school psychologist's report, as indicated in written material provided to the student by his guidance counselor at GL, Mrs. Menk, and as corroborated in other sources.
85. If the Board is not enjoined from disclosing the challenged records in B.M.'s file to potential post-secondary education programs in which B.M. seeks to enroll, he will be effectively foreclosed from applying to those programs. B.M. will be irreparably damaged by his inability to pursue post-secondary education and the concomitant emotional distress.
86. As a result of the district's failure to follow state and federal regulations regarding evaluations, C.M. and R.M. cannot agree to any further evaluations by the district and are forced to incur expenses in having the psychological and educational evaluations required for college admissions to programs for the learning disabled done privately.
87. B.M.'s educational records must be maintained after graduation so that he can document his need for accommodations in post-secondary education and the work place under § 504. Because the records sought to be expunged provide harmful and inaccurate information, B.M. will be irreparably harmed by their disclosure to post-secondary programs and employees if the Board is not enjoined from disclosing the challenged records to said programs and employees.
88. The evaluations written by Ms. Riegel and Dr. Mayer which were relied upon by the CST caused the CST to provide an improper program for B.M. As a result of this improper program the parents were forced to challenge the IEP developed by the CST resulting in legal and expert fees. Plaintiffs have been harmed, because they have not received reimbursement of attorney's fees and related costs for over a year since these costs have been expended. Plaintiffs seek unreimbursed fees and costs, including pre-- and post-judgment interest if accrued.
A.985-86.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

128 Fed.Appx. 876 Page 12
128 Fed.Appx. 876, 198 Ed. Law Rep. 58
**(Cite as: 128 Fed.Appx. 876)**

This Count asks the District Court to declare that "if the defendant Board is not enjoined from disclosing the challenged records to post-secondary programs in which B.M. intends to enroll or [to] potential employers, B.M. will suffer irreparable harm." A.988. In addition to compensatory and punitive damages, Count One asks *888 the District Court to enter an injunction (a) "[d]irecting the ... Board to expunge the [challenged] records," (b) "[d]irecting that no party communicate information relating to the challenged material including the release of any document which references the challenged reports," and (c) "[d]irecting that any document which incorporates any portion of the expunged record be retrieved....". A.988.

In an opinion dated December 19, 2002, the District Court, while acknowledging that the IDEA "clearly grants parents specific procedural rights which they may enforce in administrative proceedings as well as in federal court," A.47, dismissed plaintiffs' First Cause of Action as moot, explaining:

> There is no live case or controversy before the Court. B.M. has graduated from high school. B.M. did not suffer any harm as a result of any of Defendants' alleged violations, and is not seeking compensatory education or other ongoing relief. The Court recognizes that Plaintiffs are concerned about the dissemination of an allegedly flawed evaluation, but the Court remedied this issue at oral argument with an order that all copies of B.M.'s evaluation that had been disseminated were to be collected and retained in one central location and no further dissemination should occur. There is no potential harm to Plaintiffs from the dissemination of the evaluation as all copies have been contained.

A.48.

The order referred to by the District Court, entered on December 17, 2002, directed that efforts be made to trace and retrieve any of B.M.'s records no longer held by the school and ordered that B.M.'s records be held by defense counsel "in his office in a locked and secure location which is only accessible to him, until the termination of this matter or the further Order of this Court, at which time the records and any copies thereof shall be disposed of in accordance with this Court's Order ..." A.36. [FN7] The District Court terminated this case by dismissing the last of the plaintiffs' claims on January 13, 2004. It gave no instructions with respect to the expungement or disposition of the challenged documents. Nor does anyone claim that it has done so since.

> FN7. Like my colleagues, I find no abuse of discretion in the entry of this order. It was a reasonable temporary measure, but it did not adjudicate plaintiffs' First Cause of Action.

In addition to dismissing plaintiffs' First Cause of Action as moot, the District Court's December 19, 2002, opinion disposed of all of plaintiffs' claims with the exception of the claims included in its "Fourth Cause of Action." [FN8] These claims were based on § 1983 and alleged constitutional violations. *See* A.52-53. Following a motion for clarification of its order implementing the December 19, 2002, opinion, the District Court entered an order providing in part as follows:

> FN8. In the December 19, 2002, opinion, summary judgment was granted to the defendants on Count Two, a claim under § 504 of the Rehabilitation Act, because "[p]laintiffs are unable to produce any evidence to convince this Court that B.M. was excluded from participation in, denied the benefits of, or subject to discrimination at school...." A.50. Summary judgment was also granted on Count Three based on the doctrine of law of the case. With respect to Count Four, plaintiffs' First Amendment claim was found to be "completely without merit," as was their Due Process claim based on the "Brownie" incident. A. 52-53. Count Five, a parallel to Count One based on state law, was dismissed as moot. Thus, the only claims surviving were Count Four § 1983 claims based on alleged constitutional violations. A.52-53.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

128 Fed.Appx. 876                                                                Page 13
128 Fed.Appx. 876, 198 Ed. Law Rep. 58
**(Cite as: 128 Fed.Appx. 876)**

