# EXHIBIT C



2004 WL 2260964                                                                  Page 1

2004 WL 2260964 (U.S.)


For opinion see 126 S.Ct. 29, 125 S.Ct. 1395

**Briefs and Other Related Documents**

Supreme Court of the United States.
Gil GARCETTI, et al., Petitioners,
v.
Richard CEBALLOS, Respondent.
**No. 04-473.**
October 1, 2004.
On Petition For Writ Of Certiorari To The United States Court Of Appeals For The
Ninth Circuit


Petition for Writ of Certiorari
Cindy S. Lee, State Bar No. 168941, Counsel of Record, Jin S. Choi, State Bar No.
180270, Franscell, Strickland, Roberts & Lawrence, 100 West Broadway, Suite 1200,
Glendale, California 91210-1219, Telephone (818) 545- 1925.

*i QUESTIONS PRESENTED
1. Should a public employee's purely job-related speech, expressed strictly
pursuant to the duties of employment, be cloaked with First Amendment protection
simply because it touches on a matter of public concern, or should First Amendment
protection also require the speech to be engaged in "as a citizen", in accordance
with this Court's holdings in *Pickering v. Board of Education,* 391 U.S. 563 (1968)
and *Connick v. Myers,* 461 U.S. 138 (1983)?

2. Is immediate review by this Court necessary to address the growing
inter-circuit conflict on the question of whether a public employee's purely
job-related speech is constitutionally protected, especially where the lack of
uniformity dramatically impacts the ability of all public employers to effectively
manage their respective agencies?

*ii LIST OF PARTIES
Pursuant to Rule 14.1(b), the following list represents all of the parties before
the United States Court of Appeals for the Ninth Circuit:

The petitioners are Gil Garcetti, the former District Attorney for the County of
Los Angeles, Frank Sundstedt, Carol Najera and the County of Los Angeles, all of
whom were appellees below. Richard Ceballos was the appellant below.

*iii TABLE OF CONTENTS

QUESTIONS PRESENTED ... i

LIST OF PARTIES ... ii

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 2260964                                              Page 2

2004 WL 2260964 (U.S.)

TABLE OF CONTENTS ... iii

TABLE OF AUTHORITIES ... v

OPINIONS BELOW ... 1

JURISDICTION ... 1

CONSTITUTIONAL/STATUTORY PROVISIONS INVOLVED ... 1

STATEMENT OF THE CASE ... 2

REASONS FOR GRANTING THE PETITION ... 5

   I. CONTRARY TO THE DECISIONS OF THIS COURT, THE NINTH CIRCUIT ERRONEOUSLY
DISREGARDED THE "CITIZEN SPEECH" REQUIREMENT FOR FIRST AMENDMENT PROTECTION IN THE
PUBLIC EMPLOYMENT SETTING, THEREBY ADDING TO THE GROWING INTER-CIRCUIT CONFLICT
... 5

   A. The Establishment And Protection Of The Right Of Public Employees *To Speak As
Citizens* Were Cornerstone Concerns In *Pickering* And *Connick* ... 5

   B. The Ninth Circuit Has Refused To Give Any Consideration To The Element Of
"Citizen Speech" In Determining Whether A Public Employee's Speech Is
Constitutionally Protected ... 11

**iv**   C. The "Citizen Speech" Factor Has Often Been Recognized, And At The Same
Time, Often Ignored, Thereby Creating A Major Inter-Circuit Conflict That Should
Now Be Addressed ... 14

   II. THE QUESTIONS PRESENTED ARE IMPORTANT IN THAT BLANKETING ALL PUBLIC EMPLOYEE
SPEECH TOUCHING ON A MATTER OF PUBLIC CONCERN WITH FIRST AMENDMENT PROTECTION WILL
HAVE A DEBILITATING EFFECT ON THE MANAGEMENT OF PUBLIC AGENCIES ... 18

CONCLUSION ... 20

LIST OF APPENDICES ... App. i

                    **v** TABLE OF AUTHORITIES

Federal Cases

*Bradshaw v. Pittsburgh Independent School Dist.,* 207 F.3d 814 (5th Cir. 2000) ...
16

*Buazard v. Meridith,* 172 F.3d 546 (8th Cir. 1999) ... 16

*Connick v. Myers,* 461 U.S. 138 (1983) ... *passim*

*Gillum v. City of Kerrville,* 3 F.3d 117 (5th Cir. 1993) ... 15

           © 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 2260964                                                    Page 3

2004 WL 2260964 (U.S.)

*Givhan v. Western Line Consolidated School District,* 439 U.S. 410 (1979) ... 10

