## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DOROTHY HOULIHAN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C.A. No.  05-00194 JJF |
| v. | ) | |
| | ) | |
| SUSSEX TECHNICAL SCHOOL DISTRICT, | ) | TRIAL BY JURY OF TWELVE |
| SUSSEX TECHNICAL SCHOOL DISTRICT | ) | DEMANDED |
| BOARD OF EDUCATION, SANDRA WALLS- | ) | |
| CULOTTA, individually, and in her official | ) | |
| capacity, and STEVE HUBER, individually, and in | ) | E-FILE |
| his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

### DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR  RENEWED MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT

WHITE AND WILLIAMS, LLP

JOHN D. BALAGUER, Bar ID #2537
WILLIAM L. DOERLER, Bar ID. # 3627
P.O. Box 709
Wilmington, DE 19899-0709
302-467-4508
 Attorneys for Defendants Sussex Technical
School District, Sussex Technical School
District Board of Education, Sandra Walls-
Culotta, and Steve Huber

Date:  August 17, 2006

Table of Contents

Page

TABLE OF CITATIONS .................................................................................... iii

STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS .......................... 1

SUMMARY OF ARGUMENT .............................................................................. 2

STATEMENT OF FACTS .................................................................................... 3

ARGUMENT .................................................................................................... 4

I. STANDARD FOR MOTIONS TO DISMISS ......................................................... 5

II. THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT ............................ 5

III. REHABILITATION ACT .............................................................................. 7

  A. STANDARD FOR EVALUATING RETALIATION CLAIMS UNDER THE RA 8

    1. ALTHOUGH RETALIATION CLAIMS ARE SUBJECT TO A BURDEN
       SHIFTING ANALYSIS, THE PLAINTIFF RETAINS THE ULTIMATE
       BURDEN OF PROOF ............................................................................ 9

    2. TO RISE TO THE LEVEL OF AN ADVERSE EMPLOYMENT ACTION, AN
       EMPLOYER'S CONDUCT MUST BE SERIOUS AND TANGIBLE ENOUGH
       TO ALTER AN EMPLOYEE'S COMPENSATION, TERMS, CONDITIONS,
       OR PRIVILEGES OF EMPLOYMENT ........................................................ 11

    3. ESTABLISHING A CASUAL LINK REQUIRES MORE THAN THE MERE
       FACT THAT THE ADVERSE EMPLOYMENT ACTION OCCURRED AFTER
       A PROTECTED ACTIVITY ..................................................................... 13

  B. THE ALLEGATIONS IN THE COMPLAINT FAIL TO STATE A
     RETALIATION CLAIM UNDER THE RA ...................................................... 14

IV. FIRST AMENDMENT RETALIATION .............................................................. 26

  A. PUBLIC CONCERN ................................................................................ 28

  B. BALANCING OF INTERESTS .................................................................... 29

  C. THE PLAINTIFF'S STATEMENTS WERE NOT MATTERS OF PUBLIC
     CONCERN .............................................................................................. 31

V. THE PLAINTIFF'S STATE LAW CLAIM FAILS ................................................ 33

i

Table of Contents
(continued)

Page

VI. PLAINTIFF'S COMPLAINT FAILS IN ALL RESPECTS AS TO DEFENDANT
HUBER BECAUSE THE COMPLAINT DOES NOT CONTEND THAT HE WAS
RESPONSIBLE FOR HER TERMINATION IN ANY MANNER ...................................33

VII. ALTERNATIVE MOTION FOR A MORE DEFINITE STATEMENT .................33

CONCLUSION...........................................................................................................34

## EXHIBITS

*C.M. v. Board of Education of the Union County Regional High School Dist.*, 2005 WL
899927 (3d Cir.)................................................................................................ A

*Tucker v. Merck & Co., Inc.*, 2005 WL 1176565 (3d Cir.)................................ B

*Washington v. Delaware*, 2003 WL 21697403 (D. Del) .................................. C

# TABLE OF AUTHORITIES

## CASES

*Abrams v. Lightolier*, 841 F. Supp. 584 (D.N.J. 1994) ........................................................12

*Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074 (3d Cir. 1996) .................................10

*Arnett v. Kennedy*, 416 U.S. 134 (1974) ............................................................................30

*Badassare v. New Jersey*, 250 F.3d 188 (3d Cir. 2001) ...................................27, 28, 29, 30

*Bristow v. Daily Press, Inc.*, 770 F.2d 1251 (4th Cir. 1985) .............................................12

*Burlington Indus., Inc. v. Ellerth*, 118 S. Ct. 2257 (1998) ................................................11

*C.M. v. Board of Education of the Union County Regional High School Dist.*,
  2005 WL 899927 (3d Cir.) ................................................................6, 7, 19, 20, 26

*Coale v. St. Dept. of Ed.*, 162 F. Supp. 2d 316 (D. Del. 2001) ...........................................7

*Colgan v. Fisher Scientific*, 935 F.2d 1407 (3d Cir. 1991) ................................................12

*Connick v. Myers*, 461 U.S. 138 (1983) ...............................................27, 29, 30, 31, 32

*Crenshaw v. Georgetown University*, 23 F. Supp. 2d 11 (D. D.C. 1998) ..........................13

*Drinkwater v. Union Carbide Corp.*, 904 F.2d 853 (3d Cir. 1990) ...................................10

