that was violated.[20] Rather, Plaintiff is simply stating her belief as to a better system. Disputes over internal procedures do not give rise to civil rights retaliation claims. Even if Plaintiff could establish an IDEA violation based upon how the notices were sent out, it is well settled that disputes over minor procedural issues do not amount to protected activity as Plaintiff could not reasonably have believed that checking off informal assessment would deprive students of an educational opportunity. *See C.M.*, 2005 WL 899927 at *2 (stating that technical violations or procedural inadequacies which do not cause a substantive deprivation of educational benefits are not actionable).

With respect to the handwritten note on the bottom of the January 12, 2004 e-mail included with Exhibit 3, Plaintiff indicates that she complained about invitations being mailed out without indicating all of the purposes being addressed at meetings. The note goes on to say that Plaintiff wanted the form changed to indicate that the IEP would also be done, "if [the child] qualifies." Consistent with her past allegations, Plaintiff fails to identify a specific section of the IDEA that was violated and, instead, is simply attempting to impose her view of "best practices" for compliance. This complaint again refers to minor disagreements over procedural issues which Plaintiff could not reasonable

---

[20] In fact, despite plaintiff's bald assertion of a violation, 34 C.F.R. § 300.505, and Del. Dept. of Ed. Reg. 925, § 3.1 *require* parental consent before conducting an initial evaluation.

Throughout her history with the school district Plaintiff identified alleged "violations." She could not, however, substantiate these allegations by pointing to specific requirements in the law. Plaintiff's complaints typically referred to suggestions on different ways to do things. Differences of opinion over procedural issues do not implicate civil rights laws. To the extent that the Court believes that any of Plaintiff's allegations of "violations" might otherwise have merit, the Court should require Plaintiff to specifically identify where in the law, by reference to specific code requirements, the alleged procedure violates the IDEA. Absent support in the law, Plaintiff could not have reasonably believed that any of her alleged violations were, in fact, violations.

believe resulted in a serious deprivation of parental rights or the deprivation of an educational opportunity for the student. This complaint, therefore, does not qualify as "protected activity" which will support a retaliation claim.

Although the note implies that Ms. Walls-Culotta adopted the suggestion and changed the form, this does not establish that there was a violation of the IDEA. Absent specific identification of an IDEA requirement violated, the change is evidence of nothing more than acquiescence in a request to change a procedure. Bald assertions regarding violations do not support retaliation claims.

The remaining allegations in ¶ 19 suggest that Plaintiff was disgruntled because her "expertise" with respect to the IDEA was being questioned by her superiors. Again, she refers to unsubstantiated and unidentified "violations" of the IDEA without offering any citation to a statutory section. In support of the allegation that her superiors did not blindly adopt her suggestions, Plaintiff refers to Exhibit 4 of the Complaint. The first memorandum in Exhibit 4, dated January 20, 2004, establishes that Ms. Walls-Culotta reviewed Plaintiff's concerns over the collection of data and disagreed with Plaintiff's interpretation with respect to one issue, and contacted the school's attorney to confirm compliance.

The memorandum discusses a disagreement over a procedural issue. There is no indication that any particular student was deprived of an educational opportunity or that any student's IEP was not reasonably calculated to provide meaningful educational benefits to the child. Plaintiff, therefore, could not reasonably have believed that her suggestion was "protected activity" under the civil rights statutes. In addition, absent the identification of a disabled student, Plaintiff's complaint with respect to this issue fails to

state a claim because she does not have standing to assert the rights of all students with respect to generalized grievances.

The second memorandum from January 20, 2004 discusses Plaintiff's suggestion about identifying data needed for triennial reevaluations in the IEP meeting prior to the reevaluation and notes that a meeting was held to discuss the proposal. This issue clearly refers to an in-house procedural issue, suggesting a way to improve the data collection process, not a violation of the IDEA. This memorandum does not involve protected activity within the meaning of the IDEA and, therefore, cannot form the basis of a retaliation claim.

