IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DOROTHY HOULIHAN
19576 Beaver Damn Road
Lewes, DE 19958

    Plaintiff

v.

Civil Action No. 05-00194 JJF

SUSSEX TECHNICAL SCHOOL DISTRICT
17137 County Seat Highway
Georgetown, DE 19947

SUSSEX TECHNICAL SCHOOL DISTRICT
BOARD OF EDUCATION
P O Box 351
Georgetown, DE 19947

SANDRA WALLS-CULOTTA
Individually, and in her Official capacity
6 East Clarke Street
Milford, DE 19963

STEVEN HUBER
Individually, and in his Official capacity
17137 County Seat Highway
Georgetown, DE 19947

    Defendants

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT

### NATURE OF THE CASE

    COMES NOW, Plaintiff, Dorothy Houlihan ("Ms Houlihan"), and through counsel files this Complaint against her former employer, Sussex Technical School District ("STSD"), Sandra Walls-Culotta ("Ms W-C"), and Steven Huber ("Mr Huber"), asserting claims for violation of the Rehabilitation Act, 29 U S C §794(d), in violation of her First Amendment rights under 42 U S C Section 1983, and wrongful termination Ms Houlihan contends Defendants committed such violations by terminating her by virtue of her attempts to bring STSD into compliance with the Individuals with Disabilities Education Act ("IDEA").

A1

## PARTIES

1  Ms Houlihan is a resident of Sussex County, in the State of Delaware

2  STSD is a school district organized as an agency of the State of Delaware

3  The Board is the governing entity responsible for the actions of STSD

4  Ms W-C, at all relevant times, was the Principal of Sussex Technical High School (the "High School)

5  Mr Huber was at all relevant times, and is, the Vice Principal and Supervisor of Special Education at the High School

## JURISDICTION

6  This case is a civil action arising under the laws of the United States Accordingly, this Court has jurisdiction pursuant to 28 U S C §1331

7  The events giving rise to Plaintiff's claims occurred in Delaware STSD maintains its administrative office in Delaware and there is no district in which this action may otherwise be brought Accordingly, venue lies in this Court, pursuant to 28 U S C §1391(b)

## FACTS COMMON TO ALL COUNTS

8  Ms Houlihan began working as a School Psychologist for the High School on October 8, 2001  Supervision of her position was placed with the Vice Principal, Mr Huber

9  Beginning immediately, Ms Houlihan began to bring to the attention of STSD and Mr Huber various incidents of non-compliance with the IDEA  *See memo dated 10/22/2001, attached hereto as Exhibit 1, and incorporated by reference herein.*

10  In September 2002, Ms Houlihan was asked by STSD to assume the position of Special Education Coordinator  She was asked to assume this position *in addition to* her position and responsibilities as School Psychologist  Ms Houlihan agreed to take on the additional position

11  Shortly into her position as Special Education Coordinator, Ms Houlihan discovered that her two positions often came into conflict  She found that the position of School Psychologist conflicted with the position of Special Education Coordinator. Ms Houlihan felt that her commitment to two positions (with no obvious support for either one) effectively diluted her authority among teaching staff, creating repeated incidents of noncompliance and insubordination  *See memo dated 2/4/2003, attached hereto as Exhibit 2, and incorporated by reference herein.* Accordingly, in March 2003, Ms Houlihan asked to be relieved of the Special Education Coordinator position

2

A2

12      Ms Houlihan was removed from the Special Education Coordinator position, and supervision of her School Psychologist position was then placed with the Principal, Ms W-C

13      Ms Houlihan continued to bring to light incidents of non-compliance with the IDEA   She tried to implement IDEA-required steps (which had been blatantly missing) into Special Education Meetings, and was accused of dragging out meetings, and being unfocused

14      Ms Houlihan pointed out one teacher's illegal state assessment accommodation, and was accused of attacking staff

15      Instead of correcting IDEA violations, STSD criticized Ms Houlihan as being uncooperative

16      Several times, Ms Houlihan was told that she was making various members of the administration look bad (because she knew the IDEA requirements and they did not)

