IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DOROTHY HOULIHAN | * | |
| Plaintiff | * | |
| v. | | Civil Action No.:05-00194 JJF |
| | * | |
| SUSSEX TECHNICAL SCHOOL DISTRICT | | TRIAL BY JURY OF TWELVE |
| | * | |
| SUSSEX TECHNICAL SCHOOL DISTRICT | | DEMANDED |
| BOARD OF EDUCATION | * | |
| | | |
| SANDRA WALLS-CULOTTA | * | |
| Individually, and in her official capacity | | |
| | * | |
| STEVEN HUBER | | |
| Individually, and in his official capacity | * | |
| | | |
| Defendants | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**PLAINTIFF'S ANSWERING BRIEF IN SUPPORT OF HER OPPOSITION TO
THE RENEWED MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR, IN
THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT**

Brian F. Dolan
Stumpf, Vickers & Sandy, P.A.
8 West Market Street
Georgetown, DE 19947

Robin R. Cockey
Cockey Brennan & Maloney P.C.
313 Lemmon Hill Lane
Salisbury, MD  21801

Attorneys for Plaintiff

Date: September 15, 2006

## TABLE OF CONTENTS

**Page**

1. STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS…………………………….................................................1

2. SUMMARY OF ARGUMENT……...............……………………………………………………2

3. STATEMENT OF FACTS……………...............……………………………………………………...3

4. ARGUMENT……...……………………………………………………………….....4

    I.    STANDARD FOR MOTION TO DISMISS……………………….............................…………………………..………5

    II.    THE INTERPLAY BETWEEN THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT, THE AMERICANS WITH DISABILITIES ACT, AND THE REHABILITATION ACT……...............………………………………………….………………6

    III.    ANALYSIS OF A RETALIATION CLAIM UNDER THE REHABILITATION ACT……..........................................................…………………7

        A.    PLAINTIFF'S COMPLAINTS OF NONCOMPLIANCE WITH THE IDEA CONSTITUTED PROTECTED ACTIVITY………………….......8

        B.    DEFENDANTS KNEW OF, AND OFTEN CHASTISED PLAINTIFF FOR HER PROTECTED ACTIVITY…………………......……………11

        C.    PLAINTIFF SUFFERED ADVERSE RETALIATORY ACTIONS AT THE HANDS OF DEFENDANTS, INCLUDING TERMINATION......14

        D.    DEFENDANTS' EXPRESS COMMENTS AND TIMING OF PLAINTIFF'S TERMINATION ESTABLISH THE CAUSAL CONNECTION BETWEEN THE RETALIATORY ACTIONS AND PLAINTIFF'S PROTECTED ACTIVITY…..................………………..16

    IV.    FIRST AMENDMENT RETALIATION……………………………...................………………18

        A.    PLAINTIFF'S COMPLAINTS OF IDEA NONCOMPLIANCE QUALIFY AS CONSTITUTIONALLY PROTECTED ACTIVITY REGARDING A MATTER OF PUBLIC CONCERN………………….19

B.    DEFENDANTS' INTEREST IN WORKPLACE EFFICIENCY IS
OUTWEIGHED BY PLAINTIFF'S FREE SPEECH INTEREST IN
OPPOSING STSD'S  NONCOMPLIANCE WITH FEDERAL
STATUTE……………...........................................……………………….20

C.    PLAINTIFF'S COMPLAINTS OF NONCOMPLIANCE WERE A
SUBSTANTIAL MOTIVATING FACTOR IN DEFENDANTS'
DECISION TO TERMINATE PLAINTIFF………………........………..21

V.    WRONGFUL
TERMINATION………………...........…………………………………...21

VI.    DEFENDANT
HUBER……………………….............…………………………………21

VII.    PLAINTIFF'S OPPOSITION TO DEFENDANTS' ALTERNATIVE MOTION
FOR A MORE DEFINITE STATEMENT…………………….....................22

5.    CONCLUSION……......…………………………………………………………23

Exhibit                                                                                    Exhibit #

Sweet v. Tigard-Tualatin School District,
2005 WL 19531 (9th Cir. 2005)………...........…………………………………………………A

TABLE OF AUTHORITIES

CASES

Amon v. Cort Furniture Rental Corporation,
85 F.3d 1074, 1085 (3d Cir. 1996)………………………………………………………...8

Azzaro v. County of Allegheny, 110 F.3d 968, 977-78 (3d Cir. 1997)........................................20

Baldassare v. New Jersey, 250 F.3d 188, 194-195 (3d Cir. 2001)………………………………18

Board of Education v. Rowley, 458 U.S. 176, 205-206 (1982)…………………………………10

Board of Trustees of University of Alabama v. Garrett,
531 U.S. 356 (2001)……………………………………………………………………………6

Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004)……………………………………………5

C.M. v. Board of Education of the Union County
Regional High School Dist., 2005 WL 899927 (3d Cir.)…………………………………………9

Conley v. Gibson, 355 U.S. 41, 47-48 (1957)……………………………………………………5

Connick v. Myers, 461 U.S. 138, 146 (1983)………………………………………..………19, 20

DuFrayne v. FTD Mortgage Servs., Inc. "In Re DuFrayne",
194 B.R. 354, 361 (Bankr. E.D. Pa. 1996)……………………………………………………..5

E.I. DuPont de Nemours and Company v. Pressman,
679 A.2d 436 (De. 1996)……………………………………………………………………...21

Garcetti v. Ceballos, 126 S.Ct. 1951 (2006)........................................................................1, 18, 19

Gorski v. New Hampshire Department of Corrections,
290 F.3d 466, 469-470 (1st Cir. 2002)………………………………………….………6

Hailey v. City of Camden, 2006 WL 1875402 (D.N.J.)........................................................18

Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)………………………6

Kodrea v. City of Kokomo, Indiana, 2006 WL 1750071 (S.D. Ind.)...........................................18

Letterman v. Tarrant County Narcotics
Intelligence & Coordination Unit, 507 U.S. 163 (1993)……………………………………………5

Perry v. Cindermann, 408 US 593 (1972)......................................................................................19