*889 ORDERED that the remaining claims against Defendants are as follows: (1) U.S.C. § 1983 claims against Defendant Union County School District and Defendants Merachnik, Christiano, Hanigan, Imbriaco, Mayer and Riegel in their official capacities, but not as to punitive damages; (2) a 42 U.S.C. § 1983 claim against Defendant Riegel in her individual capacity; (3) Defendant Laurie Neurodevelopmental remains in the case to the extent that LNI might be liable to Plaintiffs for attorneys' fees if the Court were to find that attorneys' fees should be awarded. A. 63-64. Given the text of the December 19, 2002, opinion, this order can only be read as preserving only Count Four § 1983 constitutional claims. See fn.2, *supra*. It necessarily follows that plaintiffs' First Cause of Action and the IDEA violations there alleged were not before the Court at the time of the subsequent trial. [FN9] This means that plaintiffs have never been called upon to come forth with their evidence supporting liability and relief on their First Cause of Action. [FN10]

> FN9. In its opinion following trial, the District Court stressed that it had previously "dismissed all of Plaintiffs' claims pursuant to the IDEA and the Rehabilitation Act" and, accordingly, "Plaintiffs [had] no means by which to overturn the Office of Administrative Law decision." A.77. The District Court's ultimate conclusion with respect to the claims that were tried was: "In order to establish a claim under § 1983, a plaintiff must establish that [his] constitutional rights have been violated, which Plaintiffs utterly fail to do." A.78.

> FN10. C.M. was asked at trial what "harm" had resulted from the report containing the allegedly false evaluation of B.M. In response, she testified about the pre-litigation "out of pocket" expenses she and her husband had incurred in attempting to get the defendant to expunge the misleading and harmful report, mentioning in addition to attorneys' fees "costs for transcripts" of the administrative hearing, "library copying costs," the "cost for obtaining the records from the Office of Civil Rights." She also spoke of the cost of consultations with Dr. Schneider, an expert. It is unclear whether Dr. Schneider was engaged as a witness or to provide the accurate psychological and educational evaluations required for college admission which should have been provided by the school. More important, C.M. testified, was the fact that because of concern about the education B.M. was getting, B.M. and his parents attempted to have B.M. moved to a different school but were unsuccessful in doing so because any new school would insist on receiving the file including the misleading report before accepting a student like B.M. with special needs.

The Court today expressly and correctly holds that plaintiffs' First Cause of Action is not moot and that plaintiffs may be entitled to declaratory and injunctive relief on that claim. Moreover, I am confident that my colleagues would find the plaintiffs entitled to attorneys' fees and costs should they be successful in obtaining such relief. 20 U.S.C. § 1415(i)(3)(B). The Court's opinion further acknowledges that "we have held that in a § 1983 action to enforce IDEA, ... compensatory damages are available to remedy IDEA violations" so long as that remedy is "appropriate" within the meaning of the Act. Op. at 880 (quoting from *W.B. v. Matula*, 67 F.3d 484 (3d Cir.1995)). Surprisingly, however, they preclude any damage recovery here. The IDEA violations at issue in *Matula* when it found compensatory damages "appropriate" were procedural ones indistinguishable from those here alleged, [FN11] and I *890 am at a loss to understand why my colleagues have ruled out the possibility of a damage recovery in this matter. [FN12] If it is true, for example, that B.M.'s parents have had to pay for valid evaluations of B.M. which the school was required by the IDEA to provide in order to permit an assessment of his special needs, I would hold that a compensatory damage remedy was appropriate. Such harm would, in my judgment, be neither "purely speculative" nor

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

128 Fed.Appx. 876    Page 14

128 Fed.Appx. 876, 198 Ed. Law Rep. 58

**(Cite as: 128 Fed.Appx. 876)**

"de minimis." Op. at 8.

> FN11. The *Matula* court described the plaintiffs' IDEA allegations as follows:
> Specifically, plaintiffs allege that defendants violated IDEA by (1) failing to inform them of their statutory rights; (2) failing to refer E.J. for evaluation from September 1991 until February 1992; (3) failing to advise W.B. in writing of its refusal; to evaluate E.J. prior to February 1992; (4) conducting only a limited evaluation of E.J. in April 1992; (5) refusing to develop an IEP until April 1993, in the wrongful belief that E.J.'s academic performance disqualified him for IDEA services; (6) withholding from W.B. evaluation results indicating E.J. may be neurologically impaired; and (7) conditioning the commencement if occupational therapy for E.J. on settlement of W.B.'s due process petitions and refusing to provide those services until January 1993.
> *Matula,* 67 F.3d at 500.

> FN12. My colleagues apparently find dispositive the District Court's finding that plaintiffs were "unable to produce any evidence ... that B.M. was excluded from participation in, denied the benefits of, or subject to discrimination at school." A.50. This was the court's disposition of the FERPA claim that constituted plaintiffs' Second Cause of Action, which is not before us. FERPA requires such a showing. It does not follow, however, that compensatory damages are not available where substantial harm results from violations of the specific procedural requirements of IDEA. Indeed, *Matula* teaches to the contrary.

I would not rule out the possibility that when the facts are fully developed one or more of the individual defendants will be entitled to qualified immunity. However, plaintiffs allege violations of statutory and regulatory procedural requirements that are mandatory, "clear and specific." *P.N. v. Greco,* 282 F.Supp.2d. 221, 240 (D.N.J.2003) (finding immunity unavailable where "clear and specific" mandates of IDEA were alleged). Accordingly, a disposition at this time of plaintiffs' First Cause of Action against the individual defendants in their individual capacity on qualified immunity grounds would be premature.

I would remand for a prompt trial of plaintiffs' First Cause of Action, asking the District Court to reevaluate the need for further discovery in light of this Court's opinion.

128 Fed.Appx. 876, 198 Ed. Law Rep. 58

**Briefs and Other Related Documents (Back to top)**

- 04-1407 (Docket)

(Feb. 20, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.