*Gonzalez v. City of Chicago,* 239 F.3d 939 (7th Cir. 2001) ... 14, 15, 17

*Koch v. Hutchinson,* 847 F.2d 1436 (10th Cir. 1988) ... 16

*Lee v. Nicholl,* 197 F.3d 1291 (10th Cir. 1999) ... 17

*Mt. Healthy City Board of Ed. v. Doyle,* 429 U.S. 274 (1977) ... 10

*Oladeinde v. City of Birmingham,* 230 F.3d 1275 (11th Cir. 2000) ... 17

*Perry v. Sindermann,* 408 U.S. 593 (1972) ... 9

*Pickering v. Board of Education,* 391 U.S. 563 (1968) ... *passim*

*Rankin v. McPherson,* 483 U.S. 378 (1987) ... 10, 19

*Rodgers v. Banks,* 344 F.3d 587 (6th Cir. 2003) ... 17

*Roth v. Veterans' Administration of the Gov't of the United States,* 856 F.2d 1401
(9th Cir. 1988) ... 4, 12

*Sparr v. Ward,* 306 F.3d 589 (8th Cir. 2002) ... 16

**\*vi** *Terrell v. University of Texas System Police,* 792 F.2d 1360 (5th Cir. 1986)
... 10

*Thompson v. Scheid,* 977 F.2d 1017 (6th Cir. 1992) ... 16, 17

*United States v. National Treasury Employees Union,* 513 U.S. 454 (1995) ... 10

*Urofsky v. Gilmore, III,* 216 F.3d 401 (4th Cir. 2000) ... 15

Constitution

U.S. Const. amend. I ... *passim*

Federal Statutes

28 U.S.C. § 1201(c) ... 1

28 U.S.C. § 1254(1) ... 1

42 U.S.C. § 1983 ... 1

Federal Rules

U.S. Supreme Court Rule 13.1 ... 1

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 2260964                                                    Page 4

2004 WL 2260964 (U.S.)


*1 OPINIONS BELOW
The opinion of the United States Court of Appeals for the Ninth Circuit is
reported at 361 F.3d 1168 (9th Cir. 2004) and is reprinted at Appendix A. The
district court's unreported memorandum order granting petitioners' motion for
summary judgment on the First Amendment retaliation claim is reprinted at Appendix
B, and the Judgment is reprinted at Appendix C. The Ninth Circuit's denial of the
petition for rehearing en banc is reprinted at Appendix D.

JURISDICTION
The Court of Appeals' judgment was entered on March 22, 2004. (App. 1.) On July
6, 2004, the Ninth Circuit denied the petition for rehearing en banc. (App. 71.)

The petition is filed within 90 days of the entry of the judgment pursuant to  28
U.S.C § 1201(c) and U.S. Supreme Court Rule 13.1. The jurisdiction of this Court
to review the judgment of the Ninth Circuit is invoked under 28 U.S.C. § 1254(1).

CONSTITUTIONAL/STATUTORY PROVISIONS INVOLVED
The statutory and constitutional provisions relevant to this petition are as
follows:
1. 42 U.S.C. § 1983 provides in pertinent part: "Every person who, under color
of any statute, ordinance, regulation, custom, or usage, *2 of any State or
Territory or the District of Columbia, subjects, or causes to be subjected, any
citizen of the United States or other person within the jurisdiction thereof to
the deprivation of any rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party injured in an action at law,
suit in equity, or other proper proceeding for redress,...."
2. The First Amendment to the United States Constitution provides in pertinent
part: "Congress shall make no law ... abridging the freedom of speech, ... ; or
the right of the people peaceably to assemble, and to petition the Government for
a redress of grievances."

STATEMENT OF THE CASE
This case involves an employment action filed by a prosecutor, Richard Ceballos
("Respondent"), alleging retaliation in violation of his First Amendment right to
freedom of speech against former District Attorney of the County of Los Angeles
Gil Garcetti, Frank Sundstedt, Carol Nagera and the County of Los Angeles
("Petitioners"). The alleged retaliation (in the form of a change in assignment
and the denial of promotion) purportedly occurred as a result of Respondent's
preparation of a routine disposition memorandum containing his professional
evaluation of the accuracy of a search warrant affidavit in a pending criminal
case. It was undisputed that the disposition memorandum was prepared pursuant to
Respondent's regular duties as a prosecutor and was reviewed by only two
supervisors. (App. 2-3, 12, 41-42.)