*Evancho v. Fisher*, 423 F.3d 347 (3d Cir. 2005) .................................................................5

*Foster v. Time Warner Entertainment Co., L.P.*, 250 F.3d 1189 (8th Cir. 2001) ..............10

*Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994) .................................................................11

*Garcetti v. Ceballos*, 126 S. Ct. 1951 (2006) ...............................................1, 26, 27, 28, 29, 32

*Garcetti v. Ceballos*, 361 F.3d 1168 (9th Cir. 2004), *cert granted*, 125 S.Ct. 1395
  (2005) ........................................................................................................................1

*Gray v. York Newspapers, Inc.*, 957 F.2d 1070 (3d Cir. 1992) ...................................12, 16

*Krouse v. American Sterilizer Co.*, 126 F.3d 494 (3d Cir. 1997) ...........................9, 13, 14

*McDonnell Douglass Corp. v. Green*, 411 U.S. 792 (1973) ...............................................10

*Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778 (3d Cir. 1998) ........................11, 12

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) .........................28

*Pickering v. Brd. of Ed. of Twp. High Sch. Dist. 205, Will County, Illinois*, 391
    U.S. 563 (1968)..................................................................................26, 29, 31

*Polk v. Cent Susquehanna Interm. Unit 16*, 853 F.2d 171 (3d Cir. 1988)..........................6

*Rappa v. Hollins*, 991 F. Supp. 367 (D. Del. 1997) (3d Cir. 1999)..................................28

*Robinson v. City of Pittsburgh*, 120 F.3d 1286 (3d Cir. 1997) ....................................12, 13

*Roseman v.Ind. Univ. of Pennsylvania at Ind.*, 520 F.2d 1364 (3d Cir. 1975)...........29, 31

*Sabbrese v. Lowe's Home Centers, Inc.*, 320 F. Supp. 2d 311 (E.D. Pa. 2004) ...............13

*Shaner v. Synthes (USA)*, 204 F.3d 494 (3d Cir. 2000) ...............................................10, 11

*Shiring v. Runyon*, 90 F.3d 827 (3d Cir. 1996)...................................................................7

*Shore Regional High School Board of Education v. P.S.*, 381 F.3d 194 (3d Cir.
    2004) ............................................................................................................5, 6

*Sullivan v. City of Pittsburgh, Pennsylvania*, 811 F.2d 171 (3d Cir. 1987) .......................9

*Swineford v. Snyder County Pennsylvania*, 15 F.3d 1258 (3d Cir. 1994) ..................29, 30

*Trump Hotels and Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478 (3d
    Cir.1998)............................................................................................................5

*Tucker v. Merck & Co., Inc.*, 2005 WL 1176565 (3d Cir.)...............................................13

*Young v. New Sewickley Township*, 160 Fed.Appx. 263, 266 (3d Cir. 2005) ....................5

*W.B. v. Matula*, 67 F.2d 484 (3d Cir. 1995) ......................................................................7

*W.G. v. Brd. of Trustees*, 960 F.2d 1479 (9th Cir. 1992)....................................................7

*Washington v. Delaware*, 2003 WL 21697403 (D. Del) ...................................................13

*Watters v. City of Philadelphia*, 55 F.3d 886 (3d Cir. 1995).............................................30

*Weber v. Cranston Sch. Committee*, 212 F.3d 41 (1st Cir. 2000).......................................8

*Weston v. Pennsylvania*, 251 F.3d 420 (3d Cir. 2001) .........................................12, 13, 17

*Woodson v. Scott Paper Co.*, 109 F.3d 913 (3d Cir. 1997) ...............................9, 11, 13, 14

## STATUTES

20 U.S.C. § 1401(8) ...............................................................................................6

20 U.S.C. § 1414(3) ...............................................................................................6

42 U.S.C. § 12203(a) .........................................................................................8, 15

34 C.F.R. §§ 104.33(b)(1) ......................................................................................8

34 C.F.R. § 300.505 .............................................................................................20

34 C.F.R. § 300.531 .............................................................................................19

34 C.F.R. § 300.7 ...................................................................................................6

29 U.S.C.A. § 794 ..................................................................................................8

29 U.S.C.A. § 794a(2) ...........................................................................................8

29 U.S.C. § 794(d) .................................................................................................1

20 U.S.C. § 1400, et. seq. ......................................................................................4

29 U.S.C. § 794(a) .................................................................................................7

29 U.S.C. § 794(d) .................................................................................................4

29 U.S.C. § 701, *et. seq.*, ......................................................................................7

34 C.F.R. § 100.7(e) ..............................................................................................8

42 U.S.C.A. § 2000d ..............................................................................................8

F.R.C.P. 12(e) .....................................................................................................34

## OTHER AUTHORITIES

Del. Code Ann. tit. 14, 3120, et. seq. ....................................................................6

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

Plaintiff filed a complaint in the United States District Court for the District of Delaware on April 4, 2005.  The Complaint alleges that Defendants discriminated against Plaintiff in violation of the First Amendment of the United State Constitution and the Rehabilitation Act, 29 U.S.C. § 794(d), when they retaliated against her by  wrongfully terminating her employment contract.