The second memorandum also refers to concerns Plaintiff expressed about procedures at IEP meetings related to reviewing a student's progress. There is no indication that these "concerns" implicate a violation of the IDEA and, moreover, other than a bald assertion regarding an IDEA violation, no IDEA violation has been identified. The concerns, moreover, address procedural issues and there is no suggestion that any particular student was deprived of an educational opportunity as a result of the procedures used. Plaintiff, therefore, has failed to establish that she engaged in protected activity. As such, she cannot maintain a retaliation claim based upon the "concerns" identified in this memorandum. Moreover, Plaintiff lacks standing to assert generalized grievances.

The final item in Exhibit 4, an e-mail from Plaintiff dated February 23, 2004, refers to questions and a disagreement over internal operating procedures related to who should sign requests for permission to test students. Once again, this complaint addresses nothing more than internal operating procedures and does not implicate any violation of

DOCS_DE 128684v.1

the IDEA. Indeed, this e-mail offers further evidence of Plaintiff's continued inability to cooperate with staff members on even routine tasks. Because this e-mail does not refer to protected activity, it cannot support a claim of retaliation. As such, it should be stricken from the Complaint.

In ¶¶ 20-21, Plaintiff alleges that she complained to STSD Board member Charles Mitchell about issues of IDEA non-compliance. For the reasons set forth above, there was no reasonable basis for the plaintiff to believe that there were violations and, therefore, any complaint to Mr. Mitchell about unfounded allegations cannot be considered protected activity. Moreover, Plaintiff's concerns were not directed to a particular student and Plaintiff does not have standing to address generalized grievances related to non-compliance. In addition, Plaintiff failed to identify any students who were actually deprived of an educational opportunity.

In support of her contention that after she spoke to Mr. Mitchell she continued to raise concerns about IDEA violations, the plaintiff refers to three e-mails. *See* Cmplt. Exh. 5. The first e-mail, dated February 27, 2004, addresses solely an internal issue with respect to the number of IEP's scheduled by the department secretary and the fact that some may need to be rescheduled because all of the paperwork may not be completed. This issue refers to internal office procedures, not violations of the IDEA, and cannot be viewed as "protected activity."

The second part of the e-mail acknowledges that teachers were complying with the plaintiff's suggestion that re-evaluation needs be addressed earlier. This merely anecdotal report is not a complaint in opposition to any procedures. The e-mail, moreover, is addressed to the department secretary, who is not a party to this litigation

and who had no control over any decisions by the defendants to terminate Plaintiff. This e-mail fails to refer to protected activity in any manner and, therefore, cannot support a retaliation claim. Thus, the e-mail should be stricken from the Complaint.

The second e-mail in Exhibit 5, dated March 2, 2004, went from Plaintiff to Defendant Huber. This e-mail does not address violations of the IDEA. Rather, it requests clarification of internal operating procedures and asks for a meeting to discuss these procedures. This e-mail does not identify any violations of the IDEA and does not address protected activity. As such, this e-mail cannot support a retaliation claim.[21]

The final e-mail in Exhibit 5 is dated March 12, 2004. This is actually a chain of e-mails discussing what testing the Division of Vocational Rehabilitation (DVR) requires with respect to students transitioning out of high school. The e-mail does not address or even assert a violation of the IDEA. The e-mail, moreover, is a discussion of proper procedures, and properly solicited Plaintiff's input. This e-mail does not evidence any statements in opposition to STSD procedures allegedly violating the IDEA. This e-mail, therefore, does not involve protected activity and Plaintiff could not reasonable believe that it did. This e-mail, therefore, cannot support a retaliation claim.

Paragraph 22 alleges that following her conversation with Mr. Mitchell, rather than address Plaintiff's concerns regarding the IDEA, Mrs. Walls-Culotta gave Plaintiff numerous written reprimands. These reprimands are incorporated as Exhibit 6. These reprimands, however, do not provide evidence of adverse employment action as there is

---

[21] In the unlikely event that the Court concludes that one or more of the plaintiff's allegations survive the motion to dismiss, the Court should strike any allegations and exhibits from the Complaint which do not state a claim.

no evidence that these reprimands affected the terms and conditions of Plaintiff's employment.