17      Ms Houlihan was also told that the school had been doing things this way for 12 years now and the staff simply did not want to change   She was told that her expectations were too high, and that she must learn how to "go with the flow"

18      In August 2003, Ms W-C re-wrote Ms Houlihan's job description   Ms W-C re-engineered the job description to prevent Ms Houlihan's input on incidences of non-compliance with IDEA regulations   Ms Houlihan was now to report any alleged IDEA violations to Ms W-C and/or Mr Huber, who then could decide what, if any, action to take, and in the process look like they knew the law/requirements

19      From this point forward, relations between Ms Houlihan and Ms W-C deteriorated, as Ms Houlihan continued to fight for STSD to comply with the IDEA, but now had to do so "behind the lines," by going directly to Ms W-C and/or Mr Huber with each and every incident of non-compliance, rather than addressing each incident with the specific, noncompliant staff member   *See emails attached hereto as Exhibit 3, and incorporated by reference herein.* For each incident of non-compliance reported by Ms Houlihan, Ms W-C and/or Mr Huber refused to acknowledge Ms Houlihan's expertise, and in fact, often blatantly refuted Ms Houlihan's recommendations, thereby ensuring STSD's perpetual non-compliance with the IDEA   *See, for example, memos and emails attached hereto as Exhibit 4 and incorporated by reference herein.*

20      After repeatedly being frustrated by Ms W-C and Mr Huber in her attempts to bring STSD into compliance with the IDEA, Ms Houlihan finally turned to STSD Board member Charles Mitchell ("Mr Mitchell")   On February 26, 2004, Ms Houlihan contacted Mr Mitchell directly to express her concerns regarding the issues of IDEA non-compliance occurring at STSD

3

A3

21    While waiting for the Board to act, Ms Houlihan continued to identify instances of noncompliance *See, for example, emails attached hereto as Exhibit 5 and incorporated by reference herein.*

22    Following her phone call to the Board, rather than coordinating with Ms Houlihan to ascertain what steps were needed to assure compliance with the IDEA, Ms W-C and STSD sent Ms Houlihan numerous written reprimands within the very next month *See Letters, attached hereto as Exhibit 6 incorporated by reference herein.*

23    All previous written evaluations in Ms Houlihan's personnel file were quite positive and complimentary, as well as were all evaluations from any previous school districts which had employed Ms Houlihan *See Evaluations, attached hereto as Exhibit 7, and incorporated by reference herein.*

24    The three written reprimands sent to Ms Houlihan in the month of March 2004 were mere pretext for the real reason that Defendants were angry with Ms Houlihan her continued insistence that STSD come into complete compliance with the IDEA

25    On April 6, 2004, Ms Houlihan met with Carol Shreffler (Assistant Superintendent/Personnel Director/Special Education Director), Wayne Dukes (President of Teacher's Union) and Ms W-C At this meeting, Ms Houlihan was informed that the Board had met the day before and voted not to renew Ms Houlihan's contract Thus, on April 6, 2004, Ms Houlihan was effectively terminated

26    Ms Houlihan was terminated because of her efforts to bring STSD into compliance with the IDEA

27    As a direct and proximate consequence of her termination, Ms Houlihan suffered a loss of income and economic benefits and endured emotional distress, mental anguish, humiliation, and harm to her reputation

28    The above described actions of Defendants Ms W-C and Mr Huber were taken in reckless, willful and wanton disregard of Plaintiff's rights

## CAUSES OF ACTION

### COUNT I
(The Rehabilitation Act)

29    The facts alleged above are incorporated by reference

30    By terminating Ms Houlihan because of her efforts to bring STSD into compliance with the IDEA, Defendants failed to meet the individual educational needs of handicapped persons, and discriminated against Ms Houlihan because she opposed such failures, proximately causing her to suffer the damages alleged above

4

A4

## COUNT II
(42 U S C Section 1983-First Amendment Retaliation)

31  The facts alleged above are incorporated by reference

32  By terminating Ms Houlihan because she complained of violations of federal statute and regulations at various public meetings, Defendants violated Ms Houlihan's rights under Section 1983 and the First Amendment of the U S Constitution, proximately causing her to suffer the damages alleged above