P.N. and G.N. v. Greco, 282 F.Supp.2d 221 (D.N.J. 2003)………………………………………8

Ray v. Henderson, 217 F.3d 1234 n.3 (9th Cir. 2000)…………………………………………..9

Robinson v. SEPTA, 982 F.2d 892 (3d Cir. 1993)………………………………………………17

Sarno v. Douglas-Elliman Gibbons & Ives, Inc.,
183 F.3d 155 (2d Cir. 1999)………………………………………………………………………8

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)……………………………………………………6

Schuster v. DeRocili, 775 A.2d 393 (Del. 2000)………………………………………………...22

Shearin v. E.F. Hutton Group, Inc., 652 A.2d 578, 587-589 (Del.Ch. 1994)……………………22

Shellenberger v. Summit Bancorp, Inc.,
318 F.3d 183, 189 (3d Cir. 2003)………………………………………………………………...17

Shore Regional High School Board of Education v. P.S.,
381 F.3d 194, 198 (3d Cir. 2004)…………………………………………………………………6

Sweet v. Tigard-Tualatin School District,
2005 WL 19531 (9th Cir. 2005)........……………………………………………………..9, 15, 20

Swierkiewicz v. Sorema NA, 534 U.S. 506 (2002)………………………………………………6

Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,
140 F.3d 478, 483 (3d Cir. 1998)…………………………………………………………………5

Warren G. v. Cumberland County School District,
190 F.3d 80 (3d Cir. 1999)………………………………………………………………………10

Weixel v. Board of Education of City of New York,
287 F.3d 138 (2d Cir. 2002)………………………………………………………………………7

## STATUTES

20 U.S.C. §§ 1400, et seq………………………………………………………………………4

20 U.S.C. § 1412(1)…………………………...……………………………………………...6

20 U.S.C. §1414(d)………………………………………………………………………………10

20 U.S.C. §1415(b)(1)………..……………………………………………………….10

20 U.S.C. §1415(b)(3)………..……………………………………………………….10

20 U.S.C. § 1414(d)(1)(B)………………………………………………………….10

20 U.S.C. § 1414(d)(1)(f)……………………………………..……………………….10

29 U.S.C. § 794(b)(2)(B)………..…………………………………………………...7

29 U.S.C. § 794(d)…………………..……………………………………….1, 4, 7

34 C.F.R. § 104.33(b)(1)(i)……………………………………………….……….7

34 C.F. R. § 104.33(b)(2)…………………………………...…………...…….7

34 CFR Parts 300……………………………………………………...……..21

34 C.F.R. §§ 300.340-300.350……………………………………………….…..10

34 C.F.R. §300.344………………………………………………..…………..10

34 C.F.R. § 300.345(a)…………………………………………………..…..……10

34 C.F.R. § 300.501…………………………………………………………..10

34 CFR Parts 303…………………………………………………………..…..21

42 U.S.C. § 1983……………………..………………………………………….1, 4

42 U.S.C. § 12203(a)……………………………………………………………..7

Del. Code Ann. Title 14, 3120…………………...…………………………………...…21

## OTHER AUTHORITIES

Fed. Rule Civ. Pro. 8(a)………………………………………………………………...5

**STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS**

Plaintiff filed a Complaint in the United States District Court for the District of Delaware on April 4, 2005. The Complaint asserts claims for violation of the Rehabilitation Act, 29 U.S.C. § 794(d), violation of First Amendment Rights under 42 U.S.C. § 1983, and wrongful termination. Plaintiff has brought these claims against her former employer and certain supervisors in their individual and official capacities. Plaintiff contends Defendants terminated her for her attempts to bring Sussex Technical School District into compliance with the Individuals with Disabilities Education Act.

The Complaint was served upon the Defendants and, by agreement of the parties, the time for filing a responsive pleading was extended until June 6, 2005. The Defendants filed a Motion to Dismiss for Failure to State a Claim or, in the Alternative, Motion for a More Definite Statement, to which the Plaintiff responded. Before the Court ruled on Defendants' Motion to Dismiss, the Defendants filed a Motion for a Stay pending a decision by the United States Supreme Court in Garcetti v. Ceballos, 361 F.3d 1168 (9th Cir. 2004), *cert granted* 125 S.Ct. 1395 (2005). On February 9, 2006, this Court denied Defendants' Motion, with leave to renew. On that same date, this Court granted the Motion for Stay pending the outcome to the Garcetti case. The Supreme Court has now issued its decision in Garcetti, 125 S.Ct. 1951 (2006), and Defendants have filed a Renewed Motion to Dismiss for Failure to State a Claim or, in the alternative, Motion for a More Definite Statement.

This is the Plaintiff's Answering Brief in support of her opposition to Defendants' Renewed Motion to Dismiss for Failure to State a Claim or, in the alternative, Motion for a More Definite Statement.

## SUMMARY OF ARGUMENT

1.     Plaintiff's Complaint sufficiently states a claim under the Rehabilitation Act ("RA") by establishing that the Plaintiff in good faith and with a reasonable belief reported both actual and potential violations of the Individuals with Disabilities Education Act ("IDEA"), and, as a consequence and in retaliation therefor, the Defendants together acted to terminate Plaintiff.

2.     Plaintiff's Complaint sufficiently states a claim for First Amendment retaliation by establishing that Plaintiff, in her capacity as a citizen regarding a matter of public concern, repeatedly reported specific incidents of noncompliance with the IDEA, and, as a consequence of and in retaliation for such speech, Defendants together acted to terminate Plaintiff.  Moreover, Plaintiff's Complaint establishes that her manner of reporting was delivered in a professionally appropriate manner, in meetings specifically designated to discuss such issues, or in written correspondence via e-mail or internal office memorandum.

3.     By adequately establishing retaliation claims in violation of the RA and the First Amendment, Plaintiff thereby also adequately establishes the elements of a claim for wrongful termination in violation of the public policies underlying the RA and the First Amendment.

## STATEMENT OF FACTS

For purposes of this Answering Brief to the Defendants' Renewed Motion to Dismiss, the facts are as stated in the Complaint and its attached Exhibits.  At this stage in the proceedings, Plaintiff may rely upon all such well-pleaded facts, and any inferences therefrom must be drawn in the light most favorable to Plaintiff.