*3 On summary judgment, the district court dismissed Respondent's  section 1983
First Amendment claims on the ground that the subject memorandum did not
constitute protected speech because it had been prepared strictly pursuant to his
normal job duties. (App. 60-65.) Relying primarily on the language and analysis in
*Connick v. Myers,* 461 U.S. 138 (1983), the district court found that the
communication at issue - Respondent's memorandum regarding his professional

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 2260964                                                          Page 5

2004 WL 2260964 (U.S.)

evaluation in a pending criminal case - had not been engaged in "as a citizen" but "pursuant to his duties as a prosecutor" in that the memorandum (1) set forth a summary of Respondent's investigation and his conclusion that the search warrant affidavit in the criminal case was falsified and misleading; (2) recommended that the case be dismissed; (3) was only reviewed internally by his supervisors; and (4) was something that a prosecutor commonly prepared "as part of his job". (App. 61-62, 64.) Indeed, central to the district court's ruling was the recognition that the preparation of the subject memorandum about possible perjured testimony was not only part of Respondent's job as a prosecutor but also mandated by his (and the government's) "duties under the due process clause of the Fifth and Fourteenth Amendments not to introduce or rely on evidence known to be false." (App. 64.) Accordingly, judgment was entered against Respondent on February 8, 2002, and he subsequently appealed.

On appeal, the Ninth Circuit Court of Appeals reversed the entry of summary judgment, and in doing so, Judge Reinhardt, writing for the majority opinion, employed a vastly different approach. While making clear that it was only concerned with "on-the-job, work-related *4 speech," [FN1] the Court of Appeals held that regardless of whether the disposition memorandum was an example of routine prosecutorial work product, it was constitutionally protected since it touched on a matter of public concern. According to the Court of Appeals, "[i]t is only when it is clear that ... the information would be of *no* relevance to the public's evaluation of the performance of governmental agencies that speech of government employees receives no protection under the First Amendment." (App. 10, internal quotations and citations omitted; emphasis in original.) The decision to give no weight to the fact that the disposition memorandum was prepared pursuant to Respondent's normal prosecutorial duties was not (and could not have been) based on the decisions of this Court. Instead, the Court of Appeals relied on the holding in a prior, similarly flawed Ninth Circuit opinion, *Roth v. Veterans' Administration of the Gov't of the United States,* 856 F.2d 1401 (9th Cir. 1988). (App. 10-13.) By relying on *Roth,* the Court of Appeals reaffirmed an approach that cannot be reconciled with the decisions of this Court - that public employee speech with no element of "citizen speech" deserves the full protection of the First Amendment, just because it touches upon a matter of public concern. [FN2]

> FN1. App. 8, n. 4.
>
> FN2. It should be noted that Judge O'Scannlain's special concurrence in the opinion below challenged the majority panel's rationale, urged that the controlling prior opinion be overruled and discussed at length the necessity of review by this Court. (App. 32-51.)

### *5 REASONS FOR GRANTING THE PETITION

This Court's two seminal opinions took exacting steps in both *establishing and limiting* First Amendment protection in the public employment setting. These significant limitations and their underlying rationale, however, were ignored by the Court of Appeals below, thereby continuing the Ninth Circuit's deviation from this Court's rationale and mandate. Moreover, review is warranted due to the absence of uniformity across the board among the federal courts on this question of exceptional importance - the answer to which affects the management and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 2260964 (U.S.)

administration of practically every federal, state and local governmental agency throughout this country.

A. The Establishment And Protection Of The Right Of Public Employees *To Speak As Citizens* Were Cornerstone Concerns In *Pickering* And *Connick*.

Even a cursory survey of the pertinent cases over the last two decades reveals that the determination of whether a public employee's speech is entitled to First Amendment protection is governed by this Court's analysis in *Pickering v. Board of Education,* 391 U.S. 563 (1968) and *Connick v. Myers,* 461 U.S. 138 (1983). However, when this analysis has been applied in the Ninth Circuit and several other Circuits, one of the fundamental tenets underlying this **\*6** analysis – that the First Amendment protects public employee speech engaged in "as a citizen" – has been rendered irrelevant and meaningless.

In 1968, in *Pickering*, a case where a public school teacher challenged his discharge based on his public criticism of the allocation of school funds and its method of informing taxpayers of the need for additional revenue, this Court held for the first time that the First Amendment protects public employee speech on matters of "public concern". Such speech, however, was not blanketed with constitutional protection. On the contrary, the scope of constitutional protection was made subject to significant restrictions, in part, because "the State has *interests as an employer* in regulating the speech of its employees that *differ significantly* from those it possesses in connection with regulation of the *citizenry in general.*" *Id.* at 568 (emphasis added).

Indeed, the rationale behind the holding in *Pickering* rested on the fundamental notion that public employees should not be deprived of First Amendment protection for acts of expression directly associated with the exercise of a *citizen's* right to free speech.
   The problem in any case is to arrive at a balance between the interests of the [plaintiff], *as a citizen, in commenting upon matters of public concern* and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.... [W]e shall indicate some of the general lines along which an analysis of the controlling interests should run.
   *Id.* at 568-69 (emphasis added).