The Complaint was subsequently served upon Defendants and, by agreement of the parties, the time for filing a responsive pleading was extended until June 6, 2005. Defendants have filed a Motion to Dismiss for Failure to State A Claim or, in the Alternative, Motion for a More Definite Statement.

On February 9, 2006, this Court granted Defendants' Motion for A Stay Pending a Decision by the United States Supreme Court in *Garcetti v. Ceballos*, 361 F.3d 1168 (9th Cir. 2004), *cert granted*, 125 S.Ct. 1395 (2005).  On that same date, the Court denied Defendant's Motion to Dismiss, without prejudice, with leave to renew.  The Supreme Court has issued its decision in the *Garcetti* case[1] and Defendants have renewed their Motion to Dismiss.  This is Defendants' Opening Brief in support of their renewed motion.

---

[1] *See Garcetti v. Ceballos*, 126 S.Ct. 1951 (2006).

-1-

## SUMMARY OF ARGUMENT

1. Plaintiff's complaint fails to state a claim under the Rehabilitation Act (RA) because the Complaint fails to establish that Plaintiff engaged in protected activity under the RA because she could not reasonable have believed that the claimed procedural violations deprived any student of an educational opportunity.

2. Plaintiff's First Amendment retaliation claims fail because the speech was made pursuant to her official duties, and not as a citizen. Even if Plaintiff's speech addressed a matter of public concern and was made in her capacity as a citizen, the disruptive nature of the speech and the manner in which it was delivered created actual or potential disharmony in the workplace. As such, the employers' interest outweighed Plaintiff's as a matter of law.

3. Because Plaintiff's RA claims and First Amendment claims fail, Plaintiff's wrongful termination claim fails because the Complaint fails to establish that there has been a violation of public policy.

## STATEMENT OF FACTS

For purposes of this motion to dismiss, the facts are as stated in the Complaint and its attached exhibits.  The Complaint and its exhibits are included in the appendix filed in conjunction with this brief.  See A1 –A44.

DOCS_DE 128684v.1

## ARGUMENT

Plaintiff was a school psychologist for the Sussex Technical School District (STSD). On or about April 5, 2004, the Sussex Technical School District Board of Education ("the Board") voted not to renew Plaintiff's contract. Plaintiff contends that her non-renewal was wrongful, in violation of public policy. She also contends that her non-renewal violated the Rehabilitation Act (RA), 29 U.S.C. § 794(d), as well as rights guaranteed to her under the First Amendment of the U.S. Constitution. According to Plaintiff, Defendants voted not to renew her contract because she identified areas of potential noncompliance with the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, et. seq., to Defendants and sought correction of these identified deficiencies. Plaintiff's Rehabilitation Act claim fails to state a claim upon which relief may be granted.

Although Plaintiff has alleged "violations" of the IDEA, Plaintiff's complaint fails to identify one single violation or cite to a section of the IDEA that has been violated. This failure is not unexpected as there were no violations. Rather, the "violations" identified by Plaintiff were primarily disagreements over internal operating procedures, which do not amount to "protected activity."

This is a wrongful termination claim by a disgruntled employee masquerading as an employment discrimination case. The allegations and exhibits to the complaint establish that Plaintiff had difficulty working with other staff members, a problem which escalated after she resigned her position as the Special Education Coordinator. Plaintiff continually demanded changes to conform to her way of thinking, and the way things were done at her old school, in Maryland. Her changes, however, were not mandated by the IDEA. Some of Plaintiff's suggestions were implemented, some were not. There is

-4-

no indication in the Complaint, however, that any of the changes implemented corrected

violations of the IDEA or that any student was deprived of an educational opportunity.

The alleged deficiencies identified by Plaintiff, therefore, do not amount to protected

activity for purposes of the RA. In addition, the statements about alleged deficiencies are

not protected under the First Amendment because either they do not address matters of

public concern or, if they do, Defendants' interest in maintaining a cohesive working

environment outweighed Plaintiff's free speech interests.

The Court should end the masquerade and dismiss the federal claims. In addition,

the Court should refuse to exercise jurisdiction over any state law claims that remain.

## I.    STANDARD FOR MOTIONS TO DISMISS

This Court should grant a defendant's motion to dismiss if "after accepting as true

all of the facts alleged in the complaint, and drawing all reasonable inferences in the

plaintiff's favor, no relief could be granted under any set of facts consistent with the

allegations in the complaint." *Trump Hotels and Casino Resorts, Inc. v. Mirage Resorts,

Inc.,* 140 F.3d 478, 483 (3d Cir.1998). When deciding a motion to dismiss, the plaintiff

cannot use allegations of civil rights violations that amount to nothing more than

conclusory, boilerplate language and the court is not required to credit bald assertions.

*Young v. New Sewickley Township*, 160 Fed.Appx. 263, 266 (3d Cir. 2005) (citing

*Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)).