The reprimands, moreover, are clearly not in response to complaints raised by Plaintiff. As the March 8, 2004 letter states, Plaintiff acted unprofessionally when she and Ms. Walls-Culotta met to discussed Plaintiff's conduct at an EDM meeting held on February 5, 2005. At the EDM meeting, Plaintiff had a bad exchange with Wendy McKeever, one of the special education teachers. Disciplinary actions following particularly onerous interactions with other staff members are matters outside the purview of the civil rights laws. Even if Plaintiff's prior complaints could be considered protected activity, the letter unequivocally establishes that there is no connection between Plaintiff's prior complaints and the letter. Rather, the letter clearly addresses a specific incident between two employees, and the school principal's attempt to intervene and determine what occurred. These types of routine personnel matters do not implicate the civil rights laws.

The letter further evidences Plaintiff's insubordination and continued refusal to cooperate with her superiors, and establishes that Plaintiff continued to have difficulty dealing with other members of her department. After Plaintiff requested that the meeting with Ms. Walls-Culotta be taped, Plaintiff, unconscionably, insinuated that Ms. Walls-Culotta would alter her copy of the tape and, therefore, refused to provide a copy of the tape. In addition, Plaintiff accused Ms. Walls-Culotta, the school principal and her supervisor, of being incompetent. Such insubordination is clearly intolerable under any standard. The remaining letters and Plaintiff's ultimate dismissal are, as demonstrated in the letters, based upon Plaintiff's inability to work with other staff members, refusal to

cooperate with a plan to improve her working relationships and her refusal to return paperwork, including a signed copy of the March 8, 2004 letter.

In ¶ 30 of the Complaint, Plaintiff contends that by terminating her "because of her efforts to bring STSD into compliance with the IDEA, Defendants failed to meet the individual educational needs of handicapped persons." Such an allegation is conclusory and lacks any basis in fact. Bare allegations of a deprivation will not suffice. *C.M.*, 2005 WL 899927 at *2. Moreover, the Complaint fails to identify any individual whose educational needs were not met, or whose needs Plaintiff reasonably believed were not being met. The asserted "violations" were, at best, minor procedural violations which Plaintiff could not have reasonably believed deprived any student of an educational opportunity. Plaintiff's RA retaliation claim, therefore, fails as a matter of law as there is no conceivable set of facts upon which she can prevail.

IV.  **FIRST AMENDMENT RETALIATION**

Public employees do not give up their First Amendment rights by taking a job in the public sector. *Garcetti v. Ceballos*, 126 S.Ct. 1951, 1957 (2006). Rather, public employees retain their right to speak as a citizen addressing matters of public concern. *Id.* In *Pickering v. Brd. of Ed. of Twp. High Sch. Dist. 205, Will County, Illinois*, 391 U.S. 563 (1968) and its progeny, the Supreme Court developed a two part inquiry with respect to the speech of public employees. *Garcetti*, 126 S.Ct. at 1958.

The first inquiry examines whether the employee spoke as a citizen on a matter of public concern. *Id.* If the employee did not, she has no First Amendment cause of action based upon her employer's reaction. *Id.* "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes and the Constitution does not insulate their communications from

employer discipline." *Id.* at 1960. "Restricting speech which owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." *Id.* As the Court noted, "[r]efusing to recognize First Amendment claims based on government employees' work product does not prevent them from participating in public debate." *Id.*

The First Amendment does not allow public employees to "'constitutionalize the employee grievance." *Id.* at 1959 (quoting *Connick v. Myers*, 461 U.S. 138, 154 (1983)). If a public employer believes that an employee's statements, made pursuant to her official duties, are inflammatory or misguided, it has the authority to take proper corrective action. *Garcetti*, 126 S.Ct. at 1960-61. "[T]he First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities." *Id.* at 1961.