## COUNT III
(Wrongful Termination)

33  The facts alleged above are incorporated by reference

34  By terminating Ms Houlihan because she asserted her First Amendment rights, as well as the rights of handicapped individuals under the IDEA, Defendants wrongfully terminated Ms Houlihan in violation of public policy, proximately causing her to suffer the damages alleged above

## PRAYERS FOR RELIEF

As relief for her claims asserted above, Plaintiff prays the following relief

### COMPENSATORY DAMAGES
(As to Defendants Walls-Culotta and Huber)

1  Plaintiff prays for an award of compensatory damages against Defendants Walls-Culotta and Huber, in their individual capacities, jointly and severally

### PUNITIVE DAMAGES
(As to Defendants Walls-Culotta and Huber)

2  Plaintiff prays an award of punitive damages against Defendants Walls-Culotta and Huber, in their individual capacities, jointly and severally

### INJUNCTIVE, DECLARATIVE AND EQUITABLE RELIEF
(As to all Defendants)

3  Plaintiff prays that she be reinstated to her School Psychologist position at STSD, and awarded corollary injunctive relief, including, but not limited to, front pay

4.  Plaintiff prays a declaratory judgment pronouncing Defendants to have violated Plaintiff's rights under the Rehabilitation Act and 42 U S C Section 1983-First Amendment

## ATTORNEY'S FEES AND COSTS
(As to all Defendants)

5 Plaintiff prays an assessment of reasonable attorney's fees and costs against all Defendants

## OTHER RELIEF
(As to all Defendants)

6 Plaintiff prays such other and further relief as the nature of Plaintiff's cause may warrant

/s/
Brian F Dolan
Stumpf, Vickers & Sandy, P A
8 West Market Street
Georgetown, DE 19947


/s/
Robin R Cockey
Cockey, Brennan & Maloney, P C
313 Lemmon Hill Lane
Salisbury, MD 21801

Attorneys for Plaintiff

RRC/Active/Houlihan/pld_Complaint

To: Steve
From: Dottie
Re: Standardized Testing/Eligibility Determination/Child Study Team Mtg
October 22, 2001

1. These are some ideas for your review that I thought might better structure and streamline testing coordination:
   - Assign a counselor to jointly coordinate each of the standardized tests {i.e., Joel for PSAT; Liz for ASVAB, and Tina for DSTP (to assist myself and Steve)}
   - Assign counselors to assist with testing for the entire day of the tests as well as for four hours on the following day.
   - Have the vice-principals hand out and collect materials in an effort to enhance accountability in terms of counts, return of materials, etc.
   - Enlist the Content Specialist's help since they are not assigned a first period.
   - Have the Shared Approach Sp Ed teachers serve as second proctor.
   - Secure Sp Ed/504 Accommodation list from Sp Ed Coordinator to attach to rosters.

2. In follow-up to your question regarding eligibility determination criteria, I found that the regulations were recently changed. The updated regulations are as follows:
   Eligibility Criteria for Learning Disability: In order for an IEP team to determine eligibility for Special Education services under the learning disability category, the following is required:
   - Written documentation for the formative intervention process used with the student. (This refers to regulations related to Referral to Instructional Support Team. Referral to the school's instructional support team is a process whereby teachers enlist the help of a team to assist in the identification of potential instructional strategies or solutions for learning and behavior problems. The instructional support team process may or may not lead to referral for initial evaluation to determine eligibility and possible need for special education services. Documentation of the process should be comprehensive (including baseline and outcome data) and include strategies such as: curriculum based assessment, systematic observation, functional assessment, current health information and analyses of instructional variables. Referrals for an individual child that do not contain all required documentation, including the evidence as described above, may be returned to the instructional support team with a request for the required information. Thus the documentation needs to specifically include a clear statement of the student's presenting problem(s); summary of diagnostic data collected and the sources of that data; and summary of interventions implemented to resolve the presenting problem(s) and the effects of the interventions; and
   - A comprehensive psychological assessment to evaluate the student's reasoning and cognitive processes in order to rule out mental retardation and emotional disturbance, and
   - A severe discrepancy between achievement and intellectual ability in one or more of the following areas: oral expression, listening comprehension, written expression, basic reading skills, reading comprehension, mathematics calculation or



A7

mathematics reasoning, based on correlation tables approved by the Department of Education.