## ARGUMENT

Plaintiff Dorothy Houlihan ("Plaintiff") worked as a school psychologist for Sussex Technical School District ("STSD") from October 2001 through April 2004 (Complaint, §§ 8, 25). In her position as school psychologist, Plaintiff was subordinate to the Sussex Technical School District Board of Education (the "Board"), Sandra Walls-Culotta ("Ms. Walls-Culotta"), and Steven Huber ("Mr. Huber") (Complaint, §§ 8, 12, 20). In April 2004, Plaintiff was terminated, through the joint efforts of the Defendants, in retaliation for her efforts to bring STSD into compliance with the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, et seq. (Complaint, §§ 22-26).

Plaintiff has several claims against the Defendants, one of which is a claim that Defendants violated the Rehabilitation Act ("RA"), 29 U.S.C. § 794(d). See Complaint, Count I. The RA claim derives from Plaintiff's good faith, reasonable attempts to bring to light specific and repeated incidents of _actual_ noncompliance with the IDEA (Complaint, §§ 11, 19, 21). Defendants were resistant to Plaintiff's efforts to bring STSD into compliance and labeled her as unfocused, uncooperative, and demanding (Complaint §§ 13, 15, 17). Instead of correcting the IDEA violations, Defendants vehemently criticized Plaintiff and ultimately terminated her (Complaint, §§ 22, 23, 25).

In terminating Plaintiff in this manner, and for such reasons, Defendants have violated not only the RA, but also 42 U.S.C. § 1983 by retaliating against her in violation of her First Amendment rights. See Complaint, Count II. Moreover, Defendants wrongfully terminated Plaintiff in direct violation of the strong public policies underlying the RA, IDEA and the First Amendment. See Complaint, Count III. Plaintiff's Complaint alleges such violations with more than adequate specificity, which allegations are further substantiated by the exhibits attached to

and incorporated in the Complaint.  See Complaint, Exhibits 1-7.  Plaintiff's claims must be

allowed to stand as they are, and the Plaintiff must be given her opportunity to have her day in

court so as to demand accountability and reparations for the wrongs which have been committed

against her by Defendants.

## I.    STANDARD FOR MOTION TO DISMISS

In reviewing a Motion to Dismiss, the Court must accept the facts in a well-pleaded

Complaint as true.  Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004).  Moreover, the Court

must view the allegations "in a light most favorable" to the non-moving party to determine, if

proven, whether they form a basis for possible relief.  Id.  A complaint should be dismissed if,

after accepting as true all of the facts alleged in the Complaint, and drawing all reasonable

inferences in the Plaintiff's favor, no relief could be granted under any set of facts consistent

with the allegations of the Complaint.  Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts,

Inc., 140 F.3d 478, 483 (3d Cir. 1998).  "Granting a motion to dismiss is a 'disfavored'

practice…."  DuFrayne v. FTD Mortgage Servs., Inc. "In Re DuFrayne", 194 B.R. 354, 361

(Bankr. E.D. Pa. 1996).

The fundamental principle of pleading in the Federal System is that the Plaintiff need

only provide a short and plain statement of her claim.  Fed. Rule Civ. Pro. 8(a).  The Supreme

Court has rejected fact pleading requirements, heightened pleading standards, and immediate

dismissal of cases in which recovery by the Plaintiff seems remote or deviates from the principle

of notice pleading that is the animating spirit of the Federal pleading rules.  See, e.g., Letterman

v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993) (rejecting a

heightened pleading standard in cases alleging municipal liability under 42 U.S.C. §1983);

Conley v. Gibson, 355 U.S. 41, 47-48 (1957) (holding that the rules "do not require a claimant to

set out in detail the facts upon which he bases his claim.")  See also <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974) ("when a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a Plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.  Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."). See also <u>Swierkiewicz v. Sorema NA</u>, 534 U.S. 506 (2002); <u>Gorski v. New Hampshire Department of Corrections</u>, 290 F.3d 466, 469-470 (1st Cir. 2002).  The moving party has the burden of persuasion. <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406, 1409 (3d Cir. 1991).

## II.  THE INTERPLAY BETWEEN THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT, THE AMERICANS WITH DISABILITIES ACT AND THE REHABILITATION ACT

To understand the interplay between the above identified Acts, it is useful to first have a general knowledge of the purpose of each such Act.  The Americans with Disabilities Act ("ADA") prohibits discrimination against individuals deemed to have a "disability" as defined by that Act.  <u>Board of Trustees of University of Alabama v. Garrett</u>, 531 U.S. 356 (2001).  The Individuals with Disabilities Education Act ("IDEA") conditions federal education funding on an individual state's conformity with the federally-endorsed policy to provide "free appropriate public education" for all disabled children.  <u>Shore Regional High School Board of Education v. P.S.</u>, 381 F.3d 194, 198 (3d Cir. 2004) citing 20 U.S.C. § 1412(1).   The Rehabilitation Act (RA) makes it unlawful for programs receiving federal assistance to discriminate on the basis of disability.[1]  In relevant part, Section 504 of the RA specifically prohibits disability

---

[1] Hence, by its nature, the RA encompasses and aligns itself with both the IDEA and ADA.

discrimination in "a local educational agency…or other school system." 29 U.S.C. §

794(b)(2)(B).

Section 504(d) of the RA adopts the anti-retaliation provision of the ADA.  See 29 U.S.C.

§ 794(d); 42 U.S.C. § 12203(a)(prohibiting discrimination against any individual "because such

individual has an opposed any act or practice made unlawful by this Act".  A regulation issued

pursuant to Section 504 provides that the failure to "meet individual educational needs of

handicapped persons" is a violation of the RA.  34 C.F.R. § 104.33(b)(1)(i).  The regulation also

explains that "[i]mplementation of an Individualized Education Program [IEP] developed in

accordance with the [IDEA] is one means of meeting the standard established in paragraph

(b)(1)(i) of this section".  34 C.F. R. § 104.33(b)(2).