**\*7** The speech at issue in *Pickering* fit the mold for constitutional protection. The teacher's speech was "in no way directed towards any person with whom [the plaintiff] would normally be in contact in the course of his daily work", thereby raising no questions regarding "either discipline by immediate superiors or harmony among coworkers". *Id.* at 569. The absence of the link between the subject speech and the plaintiff's essential job duties was further addressed in the holding:
   [I]n a case such as the present one, in which *the fact of employment is only tangentially and insubstantially involved* in the subject matter of the public communication made by a teacher, we conclude that *it is necessary to regard the teacher as the member of the general public he seeks to be.* In sum, we hold that ... a teacher's exercise of his right to speak on issues of public importance may not furnish the basis for his dismissal from public employment.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 2260964                                                                          Page 7

2004 WL 2260964 (U.S.)

   *Id.* at 574 (footnote omitted, emphasis added).

   Thus, in *Pickering*, this Court established distinct parameters for First
Amendment protection — public employees, by virtue of their employment, should not
be deprived of First Amendment protection when the subject speech is expressed
pursuant to the exercise of the rights of citizenship (as opposed to speech
expressed in accordance with the responsibilities of public employment). These
parameters were reaffirmed, 15 years later, in the next landmark case, *Connick v.
Myers.*

   In *Connick*, the plaintiff, an assistant district attorney, circulated a
questionnaire among her co-workers, soliciting opinions on a variety of matters
related to the work environment at her office. *Id.* at 141. The district **8** court
held that the plaintiff's "questionnaire involved matters of public concern" and
that the defendant had not demonstrated that the questionnaire substantially
interfered with the operation of the district attorney's office. *Id.* at 142. The
court of appeals affirmed. *Id.* This Court, however, held that the lower courts had
"misapplied our decision in *Pickering* and consequently, in our view, erred in
striking the balance" for the plaintiff. *Id.*

   Significantly, this Court reiterated the centerpiece issue addressed in *Pickering*
— how to balance the public employer's legitimate interest in an efficient
workplace environment against the public employee's interest in commenting on
matters of public concern "as a citizen." *Id.* at 140. Moreover, in defining the
elements of the constitutional equation to be applied in this setting, this Court
once again identified speech engaged in "as a citizen" to be one of the primary
variables.

   The defendant in *Connick* argued that no balancing was required because the
subject questionnaire "concerned only internal office matters and that such speech
is not upon a matter of 'public concern.' " *Id.* at 143. This Court stated that
this argument had "much force" and high-lighted the "as a citizen" factor first
identified in *Pickering*: the *"repeated emphasis in Pickering on the right of a
public employee 'as a citizen,' in commenting upon matters of public concern,' was
not accidental." Id.* at 143 (emphasis added). This Court then discussed the
pertinent historical background that led to the landmark holding in *Pickering*:
   In all of these cases, the precedents in which *Pickering* is rooted, the
invalidated statutes and actions sought to suppress the rights of public employees
to participate in *public affairs....* The explanation for the Constitution's
special **9** concern with threats to the right of citizens to participate in
political affairs is no mystery. The First Amendment 'was fashioned to assure
unfettered interchange of ideas for the bringing about of political and social
changes desired by the people. ... *Pickering ... followed this understanding of
the First Amendment.*
   *Id.* at 144-45 (emphasis added). For these reasons, the speech in *Pickering* —
which was related to a "free and open debate" — had been afforded constitutional
protection. *Picketing,* 391 U.S. at 571.

   Indeed, the holding in *Connick* could not have been clearer in identifying the
importance of the "citizen speech" factor:

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 2260964 (U.S.)

We hold only that *when a public employee speaks not as a citizen upon matters of public concern*, but instead as *an employee* upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.
*Id.* at 147 (emphasis added). [FN3]

> FN3. Despite the clear implications of this key portion of *Connick*, confusion among the Circuits may have arisen because this Court has not yet provided an unequivocal holding as to whether purely job-related speech about a matter of public concern is constitutionally protected. Keeping such speech outside the reach of the First Amendment would not only be consistent with the significant concerns articulated in *Pickering* but would also help public employers maintain workplace efficiency. *See* Section II, *infra*. Moreover, since *Pickering*, this Court has not otherwise wavered from the pronouncements regarding the importance of "citizen speech". *See Perry v. Sindermann,* 408 U.S. 593 (1972) (finding protected a public college's testimony before a state legislature); *Mt. Healthy City Board of Ed. v. Doyle,* 429 U.S. 274 (1977) (finding protected a public school teacher's communication with a radio station regarding the school's dress code for teachers); *Givhan v. Western Line Consolidated School District,* 439 U.S. 410 (1979) (finding protected a teacher's private remarks with a supervisor regarding the school district's allegedly racially discriminatory policies); *Rankin v. McPherson,* 483 U.S. 378, 384 (1987) ("Vigilance is necessary to ensure that public employers do not use authority over employees *to silence discourse....*") (emphasis added); *United States v. National Treasury Employees Union,* 513 U.S. 454, 465 (1995) (in holding unconstitutional the prohibition of government employees from receiving honoraria, this Court stated that the employees "seek compensation for their expressive activities in their *capacity as citizens*" and the speeches lack "relevance to their employment") (emphasis added).