## II.    THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT

The Individuals with Disabilities Education Act (IDEA) requires states receiving

federal education funding to provide "free appropriate public education" (FAPE) for all

disabled children. *Shore Regional High School Board of Education v. P.S.*, 381 F.3d

194, 198 (3d Cir. 2004) (*Shore Regional*) (citing 20 U.S.C. § 1412(1)). The term FAPE

means special education and related services that are provided at public expense, which meet the standards of the State educational agency, and which are provided in conformity with any individualized education program (IEP) required under 20 U.S.C. § 1401(8). *Shore Regional*, 381 F.3d at 198. An IEP must be "'reasonably calculated' to enable the child to receive 'meaningful educational benefits' in light of the student's intellectual potential." *Id.* (quoting *Polk v. Cent Susquehanna Interm. Unit 16*, 853 F.2d 171, 181 (3d Cir. 1988), *cert. denied sub nom, Central Columbia School Dist. v. Polk*, 488 U.S. 1030 (1989)). Pursuant to the IDEA, a child with a disability is a child with, *inter alia,* mental retardation, serious emotional disturbance, autism, and specific learning disabilities who, by reason thereof, needs special education or related services. 20 U.S.C. § 1414(3)(A).[2]

States may fashion their own procedures for identifying students and determining eligibility so long as they satisfy the requirements of the IDEA. *Shore Regional*, 381 F.3d at 198. Delaware has adopted its own procedures, which are set forth in the Department of Education's Administrative Manual for Special Education Services (AMSES).[3]

To state a claim under the IDEA, plaintiffs must allege an actionable injury. *C.M. v. Board of Education of the Union County Regional High School Dist.*, 2005 WL 899927 at *2 (3d Cir.) (Exh. A). Only those procedural violations which result in the loss

---

[2] *See* 34 C.F.R. § 300.7 defining the term "child with a disability" as:
 A child evaluated in accordance with §§ 300.530-300.536 as having mental retardation . . . a speech or language impairment . . . serious emotional disturbance . . . an orthopedic impairment, autism . . . another health impairment, a specific learning disability . . . or multiple disabilities, and who, by reason thereof, needs special education and related services.

[3] *See* DEL. CODE ANN. tit. 14, 3120, et. seq.; http://www.doe.state.de.us/exceptional_child/ Final%20AMSES/AMSESRevised12152004.pdf (AMSES).

of an educational opportunity or seriously infringe on a parent's right to participate in the IEP formulation process are actionable. *Id.* (citing *W.G. v. Brd. of Trustees*, 960 F.2d 1479 (9th Cir. 1992)); *Coale v. St. Dept. of Ed.*, 162 F.Supp.2d 316, 335 (D. Del. 2001). Technical violations or procedural inadequacies which do not cause a substantive deprivation of educational benefits are not actionable. *C.M.*, 2005 WL 899927 at *2. Plaintiffs alleging violations of the IDEA have the burden of establishing the harm caused by any claimed procedural shortcomings. *Id.* Bare allegations of a deprivation will not suffice. *See Id.* Where there is extensive parental involvement, claims based upon deprivation of the opportunity to participate in particular isolated decisions are rendered insignificant. *Id.* at *3.

III.    **REHABILITATION ACT**

Count I of the Complaint alleges that Defendants violated the Rehabilitation Act because they did not renew Plaintiff's contract in retaliation for her efforts to bring the STSD into compliance with the IDEA. Cmplt., §§ 29-30. Plaintiff further alleges that by not renewing her contract, Defendants discriminated against her and failed to meet the individual education needs of handicapped persons. Plaintiff's complaint does not allege that she is a person with a disability, and Plaintiff is not a person with a disability. Plaintiff's complaint, therefore, fails to state a *prima facie* case of employment discrimination under the Rehabilitation Act.[4] There is a separate issue, however, with respect to whether Plaintiff has stated a claim under the RA for retaliation.

---

[4] "The Rehabilitation Act[, 29 U.S.C. § 701, *et. seq.*,] forbids federal employers from discriminating against persons with disabilities in matters of hiring, placement or advancement." *Shiring v. Runyon*, 90 F.3d 827, 830-31 (3d Cir. 1996). To establish a *prima facie* case under the Rehabilitation Act ("RA"), the employee has the burden of demonstrating:

A.    **STANDARD FOR EVALUATING RETALIATION CLAIMS UNDER THE RA**

The standard for determining whether there has been a violation of the RA is the same as the standard used to determine whether there has been a violation of the Americans With Disabilities Act (ADA).  *Sweet v. Tigard-Tualatin Sch. Dist.,* 124 Fed.Appx. 482, 484-85, n.1 (9th Cir. 2005).  These standards include the ADA's retaliation provisions, *See* 42 U.S.C. § 12203(a),[5] which § 504(d) of the RA, 29 U.S.C. § 794(d), adopts.  *Id.*  Thus, individuals who are not disabled may assert retaliation claims under the RA.[6]  Individuals asserting claims, however, may not allege retaliation based

---

1) that he or she has a disability,
2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer, and
3) that he or she was nonetheless terminated or otherwise prevented from performing the job.

*Id.* at 831.  *See Id.* at 830 (indicating that employers must comply with the standards set forth in the Americans with Disabilities Act, 42 U.S.C. § 12111, et. seq.).

The RA also applies in educational settings.  To establish a violation of § 504 of the RA, 29 U.S.C. § 794(a), a plaintiff must show that:1) she is disabled as defined by the Act; 2) she is "otherwise qualified" to participate in school activities; 3) the school or the Board receives federal financial assistance; and 4) she was excluded from participation in, denied the benefits of, or subject to discrimination at the School.  *W.B. v. Matula*, 67 F.2d 484, 494 (3d Cir. 1995).