If an employee speaks as a citizen on a matter of public concern, the question becomes whether the governmental employer had an adequate justification for treating the employee differently than any other member of the public. *Garcetti,* 126 S.Ct. at 1958. Public employers have broad discretion in their role as employer to restrict speech, but the restrictions must be directed to speech that has some potential to impact the entity's operations. *Id.* Governmental employers need a significant degree of control over their employee's words and actions because without the ability to exercise this control, there would be little chance for the efficient provision of services. *Id.*

First Amendment retaliation claims are analyzed under a three step process. *Badassare v. New Jersey*, 250 F.3d 188, 194-95 (3d Cir. 2001). The first step requires Plaintiff to establish that her speech was protected. *Id.* To be protected, the speech must

address a matter of public concern, *Id.*, and be made outside the course of performing her official duties. *Garcetti*, 126 S.Ct. at 1961. If Plaintiff satisfies this step, she must then demonstrate that her interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees. *Badassare*, 250 F.3d at 194-95.

Determining whether the employee's interests outweigh the employer's requires the Court to engage in a balancing test. *Id.* These questions involve questions of law, for the Court to decide. *Id.* Public employees have a greater burden of establishing retaliation than other citizens because of the government's interest in promoting the efficiency of public services. *Rappa v. Hollins*, 991 F.Supp. 367, 374 (D. Del. 1997), *aff'd* 178 F.3d 1280 (3d Cir. 1999).

If the plaintiff gets by these steps, she must then show that her protected speech was a substantial or motivating factor in the allegedly retaliatory conduct. *Baldassare*, 250 F.3d at 195 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977)). If the plaintiff meets her burden on this point, the defendant can rebut the claim of retaliation by demonstrating that it would have reached the same decision even in the absence of the protected conduct. *Id.*

### A.    **PUBLIC CONCERN**

Speech by a public employee involves a matter of public concern if it can be fairly considered as relating to any matter of political, social or other concern to the community. *Baldassare*, 250 F.3d at 195. The determination of whether speech is a matter of public concern focuses on the content, form and context of the speech. *Id.* Speech which attempts to bring to light actual or potential wrongdoing or breach of the public trust on the part of governmental officials may involve a matter of public concern.

-28-

*Id.* To qualify for protection, the speech at issue must be made in the employee's role as a citizen, as opposed to her role as an employee. *Garcetti*, 126 S.Ct. at 1960-61. *See Pickering v. Brd. of Ed. of Twp. High Sch. Dist. 205, Will County, Illinois*, 391 U.S. 563, 568 (1968) (noting that a teacher's interest, as a citizen, in commenting on matters of public concern must be balanced against the state's interest as an employer); *Connick*, 461 U.S. at 143 (noting that the emphasis in *Pickering* on the right of public employees, *as citizens*, to comment on matters of public concern was not accidental, and recognizing that government offices could not function if every employment decision became a constitutional matter).

The test for whether speech addresses a matter of public concern focuses on the value of the speech. *Baldassare*, 250 F.3d at 197. Speech intended to disclose misfeasance by public employees is protected, while speech disclosing personal grievances is not.[22]

### B.  BALANCING OF INTERESTS

The balancing test takes into consideration a variety of factors. *Baldassare*, 250 F.3d at 198. Communications made in forums not open to the general public are entitled to less protection than communication made to the general public. *Roseman v. Ind. Univ. of Pennsylvania at Ind.*, 520 F.2d 1364, 1368 (3d Cir. 1975), *cert denied*, 424 U.S. 921 (1976) (holding that a teacher's complaints to other members of her department were essentially private communications, entitled to less protection than statements made to the general public). Employers have a substantial interest in maintaining discipline and harmony among co-workers. *Baldassare*, 250 F.3d at 198.