The exclusion clause which stated that ".. evidence of low achievement in language arts (reading, writing, listening, speaking) and/or math. Low achievement is defined as at or below the 5th percentile on norm referenced measures concomitant with daily class measures of performance; .." was eliminated.

There are some alternative tests we may use such as the Wechsler Memory Scale; Peabody Picture Vocabulary Test; Writing Free Perception Test; and the comprehensive battery of the WIAT II

Additionally, in terms of the referral process, it may be helpful to establish again that if a parent calls with questions regarding possible testing, he or she needs to be referred to the psychologist. Also if a staff member believes testing is needed, discuss it with the psychologist before discussing testing with the parent.

A procedure of stamping a "received date" on correspondence sent to the Special Education office would be helpful in maintaining timelines.

3. In considering the functions of the Child Study Team it is important that we make use of our bi-monthly Sp Ed meetings to address Functional Behavior Assessments (initial and updating of); counseling; behavior plans, etc. Also scheduling students on the agenda who continue to struggle academically in spite of the IEP goals and objectives that are in place seems important.

A8

Date: February 4, 2003

To: Steve Huber, Supervisor of Special Education
From: Dorothy Houlihan, Coordinator of Special Education/School Psychologist
Re: Staff Non-Compliance with Federal IDEA Requirements

There is a serious problem concerning insubordination which may have repercussions concerning our compliance with the Federal/State IDEA requirements and which requires your guidance and our action.

As we discussed, Lynn Van Hauter has not been in compliance with regulations concerning the IEP's goals and objectives. Despite training and special meetings to discuss her implementation of the requested corrections, she has not complied. Her insubordination makes her assignments out of compliance with IDEA requirements and could result in legal repercussions in the event of a due process action. Further actions seem warranted to correct this ongoing problem with Mrs Van Hauter

One example of Mrs. Van Hauter's behavior is that she has failed to make corrections on Josh Bonsall's IEP goals and objectives and submit new goals and objectives after four requests. Another example of her insubordination occurred today In order to facilitate her compliance, she was given a set of goals and objectives developed by a group composed of several SPED teachers and me to use as a model I explained again that the goals and objectives examples given to her were developed on the required EDM information I redirected her focus when she began to discuss unrelated issues; and again referred her to the IEP Process booklet provided through DOE and the AMES manual for verification She objected to completing her assignment vociferously. She was unprofessional in behavior (e.g. stated she did not like the conversation and indicated she would not comply with my requests for the goals and objectives ) She turned her back and left



What further action is required to rectify this situation using the Policies and Procedures of the School and district? Your expertise and direction would be greatly appreciated.

Thank you

DLH dh


PLAINTIFF'S EXHIBIT

A9

Dorothy Houlihan - procedures                                        Page 1

From:    Dorothy Houlihan
To:      Walls-Culotta, Sandy
Date:    1/12/04 1:40PM
Subject: procedures

Sandy in follow-up to your request that I notify you of any noted procedural errors rather than notify Carol, I have noted as I reported on Friday 1-9 the iep team was dismissed prior to IEP completion and a 10-day waiver was used to correct the ommision of IEP development being included on the mtg invitation rather than parent initials on original invitation indicating approval to develop IEP at that mtg
In looking at the January calendar the EDM's scheduled for 1-14 and 1-23 should be IEP's, not EDM's. I explained this before and requested IEP's rather than EDM's but it was disregarded
Also 'permission to test' forms are being mailed out indicating informal assessment w/o it being addressed by the IEP team. How would you like these situations to be handled? Thanks Dothe

Many of the invitations to EDM/IEP thruy out the year have not indicate d# the purposes of the mtg. Usually only assessment review is checked. upon notifying Sandy of need to check all purposes of mtg, she refuted what I was saying. I also made suggestions on possible changes on form to address "will do IEP" if qualifies". Recently, I noticed changes have been made to the form to reflect my suggestion even though no one notified me of the change