Thus, federal law and federal regulations make it quite clear that the failure to properly

implement a legally sufficient IEP is deemed a failure to meet the individual educational needs

of a handicapped person, and is therefore a practice made unlawful by the RA.  Because it is a

violation of the RA to discriminate against an individual because that individual opposed a

practice made unlawful by the RA, it was a violation of the RA when Defendants discriminated

against and terminated Plaintiff as a result of her good faith, reasonable complaints regarding the

improper completion and implementation of student IEPs.

## III.    ANALYSIS OF A RETALIATION CLAIM UNDER THE REHABILITATION ACT

To establish a retaliation claim under Section 504 of the RA, the claimant must establish

that (1) plaintiff was engaged in protected activity; (2) the alleged retaliator knew that plaintiff

was involved in protected activity; (3) an adverse decision or course of action was taken against

plaintiff; and (4) a causal connection exists between the protected activity and the adverse action.

Weixel v. Board of Education of City of New York, 287 F.3d 138 (2d Cir. 2002).  Plaintiff's

Complaint more than adequately pleads the existence of these four elements, clearly establishing a cognizable retaliation claim under the RA.[2]

**A.** **Plaintiff's Complaints of Noncompliance with the IDEA Constituted Protected Activity.**

First, Plaintiff does allege that she was engaged in a protected activity, in that she repeatedly reported to Defendants potential and actual violations of the IDEA.  (Complaint, ¶¶ 9, 11, 13, 14, 19, 20, 21).   As the Exhibits to the Complaint further demonstrate, Plaintiff actively advocated on behalf of the students who required an IEP (all of whom were students who suffered a disability as defined under the IDEA).  Advocacy on behalf of a student with a disability is a protected activity for the purposes of § 504 of the RA.  P.N. and G.N. v. Greco, 282 F.Supp.2d 221 (D.N.J. 2003).

As Defendants' Opening Brief correctly advises, retaliation claims pursuant to Title VII, ADA and RA are analyzed under the same framework (Opening Brief, at 9).  Accordingly, it is important to note that, with regard to participation in a protected activity under the ADA (and therefore, also under Title VII and the RA), a "plaintiff need not establish that the conduct [she] opposed was actually a violation of the statute so long as [she] can establish that [she] possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated that law."  Sarno v. Douglas-Elliman Gibbons & Ives, Inc., 183 F.3d 155 (2d Cir. 1999).  See also Amon v. Cort Furniture Rental Corporation, 85 F.3d 1074, 1085 (3d Cir. 1996)(" A plaintiff need not prove the merits of the underlying discrimination complaint, but only that [she] was acting under a good faith, reasonable belief that a violation existed").

---

[2] In the Opening Brief, Defendants imply that Plaintiff does not have standing under the RA.  However, in reading Defendants' argument in combination with their cited cases, it is clear that Defendants confuse the issues. Defendants state that "plaintiffs do not have standing in situations where they merely allege generalized grievances, unrelated to specific individuals" (Opening Brief, at 9).  Plaintiff most certainly does have standing under the RA, however, as she has asserted an extremely specific grievance (termination) which is related to an extremely specific individual (Plaintiff).  It appears that Defendants, as they have done repeatedly in the Opening Brief, have collapsed the IDEA and the RA into one misconstrued cause of action.

Here, Plaintiff opposed and complained of conduct which she in good faith and with reasonable belief thought was in violation of and in noncompliance with specific IEP requirements of the IDEA. Although Defendants repeatedly fault Plaintiff for failure to expressly cite a section of the IDEA that had been violated (Opening Brief, at 4, 13, 17-22, 33), it is not necessary in a case under the RA for Plaintiff to definitively prove the violations of the underlying statute from which her complaints were derived.[3] Inexplicably, Defendants themselves recognize this principle in the Opening Brief: "An employee *need not prove the merits of the underlying complaint of discrimination*, but only that she acted with a good faith, reasonable belief that a violation of the applicable law existed" (Opening Brief, at 10)(emphasis added). Despite their accurate summary of the law, Defendants then proceed to argue the merit of each of Plaintiff's underlying complaints of IDEA noncompliance. The crux of the issue is whether Plaintiff had a good faith, reasonable belief motivating her complaints of noncompliance; it is absolutely unnecessary for Plaintiff to argue the merits of each and every one of her underlying complaints of IDEA noncompliance.

While it does not appear that the Third Circuit has addressed facts similar to those of the instant case, the Ninth Circuit has in fact addressed such a scenario. In <u>Sweet v. Tigard-Tualatin School District</u>, 2005 WL 19531, at *2 (9th Cir. 2005), the Ninth Circuit ruled that a school psychologist's reports of potential violations of the IDEA fell "within the ambit of activity protected from retaliation under § 504(d)." Furthermore, "[A]n employee's complaints about the treatment of others is considered a protected activity." <u>Ray v. Henderson</u>, 217 F.3d 1234 n.3 (9th Cir. 2000).

---

[3] Much of Defendants' Opening Brief relies on the case of <u>C.M. v. Board of Education of the Union County Regional High School Dist.</u>, 2005 WL 899927 (3d Cir.)(attached as Exhibit A to the Opening Brief), which the Court should note is a non-precedential case brought by parents, individually and on behalf of their minor child, for alleged privacy and IDEA violations. <u>C.M.</u> does not involve a retaliation claim under the RA. Defendants' repeated citation to <u>C.M.</u> further demonstrates their misunderstanding of the instant interplay between the RA and the IDEA.