**\*10** An additional significant corollary to the holding in *Connick* was the unquestionable intention to prevent the over-extension of First Amendment protection in the public employment setting:

To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark - and certainly every criticism directed at a public official - would plant the seed of a constitutional case.
*Connick,* 461 U.S. at 149; *see also Rankin,* 483 U.S. at 384 ("[R]eview of every personnel decision made by a public employer could, in the long run, hamper the performance of public functions."); *Terrell v. University of Texas System Police,* 792 F. 2d 1360, 1362 (5th Cir. 1986) ("[T]he mere fact that the topic of the employee's speech was one in which the public might or would have a great interest is of little moment ... because almost anything that occurs within a public agency could be of concern to the public.").

**\*11** These concerns and the importance of the "citizen speech" factor have been recognized by the lower courts that have refused to find First Amendment protection for purely job-related speech. [FN4] The Ninth Circuit, and others,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 2260964 (U.S.)

however, have not followed suit, disregarding the "citizen speech" element entirely. In light of recent case law developments in the lower courts, only intervention by this Court will ensure that First Amendment protection be wedded to public employee speech engaged in "as a citizen".

> FN4. As Judge O'Scannlain observed in his special concurrence below, "when public employees speak in the course of carrying out their routine, required employment obligations, they have no *personal* interest in the content of that speech that gives rise to a First Amendment right. Instead, their speech is, in actuality, the State's." (App. 41, emphasis in original.)

B. The Ninth Circuit Has Refused To Give Any Consideration To The Element Of "Citizen Speech" In Determining Whether A Public Employee's Speech Is Constitutionally Protected.

In the instant case, the Ninth Circuit Court of Appeals held that the Respondent's disposition memorandum was constitutionally protected despite the absence of any hint of citizen speech. In particular, the *form* of the subject speech was a deputy district attorney's routine disposition memorandum reviewed only internally; the *content* of the memorandum consisted of Respondent's professional opinion regarding the propriety of a search warrant affidavit, an opinion reached in conjunction with his normal prosecutorial duties. Simply put, the memorandum was not prepared while Respondent was playing the role of **\*12** a "citizen", and nor was it in any way related to his participation in "public affairs." Nevertheless, the Court of Appeals flatly disregarded these significant facts by relying on a 16-year-old case, *Roth v. Veterans' Administration of the Gov't of the United States,* 856 F.2d 1401 (9th Cir. 1988). The reliance on *Roth* was in error because *Roth* signified the Ninth Circuit's early departure from the clear limits on the constitutional protection afforded to public employment speech.

In *Roth,* the plaintiff sued three of his supervisors at the Veterans Administration, alleging that they retaliated against him in violation of his First Amendment rights. Plaintiff had been hired as the Chief of the Alcohol Inpatient Unit and was responsible for overseeing the operations of that unit. *Id.* at 1403. Accordingly, the plaintiff "reported wastefulness, mismanagement, unethical conduct, violations of regulations, and incompetence to his supervisors". *Id.* In response to these purported "whistle-blowing" activities, the plaintiff alleged that he was demoted and then informed that his employment would be terminated. *Id.* at 1403-04.

The defendants argued that the plaintiff "was not commenting on matters of public concern, but merely gave his opinions on matters of personal interest and office management." *Id.* at 1404. In addressing this issue, the *Roth* Court commented on the elements of the *Connick* analysis but did not apply them properly or completely. Instead, it focused almost exclusively on the content, stating that speech regarding the "efficient and ethical operation of the VA" was "inherently of interest to the public." *Id.*

**\*13** The *Roth* Court's limited examination of the form and context of the subject speech did not adhere to this Court's mandate regarding the importance of "citizen

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

speech". In fact, by emphasizing that the subject speech was engaged in pursuant to the plaintiff's job duties and "at the wish of the defendants", *the absence of citizen speech was weighed in favor of finding First Amendment protection. Id.* at 1406. Indeed, the plaintiff's theory of liability was that his First Amendment rights had been violated because he had been punished for engaging in *speech required by his job.* In the instant case, the Court of Appeals once again engaged in this flawed analysis.