[5] 42 U.S.C. § 12203 reads:
(a) Retaliation
No person shall discriminate against *any individual* because such individual has *opposed* any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted or participated in any manner in any investigation, proceeding, or hearing under this chapter.  (emphasis added).

[6] *See Sweet*, 124 Fed.Appx. at 485 n.1 (holding that a school psychologist who alleged that she was discharged after complaining to school officials about potential IDEA violations during and after a meeting regarding a student's Individual Education Plan (IEP) had standing to bring a retaliation claim under the RA).  In *Sweet*, the court held that the psychologist's claims fell within the ambit of activity protected from retaliation under § 504(d) because the RA requires schools to provide appropriate education

-8-

upon generalized grievances related to a class of individuals. Prudential limitations
dictate that plaintiffs do not have standing in situations where they merely allege
generalized grievances, unrelated to specific individuals.[7]

    1.    **ALTHOUGH RETALIATION CLAIMS ARE
SUBJECT TO A BURDEN SHIFTING
ANALYSIS, THE PLAINTIFF RETAINS THE
ULTIMATE BURDEN OF PROOF**

An employee bringing a retaliation claim under the RA must show: 1) that she
engaged in a protected activity; 2) adverse action by the employer either after or
contemporaneous with the employee's protected activity; and 3) a causal connection
between the employee's protected activity and the employer's adverse action.[8] An
employee engages in protected activity when she *opposes* an action by the employer
based upon an objectively reasonable belief that her employer is engaging or has engaged

---

designed to meet the individual educational needs of a handicapped person and this
requirement can be met by developing an IEP for each qualified handicapped person. *Id.*
(citing 34 C.F.R. §§ 104.33(b)(1) and 104.33(b)(2)). *See Weber v. Cranston Sch.
Committee,* 212 F.3d 41 (1st Cir. 2000) (relying upon amendments to the RA which
incorporated the remedies and procedures set forth in Title VI of the Civil Rights Act of
1964, 42 U.S.C.A. § 2000d, and a regulation corresponding to Title VI, 34 C.F.R. §
100.7(e), and holding that a handicapped student's mother had standing to pursue a
retaliation claim under the RA). *See also* 29 U.S.C.A. § 794a(2) (stating that the
remedies,, procedures and rights set forth in Title VI of the Civil Rights Act of 1964 [42
U.S.C.A. § 2000d, et. seq.] are available to *any person* aggrieved by any act or failure to
act under 29 U.S.C.A. § 794).

[7] *Sullivan v. City of Pittsburgh, Pennsylvania,* 811 F.2d 171, 176 (3d Cir. 1987), *cert
denied sub nom, City of Pittsburgh, Pa v. Sullivan,* 484 U.S. 849 (1987) (citing *Warth v.
Seldin,* 422 U.S. 490 (1975), as the leading case on the issue of standing).

[8] *Krouse v. American Sterilizer Co.,* 126 F.3d 494, 500 (3d Cir. 1997) (citing *Woodson v.
Scott Paper Co.,* 109 F.3d 913, 920 (3d Cir. 1997), *cert. denied,* 118 S.Ct. 299 (1997)).
Title VII and ADA retaliation claims are analyzed under the same framework. *Krouse,*
126 F.3d at 500.

Where a plaintiff contends that an employer's proffered reasons for adverse action
are pretextual, the McDonnell Douglas burden-shifting analysis applies. *See Woodson,*
109 F.3d at 920 n.2 (explaining the burden shifting analysis in a retaliation case); *Krouse,*
126 F.3d at 500 (following the burden shifting analysis in analyzing a retaliation claim).

in unlawful, discriminatory conduct.[9] An employee need not prove the merits of the

underlying complaint of discrimination, but only that she acted with a good faith,

reasonable belief that a violation of the applicable law existed.[10] In determining the

reasonableness of an individual's belief that an act is unlawful, it is necessary to look first

at pre-existing case law.[11]

Retaliation claims under the ADA are analyzed using the burden-shifting

framework set forth in *McDonnell Douglass Corp. v. Green*, 411 U.S. 792, 793 (1973).

This same framework is applicable to the plaintiff's RA claims because the retaliation

provisions of the ADA apply, as was noted above.

Pursuant to *McDonnell Douglass*, the plaintiff has the burden of establishing a

prima facie case of retaliation. *See Shaner v. Synthes (USA)*, 204 F.3d 494, 500 (3d Cir.

2000) (discussing *McDonnell Douglass*). If the plaintiff succeeds in establishing a *prima*

*facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory

reason for the adverse action. *Id.* If the defendant meets this burden, the plaintiff has the

burden of proving that the proffered reason was a pretext for discrimination. *Id.*

While the burden of production may shift to the defendant with respect to

providing a non-discriminatory reason, the burden of persuading the trier of fact that the

defendant intentionally discriminated against the plaintiff remains with the plaintiff at all

times. *Shaner*, 204 F.3d at 500-501. The plaintiff must persuade the trier of fact *both*

---

[9] *Foster v. Time Warner Entertainment Co., L.P.*, 250 F.3d 1189 (8th Cir. 2001)
(discussing an ADA case);
[10] *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996) (discussing a
Title VII retaliation case).
[11] *Drinkwater v. Union Carbide Corp.*, 904 F.2d 853 (3d Cir. 1990) (discussing a
retaliation claim brought under New Jersey's Law Against Discrimination (NJLAD),
which applies the same reasonable belief standard as is used in Title VII cases).