As the Supreme Court stated in *Connick*:

---

[22] *Swineford v. Snyder County Pennsylvania*, 15 F.3d 1258, 1271 (3d Cir. 1994).

> [T]he Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs. This includes the prerogative to remove employees whose conduct hinders efficient operation and to do so with dispatch. Prolonged retention of a disruptive or otherwise unsatisfactory employee can adversely affect discipline and morale in the work place, foster disharmony, and ultimately impair the efficiency of an office or agency.

*Connick*, 461 U.S. at 151 (quoting Justice Powell's separate opinion in *Arnett v. Kennedy*, 416 U.S. 134, 168 (1974)). *Potential* disruptiveness is enough to outweigh whatever First Amendment value speech may otherwise have. *Watters v. City of Philadelphia*, 55 F.3d 886, 896 (3d Cir. 1995).

The employee's placement in the organizational hierarchy is a significant factor in respect to the detrimental impact speech has on the working relationships within an organization. *Baldassare*, 250 F.3d at 198 (citing *Swineford v. Snyder County Pa.*, 15 F.3d 1258, 1272-73 (3d Cir. 1994), which held that the county voter registrar's interest in comments regarding electoral improprieties did not outweigh the State's interest in efficiency). "When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate." *Connick*, 461 U.S. at 151-52. Employers do not need to allow events to unfold to the point of actual disruption of the office and the destruction of working relationships before taking action. *Id.* at 152.

The disruption is particularly relevant where the speaker's statements call into question the integrity of the person immediately in charge of running a department. *See Roseman*, 520 F.2d at 1368 (rejecting a First Amendment claim where the speaker called into question the integrity of the person in charge of running the department). In some positions, the relationship between superior and subordinate is of such a nature that

-30-

public criticism by the subordinate seriously undermines the effectiveness of the working relationship. *Pickering*, 391 U.S. at 569-70.

When an employee personally confronts her immediate superior, the employer's institutional efficiency may be threatened not only by the content of the message, but by the manner, time and place in which it is delivered. *Connick*, 461 U.S. at 153. When an employee's speech concerns office policy and arises from an employment dispute concerning the very application of the policy to the speaker, additional weight must be given to the supervisor's view that the employee has threatened the authority of the employer to run the office. *Id.*

The Court, therefore, must determine whether the disruption in discipline or disruption in harmony rises to such a level the that government's interests outweigh any free speech interest the plaintiff may have.

### C. THE PLAINTIFF'S STATEMENTS WERE NOT MATTERS OF PUBLIC CONCERN

Even the most cursory review of Plaintiff's Complaint and exhibits, which are detailed at length in Section III(B), *supra*, establishes that the statements for which Plaintiff seeks protection were made not in her role as citizen, but in her role as the school psychologist, in conjunction with the performance of her duties. The procedures she suggested or questioned went to how her job would be performed. Similarly, her personnel disputes were personal matters, which did not arise outside of her job. Her statements were made solely in her capacity as the school psychologist, and not as a

private citizen.[23] These statements, therefore, are not matters of public concern as a matter of law.

Even if the court concludes, however, that some of Plaintiff's speech related to matters of public concern, the adverse action about which she complains is the non-renewal of her contract. The vote regarding the non-renewal of her contract occurred in April of 2004. The exhibits attached to Plaintiff's complaint establish that by March of 2004, Plaintiff had a total lack of confidence in the abilities of her immediate superior, Ms. Walls-Culatta, and she was more than willing to express those opinions. *See* Complt, Exh. 6. Plaintiff's insubordination and willingness to impugn the integrity of her immediate supervisor, accuse her superior and the rest of her department of being incompetent, and make false accusations regarding both past and present employees,[24] is clear evidence of Plaintiff's inability to continue working with Mrs. Walls-Culotta, her immediate superior, or the rest of the staff in the Special Education Department.