A10

Dorothy Houlihan - EDM
Page 11

From: Dorothy Houlihan
To: Walls-Cubitta, Sandy
Date: 1/15/04 3 26PM
Subject: EDM

Sandy also the EDM on 1/14 should not have been an EDM Sandy this is very awkward for me since I feel like a tattle-tale I think we need to revisit our plan if that's OK w/ you Dotte

A11

To:     Dottie Houlihan

Date:   January 20, 2004

From:   Sandy Walls-Culotta

c:      Steve Huber
        Carol Schreffler
        Carol Terry
        Wayne Dukes

RE.     Meeting concerning reevaluation discussion

Dottie,
Thank you for the copies that you gave me, I had hoped that you would stop and see me so that we could discuss it instead of putting it in my mailbox. After reviewing the materials you gave me you still have not provided anything that states an IEP meeting must be held to review what data needs to be collected. The sentence that you had highlighted, p 109, does not say a meeting is required, just that all technical and procedural safeguards in law and regulation must be followed. When reviewing the section from the law and state regulations on evaluation and reevaluation it specifically states a meeting is not required, that it can be conducted through contacting the team members. Because of your concern we also contacted Jennifer Brierley, district's special education attorney, to ask her opinion. She told us that a meeting is not required

As I stated in our meeting on January 15, I appreciate your concern. For future concerns, Steve and I will investigate your concerns and then make a decision based on the law and state procedures. Steve and I are the ones responsible for the final decisions made concerning procedures.

Please see me if you have additional questions concerning this situation.



A12

To: Dottie Houlihan

Date: January 20, 2004

From: Sandy Walls-Culotta

RE: Concerns about IEP procedures

c: Carol Terry
   Steve Huber
   Carol Schreffler
   Wayne Dukes

Dottie:

This is a follow-up to your concerns about identifying the data needed for a reevaluation in the IEP meeting prior to the reevaluation. After reviewing the policy handbook (Federal Law and state procedures) and a meeting with Steve and Carol to discuss this, IEP teams will discuss the data needed for the reevaluation meeting at the prior IEP meeting.

You had a concern about the review of progress (accountability) during an IEP meeting. This is being addressed through training as the process is changing with the Transition IEP format. Carol has set up training for all special education staff for additional training in those areas. I know one was held last week, if you weren't able to attend please see Carol for the information.

If you have any additional questions or concerns please see me.

A13

APR-19-2004 MON 01:17 PM                    FAX NO.                        P. 12/24

Dorothy Houlihan - Re test-perm                                             Page 1

From:     Dorothy Houlihan
To:       Huber, Steve
Date:     2/23/04 2:40PM
Subject:  Re test-perm

Steve - Did you specify w/ them the exact procedures and could you please send me the specific procedures. It was my understanding from Sharon she was not aware of the procedures and since the letter is just being sent out that in itself is inconsistent with the procedures you sent me as I understand them. I am testing right now and thus can not really go in much detail but the procedure from the procedures manual as I understand them are different from the past and also that I'm doing both ed and psychological testing changes the previous procedure. I would like to schedule for all of us to meet and firm up the process. For right now, do you me to sign the letter as it is w/o reviewing it. Let me know and I'll do as you say   thanks Dottie

>>> Steve Huber 02/23/04 01:29PM >>>
Dottie,
Carol and Sharon are aware of the procedures I outline to you in my e-mail from 2/20/04. Please sign the permission form I placed in your mailbox for Eric Beyer and return to Sharon so that we can get it mailed Thanks,
sw/h

>>> Dorothy Houlihan 2/23/2004 12:01:00 PM >>>
Sharon - I did not sign the permission to test form because I am unclear what my responsibilities are re. obtaining permission to test. To date, the areas to be tested were automatically checked on the computer and the form given to me for signature. Since the form is going out under my signature I would like some clarification from my superiors as to the procedure they want. Hopefully we can get that addressed quickly  thanks for your patience, efforts and the good job you always do. It is a pleasure to work with you  Dottie

A14

Apr 19 04 03:31p                                                                    p.23

Dorothy Houlihan - EDM's                                                              Page 1