Moreover, Plaintiff's complaints of IDEA violations were in good faith and with a reasonable belief because they were in fact absolutely valid.  For example, many of Plaintiff's complaints focused on the failure of STSD to involve parents in the IEP process (often occurring in the form of failure to notify parents of meetings, etc.) (Complaint, Exhibits 1 and 3).  The IDEA centers around the concept of an IEP, an individualized education plan which is a written program statement for each child with a disability, including, among other things, a child's placement.  20 U.S.C. §1414(d)[4]; 34 C.F.R. §§ 300.340-300.350.  IDEA establishes comprehensive procedures for preparing and changing an IEP.  Any change to an IEP must be made at a *duly noticed* IEP meeting attended by the parents of the disabled child and a representative of the board of education.  20 U.S.C. § 1414(d)(1)(B)&(f) and §1415(b)(1)&(3); 34 C.F.R. §§300.344, 300.345(a).   Here, Plaintiff's concerns derived directly from IDEA and its regulations, which further mandate that each public agency shall ensure that the parents of each child with a disability are members of any group that makes decisions on the education placement of their child.  34 C.F.R. § 300.501. School districts are required to treat parents as active and full members of the team developing a child's IEP, and cannot circumvent the process.  Warren G. v. Cumberland County School District, 190 F.3d 80 (3d. Cir. 1999).

Defendants further criticize Plaintiff that her complaints were of mere procedural errors (Opening Brief, at 16-17, 19-20).  However, the United States Supreme Court has made it clear that the procedural rights provided by the IDEA, including parents' right to participation in decisions relating to their children's education, are as important as substantive rights.  Board of Education v. Rowley, 458 U.S. 176, 205-206 (1982). Actions which violate procedure cannot be

---

[4] The IDEA was significantly amended in 2004, and such amendments went into effect June 30, 2005. Consequently, in the instant case, IDEA citations must be to the IDEA as it existed during the relevant time frame, the version in effect from June 4, 1997 through June 30, 2005.

dismissed as merely technical violations of the IDEA. Id.   Thus, Defendants' contention that

Plaintiff "continually demanded changes to conform to her way of thinking" falls flat on its face

(Opening Brief, at 4).  Plaintiff demanded changes not "to conform to her way of thinking," but

to conform to express requirements of the law.  Suggesting that the demanded changes were in

Plaintiff's head rather than in the law further demonstrates and exhibits Defendants' continued

ignorance of the current requirements of the IDEA.

Even if the Court chooses to validate Defendants' contentions that Plaintiff's complaints

were of an internal operational nature rather than explicit violations of the IDEA, Plaintiff

nevertheless had a good faith, reasonable belief of noncompliance and was legally justified in her

course of conduct.  As indicated by the above discussion of the legal authority behind Plaintiff's

complaints, Plaintiff at the very least possessed good faith, colorable arguments regarding

Defendants' noncompliance with the IDEA.  It is therefore indisputable that Plaintiff's activities

fell "within the ambit of activity" protected by the RA.

**B.    Defendants Knew Of, and Often Chastised Plaintiff for Her Protected Activity.**

The Complaint alleges several facts which demonstrate that the Defendants were aware

of Plaintiff's complaints of noncompliance (Complaint, ¶¶ 9, 13-17, 19-21).  Moreover, through

her exhibits, Plaintiff has attached to the Complaint ample evidence that Defendants were aware

of the protected activity.  See Exhibits 1 through 6.

Plaintiff first voiced her concerns in a memorandum addressed to Defendant Huber, dated

October 22, 2001, which memorandum is attached to the Complaint as Exhibit 1 (Complaint, ¶

9).  Defendants make a noteworthy attempt to debunk this memorandum (Opening Brief, 15), but

blatantly ignore Plaintiff's gentle admonishments to a supervisor she had only been working with

for three months. In fact, Plaintiff does not dispute that the memorandum is written in a neutral,

non-confrontational manner.   Here, it is important to note that although Plaintiff's complaints of noncompliance are often referred to in their cumulative form, initially her complaints took the form of nonaggressive suggestions, which suggestions evolved into outright complaints as the gravity of STSD's noncompliance, and its stubborn refusal to adapt to the new IDEA requirements, became clear.

Although not an inflammatory bashing of her boss, the memorandum attached as Exhibit 1 certainly identifies areas of potential noncompliance. For example, in her second point, Plaintiff responds to a question posited Defendant Huber.  By Plaintiff's response, it is readily apparent that Defendant Huber was not aware of recent regulatory changes to eligibility determination criteria, and accordingly, was not implementing the proper procedure in this regard.  Later in her second point, Plaintiff suggests Mr. Huber should "establish again" the proper procedure when a parent calls with questions regarding possible testing.  In choosing "again," Plaintiff reveals that this lapse in procedure is a repeat occurrence.  Moreover, by suggesting a procedure of stamping a "received date" on correspondence so as to maintain timelines, Plaintiff's memo indicates an inability of the Special Education office to meet applicable timeliness requirements.  Plaintiff's third point, which suggests an agenda for the school's bi-monthly Special Education meetings, implies that such an agenda is needed because certain requirements are missing from the current procedures.  Hence, although Defendants insist Plaintiff's suggestions merely involve internal operating procedures, it is quite plain that her suggestions derived from a much larger goal: that of bringing STSD into compliance with the ever-changing reality of the IDEA.

Defendants next move from Exhibit 1 to Exhibit 2, making the preposterous assertion that Exhibit 2 does not detail protected activity "as it merely refers to conflict between two staff

members" (Opening Brief, at 16).   To the absolute contrary, Exhibit 2 stands as an undisputable

assertion of staff noncompliance with the IDEA.   The subject of the memo, which is in bold

print, reads "**Staff Non-Compliance with Federal IDEA Requirements.**"   The substance of

the memo identifies a serious problem wherein a specific teacher is refusing to bring an IEP in

line with legal requirements.   While it is true that Plaintiff voices her concern regarding such

teacher's insubordination (indicating conflict between herself and such teacher)[5], Plaintiff also

expressly states her concerns that such teacher's assignments are "out of compliance with IDEA

requirements and could result in legal repercussions in the event of a due process action."

Unquestionably, Plaintiff's complaints in Exhibit 2 amount to more than mere internal staff

conflict, as they indicate specific areas of legal noncompliance with a federal statute, as well as

the associated and undesirable legal consequences.

Exhibit 3, also attacked by Defendants (Opening Brief, 18), identifies several IDEA

procedural errors committed by various STSD staff members.  Exhibit 3 identifies grave errors

involving parental permission and demonstrates ignorance of staff members via their incorrect

identification and sequential ordering of the various steps in the highly-regulated IEP

development procedure.  Similarly, Exhibits 4 and 5 also identify specific instances of

noncompliance with the IDEA.  Defendants were certainly aware of the persistent tenor of

Plaintiff's concerns regarding noncompliance.