Cloaking such speech with First Amendment protection is irreconcilable with this Court's mandate that First Amendment protection be reserved for speech that is expressed "as a citizen." The Court of Appeals' failure to recognize and properly consider this factor is especially troubling because this Court's mandate is consistent on all levels with the historical and legal backdrops that led to the abandonment of the bar against First Amendment protection for public employees. This dramatic change empowered public employees to engage in the same First Amendment activities engaged in by other members of the public; however, these activities do not and should not include speech expressed pursuant to the regular duties of public employment since such speech, by definition, cannot be characterized as "citizen speech". [FN5]

> FN5. Judge O'Scannlain advocated the revamping of the Ninth Circuit's approach in his special concurrence below and crystallized the issue at hand with great clarity:
> Properly understood, *Connick* teaches that although speech uttered by public employees must address an issue of public import in order to come within the protective shelter of the First Amendment, satisfaction of such a virtually necessary condition is not by itself sufficient to trigger constitutional constraints on governmental action. Instead, employee speech solicits the protection of the First Amendment only when it also results from the employer's decision to express his or her *personal* opinions - that is, those views he or she holds *as a citizen* and not as a public employee. *The First Amendment, in short, does not protect public employees' routine and required speech on behalf of the government.*
> (App. 49-50, emphasis added.)

**\*14** C. The "Citizen Speech" Factor Has Often Been Recognized, And At The Same Time, Often Ignored, Thereby Creating A Major Inter-Circuit Conflict That Should Now Be Addressed.

The Ninth Circuit's short-circuited approach has not been uniformly adopted. Indeed, faced with similar facts and issues, many courts have engaged in a more meaningful analysis by remaining true to this Court's mandates. For instance, in *Gonzalez v. City of Chicago,* 239 F.3d 939 (7th Cir. 2001), the plaintiff, a former police officer who had been terminated, brought a section 1983 action against two of his supervisors, the chief of police, and the city, alleging that his termination had been the product of retaliation against him for his "speech as an [Office of Professional Standards] investigator." *Id.* at 940. The *Gonzalez* Court affirmed the granting of the defendants' motion to dismiss on the ground that the speech in question - the reports regarding police misconduct that the plaintiff had written when he was an OPS investigator - could not be characterized as

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 2260964                                                      Page 11

2004 WL 2260964 (U.S.)

"citizen speech" upon a matter of public concern. In reaching this holding, the **\*15** *Gonzalez* Court did not lose sight of the significance of "citizen speech":

  [The plaintiff]'s statements are not self-serving private statements (except in the sense that performance of one's job is self-serving), but *written statements for internal use in the Department. They are reports of his investigations as required by his employer, and as such, they lack First Amendment protection....* Thus, the question before us is whether a public employee receives First Amendment protection for producing writings that may address matters of public concern, *but are also a routine requirement of the job....* [H]e was clearly acting entirely in an employment capacity when he made those reports. The *form* of his speech (routine official reports), the *content* of the speech (required opinions on misconduct), and the *context* (pursuant to duties of the job), all indicate that [the plaintiff] *did not speak 'as a citizen' on a matter of public concern.*
  *Id.* at 941 (emphasis added).

  *Gonzalez* is not alone in focusing on the "hat worn" by the employee. *See Urofsky v. Gilmore, III,* 216 F.3d 401, 407 (4th Cir. 2000) ("critical to a determination of whether employee speech is entitled to First Amendment protection is whether the speech is 'made primarily in the [employee's] *role as citizen or primarily in his role as employee*' ") (emphasis added); *Gillum v. City of Kerrville,* 3 F.3d 117, 120-21 (5th Cir. 1993) (having previously focused on whether the employee "spoke as a citizen or employee", the Court explained that the "focus on the hat worn by the employee when speaking rather than upon the 'importance' of the issue reflects the reality that at some level of generality almost all speech of state employees is of public **\*16** concern."); *Bradshaw v. Pittsburgh Independent School Dist.,* 207 F.3d 814, 186 (5th Cir. 2000) ("Speech rises to the level of public concern when an individual speaks primarily as a citizen rather than as an employee."); *Thompson v. Scheid,* 977 F.2d 1017, 1020-21 (6th Cir. 1992) ("First Amendment protection extends to a public employee's speech when he speaks as a citizen on a matter of public concern, but *does not extend to speech made in the course of acting as a public employee.* [Citation.] Not all matters discussed within a government office are of public concern, and thus internal office communication does not necessarily give rise to a constitutional claim.") (citing *Connick,* emphasis added); *Sparr v. Ward,* 306 F.3d 589, 594 (8th Cir. 2002) ("When a public employee's speech is purely job-related, her speech will not be deemed a matter of public concern.... It is not enough that the topic of an employee's speech is one in which the public might have an interest."); *Buazard v. Meridith,* 172 F.3d 546, 548 (8th Cir. 1999) (in examining the form and context of public employee speech, a court should consider whether the speech "is purely job-related" and whether the employee "is *speaking as a concerned citizen, and not just as an employee*") (emphasis added); *Koch v. Hutchinson,* 847 F.2d 1436, 1442 (10th Cir. 1988) (denying First Amendment protection to a fire marshal's report regarding the cause of a fatal fire because the speech "occurred during or as part of an employee's official duties").