-10-

that the reason was false, and that discrimination was the real reason. *Id.* at 501. To

discredit an employer's proffered reason, the plaintiff must show more than the fact that

the employer's decision was wrong or mistaken. *Id.* Rather, the plaintiff "must

demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or

contradictions in the employer's proffered legitimate reasons for its action that a rational

fact finder could rationally find them unworthy of credence, and hence infer that the

employer did not act for the asserted non-discriminatory reasons."[12] The plaintiff can

demonstrate these weakness, etc. using circumstantial evidence. *Shaner*, 204 F.3d at 503.

The plaintiff's ultimate burden in a retaliation case is to convince the jury that the

retaliatory intent had a "'determinative effect" on the employer's decision.[13]

> 2. **TO RISE TO THE LEVEL OF AN ADVERSE EMPLOYMENT ACTION, AN EMPLOYER'S CONDUCT MUST BE SERIOUS AND TANGIBLE ENOUGH TO ALTER AN EMPLOYEE'S COMPENSATION, TERMS, CONDITIONS, OR PRIVILEGES OF EMPLOYMENT**

An adverse employment action  is conduct which "constitutes a *significant* change

in employment status, such as hiring, firing, failing to promote, reassignment with

significantly different responsibilities, or a decision causing a significant change in

benefits." *Burlington Indus., Inc. v. Ellerth*, 118 S.Ct. 2257, 2268 (1998) (emphasis

added). The adverse employment action must be material. *Mondzelewski v. Pathmark*

*Stores, Inc.*, 162 F.3d 778, 787 (3d Cir. 1998). The concept of discrimination with

respect to retaliation claims refers to "job application procedures, the hiring,

---

[12] *Id.* (citing *Fuentes v. Perskie,* 32 F.3d 759, 765 (3d Cir. 1994)).

[13] *Shaner*, 204 F.3d at 501 n.8 (citing *Woodon v. Scott Paper Co.,* 109 F.3d 913, 931-35 (3d Cir. 1997)).

-11-

advancement, or discharge of employees, employee compensation, job training, and other

terms, conditions, and privileges of employment." *Id.*

As the Court noted in *Robinson*, however, "[m]inor or trivial actions that merely

make an employee 'unhappy' are not sufficient to qualify as retaliation . . ., for otherwise

every action that an irritable chip-on-the-shoulder employee did not like would form the

basis of a discrimination suit." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d

Cir. 1997); *Mondzelewski*, 162 F.3d at 787. Likewise, civil rights law suits cannot be

transformed into a forum for every workplace grievance, real or imagined, nor must they

be permitted to become a mechanism to inhibit ordinary managerial decisions or handcuff

owners and managers of businesses to the status quo. *Gray v. York Newspapers, Inc.*,

957 F.2d 1070, 1083 (3d Cir. 1992) *overruling on other grounds recognized in, Abrams

v. Lightolier*, 841 F.Supp. 584 (D.N.J. 1994) (quoting *Bristow v. Daily Press, Inc.*, 770

F.2d 1251, 1255 (4th Cir. 1985)). Civil rights statutes cannot be read so broadly as to

provide relief from the minutiae of day-to-day business decisions. *See Colgan v. Fisher

Scientific*, 935 F.2d 1407, 1421 (3d Cir. 1991) *cert. denied sub nom, Fisher Scientific v.

Colgan*, 502 U.S. 941 (1991) (noting the negative consequences which would follow if

employees were encouraged to file charges whenever they were dissatisfied with day-to-

day or interim incidents in the workplace).

Oral reprimands are not sufficiently adverse to qualify as actionable employment

action. *Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2001) (citing *Robinson*, 120

F.3d at 1301). To qualify as adverse action in a retaliation case, the plaintiff must show

that written reprimands affected the terms and conditions of her employment. *Weston*,

251 F.3d at 431. In *Weston*, the Third Circuit found that a written reprimand was not

-12-

adverse action in a retaliation case where the plaintiff "was not demoted in title, did not

have his work schedule changed, was not reassigned to a different position or location . .

., did not have his hours or work changed or altered in any way, and he was not denied

any pay raise or promotion as a result of [the] reprimands." *Id.*[14]

3.  **ESTABLISHING A CASUAL LINK
    REQUIRES MORE THAN THE MERE FACT
    THAT THE ADVERSE EMPLOYMENT
    ACTION OCCURRED AFTER A
    PROTECTED ACTIVITY**

To establish a causal link between the protected activity and the adverse action,

the plaintiff must generally show more than the mere fact that the adverse employment

action occurred after a protected activity. *Krouse*, 123 F.3d at 503; *Crenshaw v.*

*Georgetown University*, 23 F.Supp.2d 11, 18 (D. D.C. 1998), *aff'd*, 194 F.3d 173 (D.C.

Cir. 1999) (stating that mere coincidence does not establish causation in the absence of

other evidence). "Even if timing alone could ever be sufficient to establish a causal link,

. . . the timing of the alleged retaliatory action must be 'unusually suggestive' of

retaliatory motive before a causal link will be inferred." *Krouse*, 123 F.3d at 503 (citing

*Robinson*, 120 F.3d at 1302). Lack of temporal proximity, however, by itself, is not

conclusive proof against retaliation. *Woodson,* 109 F.3d at 919.