As the school's only psychologist, it is obvious that Plaintiff could no longer work with or tolerate her co-workers or superiors and, as such, Defendants had ample reason to decide not to renew her contract. The threat to institutional efficiency and the obvious destruction of working relationships was clear and Defendants were not required to stand

---

[23] *Cf. Garcetti*, 126 S.Ct. at 1955-56, 1960-61 (concluding that statements made in a memorandum prepared pursuant to a deputy district attorney's official duties and comments made at a meeting held to discuss the memo were not statements made as a private citizen); *Pickering*, 461 U.S. at 148 (indicating that questions on a survey circulated by a disgruntled employer related to coworkers' confidence in superiors, office morale, and the need for a grievance procedure were not matters of public concern but, rather, related to personal grievance issues).

[24] To the extent that there is any question with respect to what was said at the meeting on February 9, 2005, the meeting was taped at Plaintiff's request. Plaintiff is in the possession of the only copy of the tape and should be able to make the tape available at the Court's request.

-32-

by and let it continue. Thus even if the statements by Plaintiff prior to and at the meeting addressed matters of public concern, in light of the limited protection provided to public employees making statements in private or semi-private settings, STSD's interests in preventing disruption and the continued destruction of working relationships clearly outweighed any interests that Plaintiff may have had with respect to these statements as a matter of law. Plaintiff's first amendment claim, therefore, fails to state a claim upon which relief can be granted.

V.   **THE PLAINTIFF'S STATE LAW CLAIM FAILS**

Plaintiff's wrongful termination claim under state law is based upon violation of public policy. For the reasons set forth in Sections III and IV, *supra*, Plaintiff's public policy arguments fail as a matter of law.

VI.  **PLAINTIFF'S COMPLAINT FAILS IN ALL RESPECTS AS TO DEFENDANT HUBER BECAUSE THE COMPLAINT DOES NOT CONTEND THAT HE WAS RESPONSIBLE FOR HER TERMINATION IN ANY MANNER**

All counts in the Complaint allege that Defendants' adverse action was the non-renewal of Plaintiff's contract. The Complaint contains numerous allegations against Mrs. Walls-Culotta, but there are no allegations against Mr. Huber regarding her non-renewal as he was not her supervisor at the time. As such, there are no allegations in the Complaint alleging that Mr. Huber was in any way responsible for any adverse action taken against the plaintiff. With respect to Mr. Huber, therefore, the Complaint fails to state a claim as there is no set of facts under which Plaintiff may recover from Mr. Huber. The Complaint against Mr. Huber should be dismissed.

VII. **ALTERNATIVE MOTION FOR A MORE DEFINITE STATEMENT**

To the extent that the Court concludes that Plaintiff has otherwise stated a claim, Defendants are entitled to a more definite statement. The Complaint contains a rambling sequence of conclusory allegations,[25] supported by numerous memorandum and letters, none of which show that Plaintiff is entitled to relief.

Rule 12(e) provides that where a pleading is so vague or ambiguous a party cannot reasonably be required to frame a responsive pleading, that party may move for a more definite statement.[26] Plaintiff's Complaint asserts that she made protected statements regarding alleged violations of the IDEA over a period of time spanning several years. She fails to identify any violations, requiring Defendants to speculate with respect to the nature of the statements and how the IDEA was violated. In addition, Plaintiff's Complaint fails to identify any individuals who were deprived of an educational opportunity, or who were not permitted to meaningfully participate in their child's IEP Plan.[27] This failure will also require Defendants to speculate when answering the Complaint. The Court, therefore, should require Plaintiff to provide a more definite statement.

## CONCLUSION

Plaintiff's complaint fails to establish that she engaged in protected activity under the RA because she could not reasonably have believed that the claimed procedural violations deprived any student of an educational opportunity. The Court, therefore,

---

[25] Allegations made in conclusory terms do not meet the pleading requirements under Rule 8(a). *Young*, 160 Fed.Appx. at 266.

[26] F.R.C.P. 12(e).