From:     Dorothy Houlihan
To:       Bennington, Sharon
Date:     2/27/04 10:51AM
Subject:  EDM's

Good grief, Sharon - I just looked at the revised March IEP calendar and there are 12 EDM's scheduled for March and I only have consents for 2 of the students. One is the EDM on the 25th and that student's assessment has already been completed. I'm concerned that it will be very difficult to not have to continue w/ re-scheduling meetings if we don't get the paperwork. At least after I notified Sandy this past December that we need to address re-evaluation needs at the IEP mtg the year prior to tri-ennial due date, I think the teachers are doing so. Hopefully then you won't continue to have this problem of obtaining consents at the last moment. Hang in there- I know you have been very frustrated w/ unclear procedures but hopefully we can slowly get them in place. I think Steve has made some in-roads in working w/ you on them this week. As I have always told you, I think you are doing an excellent job and I hated seeing you so distressed yesterday because of being unclear about what procedures to follow. I think it is going to get more defined and you will know exactly what procedure to follow. As alwyas let me know if there is any way I can be of help. Chow Dottie



A15

| Dorothy Houlihan - response to request to meet and clarify procedures | Page 1 |

**From:** Dorothy Houlihan
**To:** Huber, Steve
**Date:** 3/2/04 10 25AM
**Subject:** response to request to meet and clarify procedures

Hi Steve - Sharon informed me this morning that you had answered procedural questions from her related to my job responsibilities, however, she did not feel comfortable sharing them with me without your consent. I would like to request again that you, Sharon, Carol Terry and myself meet to decide on the procedures in question w/in the SPED department and to receive answers to the procedural questions I recently e-mailed to you. I understand that you have been intensely working with Sharon and Carol Terry recently to address these procedures, however I have not been asked to be involved and thus am not aware of actions being taken and/or clarification of procedures being issued. I know your schedule is always extremely busy and think including me would save time so questions can be addressed with all of us at one time; with all of us hearing the same thing; and all of us hearing each others' input. I believe in order to perform my job duties following the procedures you have put in place, it is important for me to be provided with that information and to be involved as part of the team of you, Sharon Bennington, Carol Terry and myself in addressing procedures. Thank you for your consideration of my request and as always I am glad to perform my job following your directives. If you think there is a better approach I am glad to do as you think is best. Dottie

Dorothy Houlihan - Re DVR
Page 1

**From:** Dorothy Houlihan
**To:** Huber, Steve, Terry, Carol, Walls-Culotta, Sandy
**Date:** 3/12/04 1 41PM
**Subject:** Re DVR

Sandy - My first year here in the district I attended a school psych conference where Tom Pledgie did a presentation As I understood it, he said that procedure was changed and the schools were to provide evaluations only for cognitively limited students. Dottie

>>> Sandy Walls-Culotta 03/12/04 07 32AM >>>
Dottie - This was institued approximately 10 years ago to assist in the transitioning of students from high school to DVR services. It is applicable to all disability categories that require psychologicals for determination It would not be required of the physical disability categories

>>> Dorothy Houlihan 3/12/2004 7 28 33 AM >>>
Carol- Did you check w/ DOE to ask if the school system is required to provide that evaluation and, if so, for which disability categories? Dottie

>>> Carol Terry 03/11/04 01 59PM >>>
I spoke with Jeanne from DVR this morning in reference to whether they required a psychological less then three years old. She said yes and they will be sending me a copy of their requirements in writing.

A17



## Sussex Technical High School
A United States Department of Education National School of Excellence

Sandra L. Walls-Culotta, M Ed  Principal

Alan F Lothbury Jr M Ed
Assistant Principal

Steven W F Huber M Ed
Assistant Principal

Lon J Snyder
Assistant Principal

March 8, 2004

Ms Dorothy Houlihan
School Psychologist
Sussex Technical High School
Georgetown, DE 19947

Dear Ms. Houlihan:

This letter is to address concerns I have regarding your unprofessional and negative behavior during our meeting on February 9, 2004. This was a fact finding meeting concerning your unproductive and negative interactions with other staff during an EDM meeting on February 5, 2004.