Not only were Defendants well aware of Plaintiff's protected activity, but they were also

more than annoyed by such activity.  Plaintiff was repeatedly chastised for her vocal opposition

to the various IDEA infractions committed by STSD staff (Complaint, ¶¶ 13-19). As the

---

[5] Plaintiff does not dispute that the Exhibits to the Complaint demonstrate an obvious internal confusion regarding
delegation of responsibilities among departments and individual staff members, but, albeit an aggravating factor in
Plaintiff's relations with staff members, such internal confusion was collateral to Plaintiff's main concern of STSD's
pervasive, ongoing noncompliance with the IDEA.

Complaint explains, Plaintiff came onto the staff at STHS with the intent of helping STHS

implement the new IDEA regulations, and of making changes to pre-existing procedures (which

were out of date and noncompliant) (Complaint, 8-11).  While Plaintiff understood that such

changes would be met with a certain amount of resistance, she expected Defendants would

provide the support necessary to transition the staff from their noncompliant habits to newly-

implemented compliant procedures (Complaint, 11).  However, Plaintiff soon found that she was

alone in her goal of IDEA compliance, and discovered very quickly that she would receive no

support or authorization from Defendants for her proposed changes.  Because Defendants did not

stand with Plaintiff to create a united front for the staff to perceive, a few select staff members

mistakenly took Plaintiff's attempted changes as personal attacks.  It was this very situation that

created friction and conflict between Plaintiff and various staff members.  Id.

As exemplified by the sampling of Plaintiff's noncompliance complaints attached to the

Complaint and the allegations is Paragraphs 13 through 19, it is undeniable that such complaints

were addressed to and directed at the various Defendants.  Accordingly, it is undeniable that

Defendants knew of such complaints.

**C.    Plaintiff Suffered Adverse Retaliatory Actions at the Hands of Defendants, Including Termination.**

The Complaint establishes that, in retaliation for her repeated, persistent complaints of

noncompliance, Defendants' developed a pattern of antagonism against Plaintiff, and ultimately,

Defendants performed the unarguably adverse action of terminating Plaintiff (Complaint, ¶¶ 13-

19, 22-26).  Defendants mistakenly interpret the Complaint as claiming each individual written

reprimand and negative evaluation was, in and of itself, an adverse employment action (Opening

Brief, 12, 25).  While each reprimand and evaluation may not be singularly an adverse

employment action, the collection of such establishes the pattern of antagonism Defendants exhibited toward Plaintiff.

To summarize such pattern of antagonism, Plaintiff was first orally reprimanded, in that she was accused by Defendants of dragging out meetings, attacking staff and making the administration "look bad" (Complaint, ¶¶ 13-16). Then, Defendant Walls-Culotta rewrote Plaintiff's job description.[6] However, relations really deteriorated after Plaintiff approached STSD Board Member Charles Mitchell with her concerns (Complaint, ¶ 20). Plaintiff received three written reprimands within the very next month, which were in stark contrast to all other evaluations in Plaintiff's personnel file (Complaint, ¶¶ 22-24). Within one week from the receipt of her third written reprimand, Plaintiff's position at STSD was terminated (Complaint, ¶P 25-26).

Defendants contend that Plaintiff often conflicted with the staff, and consequently was "an unhappy employee with a chip on her shoulder" (Opening Brief, 18). However, simply labeling protected advocacy "unprofessional" or "disruptive" does not constitute a neutral basis for removal. Sweet, 200 5 WL 19531 at *2. In light of the pattern of antagonism that had developed against Plaintiff as a result of her unrelenting insistence that STSD become compliant with IDEA requirements, and the temporal proximity (further discussed *infra*) between Plaintiff's approaching the Defendant Board of Education and Defendants' quick series of successive written reprimands and decision to terminate, it is quite evident Plaintiff suffered adverse action in retaliation for her insistence that STSD's procedures be brought into compliance with the IDEA.

---

[6] Although not specifically alleged in the Complaint, but which will most certainly be further developed through discovery, it should be noted that, in rewriting and redefining Plaintiff's job description (Complaint, ¶ 18), Defendant Walls-Culotta reduced Plaintiff's summer hours without notice (thus reducing her pay without notice).

**D.** **Defendants' Express Comments and Timing of Plaintiff's Termination Establish the Causal Connection Between the Retaliatory Actions and Plaintiff's Protected Activity.**

Plaintiff adequately alleges a causal connection between Defendant's retaliatory actions and the protected activity. The Complaint and exhibits thereto suggest a history of antagonism between the Defendants, staff at SDHS, and Plaintiff; whether the antagonism resulted from (the "chip on [Plaintiff's] shoulder" (Opening Brief, at 18) or from Plaintiff's protected activity is a question of fact to be determined at a later stage in these proceedings. Plaintiff also presents a wealth of evidence in support of her temporal proximity argument. As such, there is more than sufficient support in the record for the inference of a causal connection between the adverse actions and the protected activity.

The Complaint alleges that Plaintiff was met with resistance for her complaints of IDEA noncompliance early in her position at STSD (Complaint, ¶ 11). Plaintiff faced increasing incidents of staff insubordination, accusations and criticisms (Complaint, ¶¶ 13-17). To add insult to injury, almost two full years into her position as School Psychologist, Defendant Walls-Culotta decided to rewrite and re-engineer Plaintiff's job description, duties and requirements in an effort to circumvent Plaintiff's complaints (Complaint, ¶ 18). From this point on, Plaintiff was directed to report IDEA violations to Defendant Walls-Cullota and/or Defendant Huber, both of whom refused to acknowledge the validity of Plaintiff's complaints, often blatantly refuting Plaintiff's recommendations (Complaint, ¶¶ 17-18).

The combined actions described in the above paragraph detail the pattern of antagonism that Defendants exercised toward Plaintiff. The Complaint sufficiently describes the pattern of behavior Defendants adopted in retaliation against Plaintiff's efforts at opposing the IDEA

violations she perceived.  Robinson v. SEPTA, 982 F.2d 892 (3d Cir. 1993).  Certainly, this

pattern of antagonistic behavior links Plaintiff's IDEA complaints with Plaintiff's termination.