  Competing against the analyses and holdings in these cases are those from other cases where the Ninth Circuit's approach has been duplicated. As a matter of fact, the Court of Appeals below described a legal scorecard suggesting that the majority of the Circuits have now all but abandoned the consideration of the "citizen speech" factor **\*17** in determining whether a public employee's speech is

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 2260964 (U.S.)

constitutionally protected. (App. 14-16, and cases cited therein.) *See also Lee v. Nicholl,* 97 F.3d 1291, 1294-95 10th Cir. 1999) (a public employee's memos related to the safety of public roads prepared "during the course of his employment" constitute protected speech); *Oladeinde v. City of Birmingham,* 230 F.3d 1275, 1292 (11th Cir. 2000) (police officers' request to supervisor for permission to report to the district attorney of observation of two fellow officers' improper review of jail records is protected speech even if the observation was made in the course of employment).

Adding to the conflict and confusion in the current legal landscape is that opinions from *within* certain Circuits are not readily *reconcilable* with one another. For instance, in *Rodgers v. Banks,* 344 F.3d 587 (6th Cir. 2003), one Sixth Circuit panel held that a work-related memorandum by a director of quality management is constitutionally protected, while in *Thompson,* 977 F.2d 1017, another Sixth Circuit panel held that a fraud investigator's report did not warrant constitutional protection. Similar internal conflicts have arisen in the Seventh, Eighth and Tenth Circuits. [FN6] (App. at 16, n. 7.)

> FN6. Presently, before this Court is a Petition for Writ of Certiorari arising from a case (*Jones v. Delgado,* Docket No. 03-3408) with facts similar to the instant case, in which a Seventh Circuit panel found that the First Amendment protects speech engaged in pursuant to employment duties, by drawing a questionable distinction from the facts in *Gonzalez v. City of Chicago,* 239 F.3d 939 (7th Cir. 2001) where job-related speech was held to be constitutionally unprotected.

While the Court of Appeals below suggests that its approach is, for lack of a better word, winning, no clear-cut **\*18** winner can be declared. Moreover, regardless of the exact status of the legal ledger, what is indisputable is that over the last two decades, the lower courts have been unable to come to an agreement as to how the *Pickering-Connick* analysis should be employed, particularly as to what extent the "citizen speech" factor should be considered and where employment-required speech falls in the First Amendment spectrum. The absence of uniformity will certainly continue to breed more confusion and inconsistency in this highly litigated area of public employment and First Amendment law, circumstances that raise the proverbial red flag for review by this Court.

The refusal to reserve First Amendment protection to speech expressed "as a citizen" is not only inconsistent with *Pickering* and *Connick,* but will have a crippling effect on the management of most, if not all, public agencies. This inevitable disruption will be caused by the looming threat of First Amendment litigation arising from any allegedly adverse employment decision that is purportedly related to any single instance of that employee's prior job-related speech - as long as that speech can be characterized as touching on a matter of public concern. It is not difficult to imagine the trepidation that will accompany necessary employment actions (ranging from routine transfers and changes in assignment to denial of promotions **\*19** and discharge) involving potentially disgruntled employees, so much so that the efficient management and administration will become unduly burdensome and needlessly complicated. *See Rankin,* 483 U.S. at

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 2260964                                                      Page 13

2004 WL 2260964 (U.S.)

384 ("public employers are *employers*, concerned with the efficient function of
their operations") (emphasis in original).

Moreover, the debilitating effect of making First Amendment protection contingent
only on whether the speech conceivably relates to an issue of public import will
be especially pronounced in public agencies that routinely become entangled with
issues that necessarily would interest the public. These state and federal
agencies include, but certainly are not limited to, those that employ prosecutors,
law enforcement officers, health and medical professionals and industrial
regulations investigators. Indeed, the vast majority, if not all, of the public
employers in this country will be forced to grapple with the short and long-term
effects of the continuing erosion of the sound limitations on First Amendment
protection in the public employment setting. [FN7]

        FN7. This stripped down version of the *Pickering-Connick* analysis begs the
        question of whether the recent rounds of highly-publicized testimony offered
        by numerous government employees – pursuant to their official job duties –
        before various Congressional committees and the 9/11 Commission were,
        without exception, blanketed with First Amendment protection.