---

[14] *See Tucker v. Merck & Co., Inc.*, 2005 WL 1176565 at *4 (3d Cir.) (Exh. B) (holding
that two negative yearly evaluations did not constitute adverse employment action absent
evidence of lower raises as a result of the evaluations); *Washington v. Delaware*, 2003
WL 21697403 at *3 (D. Del) (Exh. C) (holding that two written grievances did not
amount to adverse action where the employee was not fired, denied a promotion,
reassigned or denied any benefits of her employment); *Sabbrese v. Lowe's Home
Centers, Inc.*, 320 F.Supp.2d 311, 319-20 (E.D. Pa. 2004) (holding that a written
reprimand did not deprive the plaintiff of a *significant* employment benefit or effect a
*material* change in the terms of the plaintiff's employment even though the warning
would stay in his file permanently and was part of a progressive disciplinary system). In
*Tucker*, the court noted that even if a negative evaluation lead to a lower than expected
merit wage increase or bonus, it would probably not constitute an adverse employment
action. *Tucker*, 2005 WL 1176565 at *4.

-13-

When temporal proximity is missing, courts may look to the intervening period between the protected activity and the allegedly retaliatory conduct for other evidence of retaliatory animus. *Krouse*, 126 F.3d 503-04. Where sufficient time has passed between the two activities, absent evidence of intervening antagonism or retaliatory animus, passage of time may be conclusive and the court may grant judgment as a matter of law for the defendant on the issue of causation. *See Id.* at 504 (ruling on a motion for summary judgment that the plaintiff failed to establish a causal link as a matter of law).

In the absence of temporal proximity, one way that the plaintiff can establish a link between her protected activity and the defendant's subsequent adverse employment decision is by showing that the employer engaged in a pattern of antagonism in the intervening period. *Woodson*, 109 F.3d at 920-21 (leaving open the question of whether other types of evidence might also support finding a causal link in the absence of temporal proximity).

B.    **THE ALLEGATIONS IN THE COMPLAINT FAIL TO STATE A RETALIATION CLAIM UNDER THE RA**

In this case Plaintiff contends that she was retaliated against for questioning Defendants about various incidents of non-compliance with the IDEA. *See e.g.* Cmplt. at ¶¶ 9, 13, 14, 21. Plaintiff incorporated a variety of documents in the Complaint. Neither the allegations in the Complaint nor the attached documents set forth a cause of action for retaliation under the RA because the incidents referred to:  1) do not amount to adverse employment action; 2) do not refer to protected activity; or 3) do not create an inference of discrimination. The Court, therefore, should dismiss Count I of the Complaint.

Paragraph 9 of the Complaint alleges that almost immediately after being hired[15] Plaintiff began "to bring to attention of STSD and Mr. Huber various incidents of non-compliance with the IDEA." In support of this assertion, Plaintiff cites to Exhibit 1, an October 22, 2001 memorandum to Steve Huber, the Vice Principal and Supervisor of Special Education at the High School. A review of Exhibit 1, however, establishes that the memo: 1) suggests ways to streamline internal operating procedures; 2) responds to a question regarding eligibility determination criteria; and 3) suggests additional topics for discussion at bi-monthly special education meetings. The contents of the memorandum do not amount to "protected activity" under the IDEA.

It was the plaintiff's job to evaluate students for eligibility. Making suggestions regarding streamlining procedures for the job Plaintiff is supposed to perform does not evidence an opposition[16] to illegal activity, nor does the memorandum specifically identify any illegal activity. The memorandum, moreover, is general in nature and does not refer to any student who would qualify as disabled. Even if the memorandum referred to procedural violations, any such violations would not, as a matter of law, result in the loss of an educational opportunity or deprive a student of educational benefits. As such, even if the memorandum could be viewed as opposition to an illegal activity, Plaintiff could not have had an objectively reasonable belief that the memorandum amounted to protected activity. Under no set of circumstances could the memorandum identified in ¶ 9 be viewed as protected activity. The Court, therefore, should dismiss any allegations of retaliation under the RA based upon Exhibit 1 of Plaintiff's Complaint.

---

[15] The plaintiff was hired by the School Board on October 8, 2001.

[16] The ADA's retaliation provisions refer to individuals *opposing* unlawful activity. *See* 42 U.S.C. § 12203(a).

-15-

The allegations in ¶¶ 10 and 11 of the Complaint also do not assert protected activity or adverse employment action. Rather, these allegations establish that despite Plaintiff's suggesting procedural changes, she was *promoted* to the position of Special Education Coordinator, a position which she later voluntarily resigned. The memorandum referred to as Exhibit 2 does not detail protected activity as it merely refers to conflict between two staff members. Conflicts between Plaintiff and staff members were not uncommon during her tenure as the coordinator and these conflicts continued after she resigned her position as coordinator. *See* Aug. 2, 2003 Performance Appraisal (Cmplt. Exh. 7); Cmplt. Exh. 6 (referring to unprofessional behavior and negative staff interactions).