[27] *Cf. Young*, 160 Fed.Appx. at 266 (holding that a plaintiff who made a bald assertion that other officers were treated differently but failed to identified individuals treated differently did not meet the notice pleading requirements in Rule 8 with respect to an equal protection claim).

should dismiss Plaintiff's RA claim. In light of the nature and context of her statements, there is no set of facts under which Plaintiff could recover. The Court should also dismiss Plaintiff's First Amendment retaliation claims because even if Plaintiff's speech addressed a matter of public concern, the disruptive nature of the speech and the manner in which it was delivered created actual and/or potential disharmony in the workplace. As such, the employer's interests outweighed Plaintiff's. In light of the fact that Plaintiff's retaliation claims fail, no public policy was violated and, as such, Plaintiff's wrongful termination claim fails as a matter of law as there is no set of facts under which Plaintiff can recover. Alternatively, the Court should exercise its discretion to dismiss this pendent state law claim.

To the extent that the Court concludes that one or more of Plaintiff's claims survive, the Court should order Plaintiff to amend her complaint to plead her retaliation claims with specificity, including the names of the individuals involved, the dates on which statements were made, the precise nature of the statements, and the specific sections of the IDEA violated with respect to each allegedly improper procedure.

-36-

RESPECTFULLY SUBMITTED,

WHITE AND WILLIAMS, LLP

/s/ William L. Doerler
_____
JOHN D. BALAGUER
Bar ID. # 2537
WILLIAM L. DOERLER
Bar ID. # 3627
P.O. Box 709
Wilmington, DE 19899-0709
302-467-4508
Attorneys for Defendants Sussex Technical School District, Sussex Technical School District Board of Education, Sandra Walls-Culotta, and Steve Huber

Date: August 17, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DOROTHY HOULIHAN, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) C.A. No. 05-00194 JJF |
| v. | ) |
| | ) |
| SUSSEX TECHNICAL SCHOOL DISTRICT, | ) TRIAL BY JURY OF TWELVE |
| SUSSEX TECHNICAL SCHOOL DISTRICT | ) DEMANDED |
| BOARD OF EDUCATION, SANDRA WALLS- | ) |
| CULOTTA, individually, and in her official | ) |
| capacity, and STEVE HUBER, individually, and in | ) |
| his official capacity, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

**ORDER**

WHEREAS this _____ day of _____, 2004, having considered the Defendants' Motion to Dismiss for Failure to State a Claim and the Plaintiff's response thereto, it is hereby ordered that the Motion is **GRANTED**. The plaintiff's Complaint, therefore, is dismissed, with prejudice.

IT IS SO ORDERED.

_____
JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DOROTHY HOULIHAN, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) C.A. No. 05-00194 JJF |
| v. | ) |
| | ) |
| SUSSEX TECHNICAL SCHOOL DISTRICT, | ) TRIAL BY JURY OF TWELVE |
| SUSSEX TECHNICAL SCHOOL DISTRICT | ) DEMANDED |
| BOARD OF EDUCATION, SANDRA WALLS- | ) |
| CULOTTA, individually, and in her official | ) |
| capacity, and STEVE HUBER, individually, and in | ) |
| his official capacity, | ) |
| | ) |
| Defendants. | ) |

**CERTIFICATE OF SERVICE**

I, William L. Doerler, do hereby certify that on this 17th day of August, 2005, **Defendants' Opening Brief in Support of Their Renewed Motion to Dismiss for Failure to State a Claim or, in the Alternative, Motion for a More Definite Statement** was served upon the following via electronic filing and/or regular mail:

Brian F. Dolan, Esquire
Stumpf, Vickers & Sandy, P.A.
8 West Market Street
Georgetown, DE  19947
*Attorney for Plaintiff*

WHITE AND WILLIAMS, LLP

/s/ William L. Doerler
_____
WILLIAM L. DOERLER
Bar ID. # 3627
P.O. Box 709
Wilmington, DE 19899-0709
302-467-4508
Attorneys for Defendants Sussex Technical School District, Sussex Technical School District Board of Education, Sandra Walls-Culotta, and Steve Huber