You expressed a concern as to why it was recommended that you have an STEA representative at the meeting and why it was necessary to be at this level. As I pointed out to you in the meeting, the reason you have the right to a representative is due to the fact that the outcome of the meeting could adversely affect the continuation of your position (Article X, Section D of the employment contract) and I wanted to make sure you were protected. The complaint I was investigating was directly related to your recommended areas of growth, developing cooperative working relationships with staff, in the performance appraisal dated 8/5/03

You requested that the meeting be taped which I had agreed to as long a copy of the tape was given to me This was stated at the beginning of the meeting. At the end of the meeting you requested the tape and stated that I could not have a copy of it I repeated to you that I had stated in the beginning of the meeting I would only agree to tape the meeting as long as I received a copy of the tape You indicated that things could be changed on the tape if I made a copy This accusation that I would change things on the tape indicates to me that you do not trust me or the staff You insinuated that we would carry out illegal acts. The decision on your part to refuse to let me have a copy of the tape demonstrates your inability to be cooperative and to work towards a positive working relationship

During the February 9th meeting your verbal interactions were hostile and negative. You could not or would not focus on the purpose of the meeting and provide answers to my questions. Your remarks were degrading and unprofessional about staff and me. As I pointed out several times, we were there to discuss what was said and what behaviors occurred during the EDM meeting on February 5, 2004, concerning your interactions with staff especially Wendy McKeever. During the interview process when I specifically reviewed what was said, you would not stay on the topic, but would focus on what was being done wrong in your opinion by the staff and how the staff is "untrained". You stated that

PO BOX 351 • GEORGETOWN • DE • 19947 • 302-856-0961 • FAX 302 856-1760 • www.sussexvt.k12.de

PLAINTIFF'S
EXHIBIT

A18

Ms. Dorothy Houlihan
2
March 8, 2004

Wendy McKeever, the student's case manager, is not trained in the process, even though I stated that she has a Masters of Education in Special Education, has 20 years of teaching experience, and has been with our district for the past two and a half years. I stated in the meeting that there are proper ways to discuss how things should be done during a meeting so that the meeting is conducted in a non-confrontational manner.

You also stated that I told you previously to gather information on Shelly Billings and Alice Godwin-Smith so I could write up them up in order to be dismissed. This is not true. This statement is similar to another statement you had made during a conversation again on how Sussex Tech staff is untrained. During that conversation you told me that the former school psychologist told you that I was trying to get rid of him and that former staff members are glad not to work here. These types of statements cannot support a cooperative working relationship with administration, staff and your colleagues.

Making these statements indicates that you are not attempting to establish a positive and cooperative relationship. If fact these statements are destructive and illustrate your refusal to work cooperatively with other teachers and administrators to benefit our students. You continue to use falsehoods that provide hostile working environment, when we should be discussing how we can work more cooperatively together and what is working with in the program.

In addition to your remarks that the staff and I are incompetent to implement IDEA, you also stated that our procedures do not meet federal law requirements. As I stated in the meeting, these procedures have been developed from technical assistance with Delaware's Department of Education and that as a single school in the district our compliance with federal and state law is audited. To this you replied that we aren't following federal law, federal law overrides what the state says. If you constantly belittle the staff and indicate that they are not knowledgeable or trained enough in your eyes to carry out the tasks, it is impossible to develop a cooperative working relationship.

We have tried repeatedly to address your concerns over the law and we've even contacted our district attorney when issues have arisen. Please know that the Sussex Technical School District has never been reversed on an appeal made by a parent concerning a student's IEP or procedures that is used at Sussex Technical School District. In addition since Sussex Technical High School is the only school in the district it has been reviewed annually by the State of Delaware and has been found to be compliant with federal and state statutes.

Part of your lack of adjustment to our system seems to stem from your experiences in a county-wide system in another state. You have repeatedly pointed out how things were done in your previous job. Since the Delaware school system is composed of individual districts, Sussex Technical School District cannot and is under no obligation to conduct business as a county system.

It is critical that you must act in a professional manner and develop cooperative working relationships with staff. Unprofessional behavior as indicated is grounds for non-renewal of your contract.

A19