Notwithstanding, the most severe adverse employment action was taken within a few

weeks of Plaintiff's phone call to the Board.   When Defendants Walls-Cullota and Huber

stubbornly persisted in their antagonistic, ignorant behavior, Plaintiff approached the Defendant

Board of Education directly by contacting STSD Board member Charles Mitchell to

communicate her concerns, oppositions, and noncompliance complaints (Complaint, ¶ 20).

Plaintiff contacted Charles Mitchell on February 26, 2004, and within five weeks of that date,

received three successive written reprimands/evaluations[7] and was effectively terminated

(Complaint, ¶ 22-24).   In fact, Plaintiff's first written reprimand was dated only one week

subsequent to her contacting Mr. Mitchell (Complaint, Exhibit 6).  The proximity between

Plaintiff's approach to the Defendant Board of Education and the issuance of negative

evaluations and termination of Plaintiff certainly is so close in time as to be unusually suggestive

of a retaliatory motive. See Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir.

2003).

In all, the temporal proximity of Defendants' adverse actions, combined with the

suspicious, pretextual nature of Defendants' negative evaluations, and in light of Defendants'

express comments resisting compliance, more than adequately suggest a causal connection

between Plaintiff's protected activity and the retaliatory adverse actions taken against her.  It is

---

[7] In their discussion of the written reprimands, Defendants baldly allege additional unsworn facts which cannot be
considered in the context of this Motion to Dismiss (Opening Brief, 25).  Even these additional facts, however,
cannot camouflage the obvious pretextual nature of these reprimands.  All previous written evaluations in Plaintiff's
personnel file were exceedingly positive and complimentary, as well as were all evaluations from any previous
school districts which had employed Plaintiff (Complaint, ¶ 23).

clear Plaintiff was retaliated against for complaining to Defendants about the mistreatment and mishandling of student IEPs.

## IV.    FIRST AMENDMENT RETALIATION

To prevail on a First Amendment retaliation claim, Plaintiff must show: 1) that she engaged in protected activity regarding a matter of public concern; 2) that her interest in First Amendment expression outweighs her employer's interest in efficient operation of the workplace; 3) that the protected activity was a substantial or motivating factor in the alleged retaliatory action.  Baldassare v. New Jersey, 250 F.3d 188, 194-195 (3d Cir. 2001).   The Complaint adequately alleges each of these three elements.

Defendants believe the recent Supreme Court opinion in Garcetti, 125 S.Ct. 1951 (2006), is dispositive of Plaintiff's First Amendment claims.  In Garcetti, the Supreme Court held that when public employees make statements pursuant to their official duties, they are not speaking as citizens for First Amendment purposes.  Id. Rather than a ruling which is dispositive in the instant case, the Garcetti opinion, in effect, directs the argument to issues such as whether Plaintiff's speech was in fact pursuant to her "official duties" (i.e., employment-required), and/or whether it encompassed a matter sufficiently of public concern.[8]  Such issues have been adequately pleaded in the Complaint (as will be discussed *infra*), and merit further investigation through discovery.  Thus, even in the face of Garcetti, discovery must be taken to enable the Court to determine the precise capacity and nature of Plaintiff's speech.

---

[8] Since the issuance of the Garcetti opinion, courts interpreting the opinion have limited its reach.  See, for example, Hailey v. City of Camden, 2006 WL 1875402 (D.N.J.)(holding Garcetti does not broadly immunize government employers from retaliation for its employees' speech) and Kodrea v. City of Kokomo, Indiana, 2006 WL 1750071 (S.D. Ind.)(holding Garcetti inapplicable as in Kodrea the plaintiff's job responsibilities did not require him to monitor or report misconduct).

A.    **Plaintiff's Complaints of IDEA Noncompliance Qualify as Constitutionally Protected Activity Regarding a Matter of Public Concern.**

As the school psychologist, Plaintiff's complaints regarding IDEA noncompliance were not a requirement of her job.  Thus, although Plaintiff's complaints were made within the ambit of the workplace, rather than publicly, Plaintiff's case should survive Garcetti.  In fact, the Garcetti Court affirms that employees may receive First Amendment protection for expressions made at work.  Garcetti, 126 S.Ct 1951, 1959.  The Garcetti Court asserts that the First Amendment does protect expressions related to the speaker's job, with the following reference: "As the Court noted in Pickering: 'Teachers are, as a class, the members of a community most likely to have informed and definite opinions as to how funds allotted to the operation of the schools should be spent.  Accordingly, it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal.'"  Id.

The Court has recognized that a citizen who works for the government is nonetheless a citizen. Garcetti, 126 S.Ct. 1951, 1958. The First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens. Id. *citing* Perry v. Cindermann, 408 US 593 (1972). So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively. It is the Court's responsibility to ensure that citizens are not deprived of fundamental rights by working for the government. Id. *quoting* Connick v. Myers, 461 U.S. 138 (1983).

Exposing governmental inefficiency is a matter of considerable significance. Garcetti, 126 S. Ct. 1951, 1958. Public employers should, as a matter of sound judgment, be receptive to constructive criticism offered by their employees. Id.

19

A public employee's speech involves a matter of public concern if it can "be fairly considered as relating to any matter of political, social or other concern to the community." Connick, 461 U.S. 138, 146. If the value of the speech, based upon its content and the circumstances of communication, are such that the message conveyed would be relevant to the process of self-government if disseminated to the community at large, the communication should be considered a matter of public concern. Azzaro v. County of Allegheny, 110 F.3d 968, 977-78 (3d Cir. 1997). Plaintiff's complaints of STSD's noncompliance with the IDEA implicated several such concerns, including concerns regarding education and policy, discrimination against individuals with disabilities, and parental due process rights.