This certainly was not the result intended when this Court first opened the door
for public employees to receive First Amendment protection for their exercise, "as
citizens", of their freedom of speech. In that first landmark case, this Court
made clear that the dramatic change in First Amendment law was meant to address
the draconian **20 deprivation of First Amendment rights simply by virtue of public
employment; these same sentiments were recognized again in this Court's next
landmark case. The lifting of the bar against First Amendment protection, however,
should not be transformed into a ticket for First Amendment protection for speech
expressed in the course of the performance of a public employee's job duties. Such
an approach will have dire consequences on the management of public agencies, does
not adhere to the underlying rationale of this Court's seminal cases and excludes
from the analysis the pivotal element of "citizen speech". Yet, the Ninth Circuit
and others have chosen this misguided path, thereby necessitating review by this
Court of this exceptionally important issue of law.

                                   CONCLUSION
The petition for writ of certiorari should therefore be granted.

Garcetti v. Ceballos
2004 WL 2260964

                    **Briefs and Other Related Documents (Back to top)**

• 2005 WL 2072142  (Appellate Brief) Petitioners' Reply Brief%tc (Aug. 25,
2005)Original Image of this Document (PDF)

• 2005 WL 1749167  (Appellate Brief) Brief for the National Treasury Employees
Union as Amicus Curiae Supporting Respondent%tc (Jul. 22, 2005)Original Image of
this Document (PDF)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 2260964                                                      Page 14

2004 WL 2260964 (U.S.)

• 2005 WL 1767121  (Appellate Brief) Brief of Association of Deputy District
Attorneys and California Prosecutors Association As Amici Curiae in Support of
Respondent%tc (Jul. 22, 2005)Original Image of this Document (PDF)

• 2005 WL 1767122  (Appellate Brief) Brief of the American Federation of Labor and
Congress of Industrial Organizations as Amicus Curiae in Support of Respondent%tc
(Jul. 22, 2005)Original Image of this Document (PDF)

• 2005 WL 1767694  (Appellate Brief) Brief of the National Education Association
as Amicus Curiae in Support of Respondent%tc (Jul. 22, 2005)Original Image of this
Document (PDF)

• 2005 WL 1767695  (Appellate Brief) Brief of Amici Curiae Government
Accountability Project, National Employment Lawyers Association and Association of
Trial Lawyers of America in Support of Respondent%tc (Jul. 22, 2005)Original Image
of this Document (PDF)

• 2005 WL 1801033  (Appellate Brief) Brief of National Association of Criminal
Defense Lawyers, the American Civil Liberties Union, and the American Civil
Liberties Union of Southern California as Amici Curiae Supporting Respondent%tc
(Jul. 22, 2005)Original Image of this Document (PDF)

• 2005 WL 1801035  (Appellate Brief) Brief for Respondent%tc (Jul. 22,
2005)Original Image of this Document (PDF)

• 2005 WL 1801034  (Appellate Brief) Brief of Amici Curiae the Thomas Jefferson
Center for the Protection of Free Expression, and the American Association of
University Professors%tc (Jul. 21, 2005)Original Image of this Document (PDF)

• 2005 WL 1276045  (Appellate Brief) Brief for the United States as Amicus Curiae
Supporting Petitioners%tc (May. 27, 2005)Original Image of this Document (PDF)

• 2005 WL 1317482  (Appellate Brief) Petitioners' Brief on the Merits%tc (May. 27,
2005)Original Image of this Document (PDF)

• 2005 WL 1317483  (Appellate Brief) Brief of the National Association of
Counties, Council of State Governments, National League of Cities, National
Conference of State Legislatures, and U.S. Conference of Mayors as Amici Curiae
Supporting Petitioners%tc (May. 27, 2005)Original Image of this Document (PDF)

• 2005 WL 1317484  (Appellate Brief) Brief of International Municipal Lawyers
Association as Amicus Curiae in Support of Petitioner%tc (May. 27, 2005)Original
Image of this Document (PDF)

• 2005 WL 1620384 (Joint Appendix) JOINT APPENDIX, VOL. II (May. 27, 2005)

• 2005 WL 1620385 (Joint Appendix) JOINT APPENDIX, VOL. I (May. 27, 2005)

• 2005 WL 1620386 (Joint Appendix) JOINT APPENDIX, VOL. III (May. 27, 2005)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 2260964                                          Page 15

2004 WL 2260964 (U.S.)


• 2005 WL 1284578  (Appellate Brief) Brief of Amicus Curiae National School Boards
Association in Support of Petitioners%tc (May. 26, 2005)Original Image of this
Document (PDF)

• 2005 WL 289715 (Appellate Petition, Motion and Filing) Petitioner's Reply Brief
(Feb. 03, 2005)

• 2005 WL 190354 (Appellate Petition, Motion and Filing) Respondent's Brief in
Opposition (Jan. 25, 2005)

• 04-473 (Docket)
                            (Oct. 07, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.