While the memorandum refers to possible legal repercussions in the event of a due process action, this bald, unsupported assertion does not, in fact, allege a violation. Moreover, the deficiencies noted are alleged procedural errors which Plaintiff could not reasonably believe would result in a substantive deprivation of educational benefits to a student. Moreover, there is no assertion that these procedural deficiencies resulted in a deprivation of education benefits to a student. Personnel disputes do not give rise to retaliation claims under the RA. *Cf. Gray*, 957 F.2d at 1083 (indicating that civil rights lawsuits cannot be transformed into a forum for everyday workplace disputes).

In paragraph 12, Plaintiff contends that she was "removed" from the coordinator position. Plaintiff, however, admitted in ¶ 11 that she asked to be relieved of the position due to staff conflicts. Having Ms. Walls-Culotta[17] become her supervisor, moreover, cannot be viewed as an adverse action, as employers must be permitted to make routine

---

[17] Ms. Walls-Culotta's name is misspelled in the caption of the Complaint.

employment decisions without fear of lawsuits.  The allegations in ¶ 12 do not establish

any of the elements of a retaliation claim and, therefore, should be stricken.

Paragraph 13 is stated in conclusory terms and cannot be responded to because

the allegation fails to set forth dates on which the incidents occurred or identify the

people involved.  The allegation also fails to identify the procedures alleged to be

missing.  Even if the activities alleged involved protected activity, being accused of

dragging out meetings and being unfocused does not amount to adverse action.  *Weston*,

251 F.3d at 430 (indicating that oral reprimands are not actionable).  Moreover, internal

operating procedures regarding the length of meetings are matters which cannot, as a

matter of law, give rise to a retaliation lawsuit under the RA as employers must not be

inhibited from making ordinary managerial decisions.  Paragraphs 13-17 suffer from

similar deficiencies as they do not contain dates or identify individuals.  Rather, they

refer to routine operating procedures at the school and the only adverse actions alleged

are oral reprimands.

Paragraph 18 also fails to assert either protected activity or actionable adverse

employment action.  The gist of this paragraph is that Plaintiff was instructed that instead

of reporting incidents of suspected violations to the coordinator or the suspected violator,

she should report them to the principal, who was supervising Plaintiff at the time.  In light

of the difficulties that Plaintiff was having communicating with staff at the time, this

change was neither unusual nor retaliatory.

Being required to report suspected violations to the principal, who was ultimately

responsible for IDEA compliance and who was also acting as Plaintiff's supervisor at the

time, cannot, as a matter of law, be deemed adverse action.  Moreover, Plaintiff does not

-17-

allege that the action was adverse. Rather, she contends that the reason the change was made was to permit Ms. Walls-Cultotta and Mr. Huber to decide what action to take and to look like they knew what they were doing. Allegations such as this do not support a retaliation claim. Rather, they support the proposition that Plaintiff is an unhappy employee with a chip on her shoulder who did not feel that she was appreciated. Civil rights statutes are not intended to provide relief from disagreements about day to day business decisions. Paragraph 18 fails to state a claim of retaliation.

In paragraph 19 of the Complaint, Plaintiff acknowledges her growing resentment based upon having to report suspected technical violations to Ms. Walls-Culotta. She also identifies a number of e-mails, Cmplt. Exh. 3, wherein she purportedly reports suspected violations of the IDEA.

In Plaintiff's January 12, 2004 e-mail, she purportedly identifies several potential "violations:"

1) The dismissal of the IEP team prior to the completion of the IEP;

2) The signing of a 10 day waiver to correct the omission of "IEP development" being included on the IEP meeting invitation rather than having the parents initial the original invitation indicting their approval that the IEP be developed at the meeting;

3) Her desire to have certain eligibility determination meetings (EDM) reclassified to IEP's;[18] and

4) Permission test forms being mailed out indicating there would be informal assessment without the IEP team addressing the issue.

There is no indication in these allegations who the students involved were or that the students were disabled or qualified for services. Moreover, there is no claim that the dismissal of the team prior to completion of the meeting or having certain EDM meetings

---

[18] This is the same issue addressed in the second e-mail included with Exhibit 3.

reclassified resulted in the student's being deprived of an educational opportunity. Even

if the plaintiff asserted a deprivation, bare allegations of a deprivation will not suffice.

*C.M.*, 2005 WL 899927 at *2.

Having EDM's occur prior to IEP's, moreover, cannot be viewed as depriving a

student of an educational opportunity because students are not entitled to IEP's unless

and until they are deemed eligible.[19]  As such, this allegation does not refer to protected

activity because it cannot be viewed as opposing what Plaintiff reasonably believed were

violations amounting to a student's being deprived of an educational opportunity.

Plaintiff's complaint about the waiver being signed clearly refers to a minor

technical issue which would not, as a matter of law, deprive a student of an educational

opportunity or the student's parent's an opportunity to participate.  The parents,

moreover, obviously signed the waiver.  This complaint cannot be viewed as protected

activity as Plaintiff could not have reasonably believed that this was anything other than a

minor procedural violation, which would not deprive the student of an educational

opportunity.

As for Plaintiff's complaint about permission test forms being mailed out

indicating that informal assessment would occur without being addressed by the IEP

team, this allegation does not identify students and, therefore, Plaintiff cannot establish

protected activity because she has failed to identify a disabled student.  Moreover,

Plaintiff is raising a procedural issue without identifying any specific IDEA provision

---

[19] *See* 34 C.F.R. § 300.531 (requiring an initial evaluation prior to the provision of
services).