Here, STSD's noncompliance with the IDEA could have seriously impacted the education of disabled students attending STSD. Speech by a teacher advocating for disabled students is constitutionally protected. Sweet, 2005 WL 19531 at *3. Moreover, the failure of STSD to properly notice and involve parents in the creation and development of student IEPs deprived such parents of substantive due process rights, the same rights the IDEA aims to protect and preserve. Plaintiff's attempts to bring to light actual or potential violations of rights granted to students and parents by the IDEA therefore qualifies as speech regarding a matter of public concern.

**B.** **Defendants' Interest in Workplace Efficiency is Outweighed by Plaintiff's Free Speech Interest in Opposing STSD's Noncompliance with Federal Statute.**

Plaintiff voiced her noncompliance complaints via email, internal memoranda and in meetings specifically designated to address IDEA concerns and compliance (See Complaint, generally). Plaintiff's manner of voicing her complaints was not disruptive nor insubordinate to

her superiors.  Hence, the effect of Plaintiff's complaints on workplace efficiency and discipline was minimal.  This minimal effect must be balanced against Plaintiff's free speech interest.

The IDEA, its regulations, and relevant portions of the Delaware Code expressly identify the public's (i.e., disabled student, such student's parents) substantial interest in ensuring that a free appropriate public education be offered to all disabled children 34 CFR Parts 300 and 303; Del. Code Ann. Title 14, 3120.   Certainly, Plaintiff, as well as the public at large, has a strong free speech interest in voicing violations of both federal and state laws.  While it is true that "close working relationships are essential to fulfilling public responsibilities" (Opening Brief, at 29), Plaintiff is not required to ignore ongoing violations of federal statute in order to maintain a cooperative staff environment.

C.    **Plaintiff's Complaints of Noncompliance Were a Substantial Motivating Factor in Defendants' Decision to Terminate Plaintiff.**

As discussed *supra*, the escalating pattern of antagonism against Plaintiff in response to her persistent complaints of noncompliance, combined with the temporal proximity between when Plaintiff approached the Defendant Board of Education with such complaints and when she was terminated, are unusually suggestive of retaliatory action.  As such, the Complaint sufficiently establishes that Plaintiff's exercise of her free speech rights was a substantial motivating factor in Defendants' decision to terminate Plaintiff.

V.    **WRONGFUL TERMINATION**

In the State of Delaware, the "public policy exception" is one the narrow exceptions to the employment-at-will doctrine. E.I. DuPont de Nemours and Company v. Pressman, 679 A.2d 436 (De. 1996).  The public policy exception requires "a clear mandate of public policy." Id. at 441.  An employee "must assert a public interest recognized by some legislative, administrative or judicial authority, and the employee must occupy a position with responsibility for that

particular interest." Id. at 441-442 *quoting* Shearin v. E.F. Hutton Group, Inc., 652 A.2d 578,

587-589 (Del.Ch. 1994)(finding lawyer who was fired for refusing to violate professional ethics

rules might have cause of action under public policy exception).  See also Schuster v. DeRocili,

775 A.2d 393 (Del. 2000)(recognizing public policy exception when termination resulted from

refusal to give in to sexual harassment; referencing Delaware Discrimination in Employment

Statute to show "explicit and recognizable" public policy).

　　　　Here, as more fully discussed *supra*, Plaintiff has adequately alleged violations of the RA

and First Amendment protections.  Additionally, as Defendants readily admit (Opening Brief,

15), Plaintiff occupied a position responsible for evaluating students for eligibility under the

IDEA.  Accordingly, Plaintiff has identified "explicit and recognizable" public policies which

have been violated by Defendants' wrongful termination of Plaintiff, an employee with

responsibility toward maintaining those same "explicit and recognizable" public policies.

Plaintiff's claim for wrongful termination should stand.

## VI.    DEFENDANT HUBER

　　　　Defendant Huber was an active participant in the wrongs committed against Plaintiff, as

is adequately alleged in the Complaint.  As Vice Principal and Supervisor of Special Education,

Defendant Huber was undeniably in a position of heightened responsibility, especially with

regard to issues involving special education, or disabled, students (Complaint, ¶5).  Yet, he too

ignored Plaintiff's complaints, and actively participated in the ongoing pattern of antagonism

against Plaintiff (Complaint, ¶¶ 9, 11, 17, 19, 20, 21, 28).  For example, Exhibit 1, in which

Plaintiff first identifies various areas of noncompliance at STSD, is directly addressed to

Defendant Huber.  Exhibit 2, in which Plaintiff warns of staff noncompliance with IDEA

requirements, is directly addressed to Defendant Huber.  Both Exhibits 4 and 5 contain emails

directly addressed to Defendant Huber wherein Plaintiff inquires as to the legality of certain procedures. Defendants' unsupported proclamation that Plaintiff has made no allegations against Defendant Huber (Opening Brief, 32) is categorically incorrect. Accordingly, the Complaint against Defendant Huber should remain.

## VII.  PLAINTIFF'S OPPOSITION TO DEFENDANTS' ALTERNATIVE MOTION FOR A MORE DEFINITE STATEMENT

Defendants base their Motion for a More Definite Statement on Plaintiff's alleged failure to adequately plead the elements of IDEA violations committed by Defendants. As discussed *supra*, Defendants mistakenly believe an RA cause of action is the appropriate place to argue the merits of the complaints underlying such RA violation. This is not so, and, as such, no additional information is necessary to state a cause of action under the RA. Accordingly, Defendants' Motion for a More Definite Statement should be denied.

## CONCLUSION

Based on the foregoing, it is clear the Complaint sufficiently establishes its RA, First Amendment and wrongful termination claims. The Court, therefore, should unequivocally deny Defendants' Motion to Dismiss. Moreover, as the additional information Defendants request would serve only to argue the merits of Plaintiff's underlying IDEA complaints, rather than the instant RA complaint, the Court should also deny Defendants' Motion for a More Definite Statement.

RESPECTFULLY SUBMITTED,


_____/s/_____
Brian F. Dolan
Stumpf, Vickers & Sandy, P.A.
8 West Market Street
Georgetown, DE 19947


_____/s/_____
Robin R. Cockey
Cockey Brennan & Maloney P.C.
313 Lemmon Hill Lane
Salisbury, MD  21801


Attorneys for Plaintiff


Date: September 15, 2006