IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DOROTHY HOULIHAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. 05-00194 JJF |
| v. ) | |
| ) | |
| SUSSEX TECHNICAL SCHOOL DISTRICT, ) | TRIAL BY JURY OF TWELVE |
| SUSSEX TECHNICAL SCHOOL DISTRICT ) | DEMANDED |
| BOARD OF EDUCATION, SANDRA WALLS- ) | |
| CULOTTA, individually, and in her official ) | E-FILE |
| capacity, and STEVEN HUBER, individually, and ) | |
| in his official capacity, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR RENEWED MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT**

                                             WHITE AND WILLIAMS, LLP
                                             JOHN D. BALAGUER
                                             Bar ID. # 2537
                                             WILLIAM L. DOERLER
                                             Bar ID. # 3627
                                             P.O. Box 709
                                             Wilmington, DE 19899-0709
                                             302-467-4508
                                             Attorneys for Defendants

Date: October 3, 2006

Table of Contents

Page

TABLE OF CITATIONS .................................................................................................. ii

I. THE ALLEGATIONS OF THE COMPLAINT FAIL TO STATE A RETALIATION CLAIM UNDER THE REHABILITATION ACT ..................................................................... 2

II. PLAINTIFF DID NOT SUFFER ADVERSE ACTION IN RESPONSE TO PROTECTED ACTIVITY ............................................................................................................ 5

III. PLAINTIFF'S EVIDENCE FAILS TO ESTABLISH A CAUSAL CONNECTION ............. 6

IV. PLAINTIFF'S FIRST AMENDMENT CLAIM FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED ..................................................................... 7

V. DEFENDANT'S COMPLAINT FAILS TO STATE A CLAIM AGAINST DEFENDANT HUBER ............................................................................................................... 11

VI. TO THE EXTENT THAT THE COURT CONCLUDES THAT PLAINTIFF HAS OTHERWISE STATED A CLAIM, DEFENDANTS ARE ENTITLED TO A MORE DEFINITE STATEMENT ..................................................................................... 12

VII. CONCLUSION ................................................................................................... 13

**EXHIBITS**

*Ayres v. Jacobs & Crumplar, P.A.*, 1996 WL 769331 (Del. Super. Ct.) .............................. Exh. A

*C.M. v. Board of Education of the Union County Regional High School Dist.*, 2005 WL 899927 (3d Cir.) ........................................................................................................................ Exh. B

*Sweet v. Tigard-Tualatin Sch. Dist.*, 2005 WL 19531 (9th Cir.) ........................................... Exh. C

# TABLE OF CITATIONS

## CASES

*Alston v. Parker*, 363 F.3d 229 (3d Cir. 2004) ................................................................12

*Ayres v. Jacobs & Crumplar, P.A.*, 1996 WL 769331 (Del. Super. Ct.) ...........................2

*Bailey v. Dept. of Elementary and Secondary Ed.*, 451 F.3d 514 (8th Cir. 2006)............9

*Bartholomew v. Fischl*, 782 F.2d 1148 (3d Cir. 1986) ....................................................12

*Burlington Indust., Inc. v. Ellerth*, 118 S. Ct. 2257 (1998)................................................6

*C.M. v. Board of Education of the Union County Regional High School Dist.*,
    2005 W. 899927 (3d Cir.).........................................................................................3

*Garcetti v. Ceballos*, 126 S. Ct. 1951 (2006).............................................................8, 10

*Good v. Dauphin County Soc. Serv. for Children and Youth*, 891 F.2d 1087 (3d
    Cir. 1989)................................................................................................................11

*Gray v. New York Newspapers, Inc.*, 957 F.2d 1070 (3d Cir. 1992) ................................5

*Krouse v. American Sterilizer Co.*, 126 F.3d 494 (3d Cir. 1997) .................................2, 5

*Malley v. Briggs*, 475 U.S. 335 (1986) ...........................................................................11

*Mills v. City of Evansville, Indiana*, 452 F.3d 646 (7th Cir. 2006)...................................9

*Owens v. Okure*, 488 U.S. 235 (1989) .............................................................................2

*Pickering v. Brd. of Educ. of Twp. High Sch. Dist. 205*, 391 US 563 (1968)..............9, 10

*Schatzman v. Martin Newark Dealership, Inc.*, 158 F. Supp. 2d 392 (D. Del.
    2001) .........................................................................................................................5

*Shaner v. Synthes (USA)*, 204 F.3d 494 (3d Cir. 2000) ....................................................7

*Sweet v. Tigard-Tualatin Sch. Dist.*, 2005 WL 19531 (9th Cir.) ........................4, 10, 11

*Weston v. Pennsylvania*, 251 F.3d 420 (3d Cir. 2001) .....................................................6

*Wilson v. Garcia*, 471 U.S. 261 (1985)............................................................................2

*Woodson v. Scott Paper Co.*, 109 F.3d 913 (3d Cir. 1997), *cert. denied*, 118 S.Ct. 299 (1997)........................................................................................................................2

## OTHER AUTHORITIES

Rehabilitation Act (RA), 29 U.S.C. § 794(d) ........................................................................2

F.R.C.P. 8(a), (e) ..................................................................................................................12

F.R.C.P. 12(e) ......................................................................................................................12

42 U.S.C. § 1983..................................................................................................................2

## ARGUMENT

I. **THE ALLEGATIONS OF THE COMPLAINT FAIL TO STATE A RETALIATION CLAIM UNDER THE REHABILITATION ACT**

Plaintiff contends that she sufficiently alleges in the Complaint that she engaged in protected activity to survive a motion to dismiss. The main problem with Plaintiff's analysis is that she fails to acknowledge that the Complaint in this case includes the voluminous exhibits that she attached to the Complaint. The allegations of her Complaint, therefore, include the exhibits attached. These exhibits clearly establish that the allegations in the Complaint <u>do not state a claim of retaliation</u>.

An employee bringing a retaliation claim under the Rehabilitation Act (RA), 29 U.S.C. § 794(d), must show:  1) that she engaged in a protected activity; 2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and 3) a causal connection between the employee's protected activity and the employer's adverse action.[1]

Plaintiff contends that she engaged in "protected activity" when she sent Mr. Huber a memorandum on October 22, 2001. As an initial matter, any assertions based upon this memo are barred by the statute of limitations as the Complaint in this matter was filed more than two years beyond the date of the letter.[2] Moreover, there is no identification of adverse action taken within the statute of limitations period related to this letter.

---

[1] *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (citing *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997), *cert. denied*, 118 S.Ct. 299 (1997)).

Where a plaintiff contends that an employer's proffered reasons for adverse action are pretextual, the McDonnell Douglas burden-shifting analysis applies. *See Woodson*, 109 F.3d at 920 n.2 (explaining the burden shifting analysis in a retaliation case); *Krouse*, 126 F.3d at 500 (following the burden shifting analysis in analyzing a retaliation claim).

[2] Courts addressing claims brought under 42 U.S.C. § 1983 should apply the applicable state's statute of limitations for personal injury actions. *Owens v. Okure*, 488 U.S. 235, 236 (1989) (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)). In Delaware, all personal injury suits have a two

Even if the "complaints" in the memo were otherwise actionable, it is clear that this memorandum provides "some ideas for [Mr. Huber's] review" regarding streamlining testing procedures, responds to a question asked by Mr. Huber, and suggests topics to be addressed at faculty meetings. It is manifest on the face of this memo that Plaintiff was not complaining about violations of law in opposition to Defendants. Rather, she was doing her job, responding to questions and suggesting better internal operating procedures. Even drawing all inferences in Plaintiff's favor,[3] no jury could conclude that this memorandum reflects a good faith, reasonable belief that Plaintiff was attempting to correct violations of the IDEA *in opposition* to Defendants.

Plaintiff appears to contend that certain exhibits, 1 and 3, suggest that parents were not being properly notified regarding meetings. The deficiencies with exhibit 1 are noted in the preceding paragraph. With respect to exhibit 3, it is clear that the parent's alluded to in the memorandum waived any potential errors with respect to notice. Moreover, the remainder of exhibit 3 speaks in terms of potential violations. It does not allege any actual violations of the IDEA as it does not identify any parent that has been deprived of the opportunity to meaningfully participate in their child's IEP plan, nor does it identify any students who have been deprived of educational benefits. No jury could conclude, therefore, that Plaintiff had a good faith belief that these parents were deprived of the opportunity to participate in a meaningful way in their child's IEP plan.[4]

---

year statute of limitations. *Ayres v. Jacobs & Crumplar, P.A.*, 1996 WL 769331 at *4 (Del. Super. Ct.) (Exh. A).

[3] *See* Op. Brf., § I (stating the standard for granting a motion to dismiss).

[4] *See C.M. v. Board of Education of the Union County Regional High School Dist.*, 2005 WL 899927 at *2 (3d Cir.) (Exh. B) (stating that in order to state a claim under the IDEA, plaintiffs must allege an actionable injury). With respect to procedural violations, actionable injuries are those that result in the loss of an educational opportunity or seriously infringe on a parent's right

Plaintiff relies on *Sweet*[5] for the proposition that her reports of "potential" violations qualify as protected activity. *Sweet* is distinguishable from this case because the plaintiff in *Sweet* complained about a particular, identifiable, student. To the extent that *Sweet* is not distinguishable on that basis, it is distinguishable because, although it is not explicitly addressed, the decision implies that the plaintiff's complaints were based on a good faith belief that the defendant's actions would result in the deprivation of an educational benefit to the particular student at issue, or that the student's parents were being denied a meaningful opportunity to participate in the IEP process. The same cannot be implied with respect to Plaintiff's complaint.

In Section I(B) of the Answering Brief Plaintiff attempts to establish that Defendants were aware of Plaintiff's activity. The issue here is not whether Defendants were aware of the activity, but whether the activity at issue was "protected activity." For the reasons set forth in the Opening Brief, and above, none of Plaintiff's activity was "protected activity."

With respect to Exhibit 2, Plaintiff correctly notes that the memorandum addresses a problem that Ms. Houlihan was having with a particular teacher. The memorandum also suggests that the teacher's refusal to cooperate "may" have repercussions regarding compliance and "could result in legal repercussions in the event of a due process action." Fatal to Plaintiff's position, however, is the failure to allege that these issues resulted in non-compliance or the filing of a request for a due process hearing. In addition, Plaintiff failed to identify a single student who was deprived of an educational benefit, or a parent who was deprived of the

---

to participate in the IEP formulation process. *Id.* Technical or procedural violations which do not cause a substantive deprivation of educational benefits are not actionable. *Id.* Plaintiffs cannot meet their burden of establishing harm caused by claimed procedural shortcomings by making bare allegations of a deprivation. *Id.* Where extensive parental involvement is evident, claims based upon deprivation of an opportunity to participate in particular isolated decisions are rendered insignificant. *Id.* at *3.

[5] *Sweet v. Tigard-Tualatin Sch. Dist.*, 2005 WL 19531 (9th Cir.) (Exh. C).

opportunity to meaningfully participate in his or her child's IEP proceeding. Moreover, the substance of this memorandum is that Plaintiff was having trouble getting cooperation from one particular teacher with respect to filling out forms and she asked defendant Huber to intervene on her behalf. Conclusory allegations of "potential" deprivations are not actionable and no jury could find that Plaintiff had a good faith belief that they were. Civil rights lawsuits cannot be transformed into a forum for everyday workplace personnel disputes.[6]

## II.   PLAINTIFF DID NOT SUFFER ADVERSE ACTION IN RESPONSE TO PROTECTED ACTIVITY

Plaintiff contends that the Complaint establishes a "pattern of antagonism." This allegation, however, is insufficient as a matter of law to support a finding of adverse action. Plaintiff's argument confuses evidence of retaliatory animus, which may be helpful in establishing a causal link, with adverse employment action.[7] Plaintiff acknowledges that the individual reprimands do not constitute adverse employment action.[8] Fatal to Plaintiff's complaint is any identification of adverse employment action taken in response to protected activity.

Plaintiff contends that the Complaint alleges adverse employment action because it alleges that she was fired shortly after she spoke with Charles Mitchell, a Board member. According to Plaintiff, the temporal proximity of her dismissal to her complaining establishes

---

[6] *Gray v. New York Newspapers, Inc.*, 957 F.2d 1070, 1083 (3d Cir. 1992).

[7] *See Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997) (stating that when temporal proximity is missing, courts may look to the intervening period between the protected activity and the allegedly retaliatory conduct for other evidence of retaliatory animus); *Schatzman v. Martin Newark Dealership, Inc.*, 158 F.Supp.2d 392, 403 (D. Del. 2001) (discussing a Title VII case and stating that "[i]n addition to timing, evidence of 'intervening antagonism or retaliatory animus,' or other circumstantial evidence can also allow for an inference of causation").

[8] Ans. Brf. at 14-15 (arguing that "[w]hile each reprimand and evaluation may not be singularly an adverse employment action, the collection of such establishes a pattern of antagonism . . .").

both a causal connection and adverse employment action. The issues about which she allegedly complained to Mr. Mitchell, however, have been established to be nothing more than complaints about inter-office procedures. She fails set forth any complaints to Mr. Mitchell from which a jury can infer that a child was deprived of an educational opportunity or a parent was deprived of the opportunity to meaningfully participate in his or her child's IEP plan. Plaintiff's "complaints" to Mr. Mitchell, therefore, cannot be deemed to be protected activity.

The reprimands referred to, moreover, do not represent adverse employment action as these reprimands did not affect the terms or conditions of Plaintiff's employment.[9] A written reprimand, by itself, does not constitute adverse employment action. To qualify as an adverse employment action in a retaliation case, the reprimand must affect the terms and conditions of the plaintiff's employment.[10] The letters identified do not constitute adverse employment action.

### III. PLAINTIFF'S EVIDENCE FAILS TO ESTABLISH A CAUSAL CONNECTION

Plaintiff contends that the allegations in the Complaint and her exhibits establish a causal connection between her protected activity and her ultimate termination. According to Plaintiff, a jury could conclude that there was a causal connection based on the temporal proximity between the last reprimand letter and her termination, as well as the pattern of antagonism. Plaintiff's argument fails because she failed to identify any protected activity. No reasonable jury could conclude otherwise.

Moreover, Plaintiff's Complaint and exhibits fail to set forth a "pattern of antagonism." Rather, Plaintiff's complaint and exhibits establish, for the most part, a plethora of routine

---

[9] *See Burlington Indust., Inc. v. Ellerth*, 118 S.Ct. 2257, 2268 (1998) (stating that adverse employment action is conduct which "constitutes a *significant* change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.") (emphasis added).

[10] *Weston v. Pennsylvania*, 251 F.3d 420, 431 (3d Cir. 2001).

internal correspondence from a school psychologist to her superiors. It was Plaintiff's job to make suggestions with respect to improving the way things were done and her doing so does not make these suggestions actionable. With respect to the last series of letters, these letters, which Plaintiff has included as part of her Complaint, establish that Plaintiff was inexcusably insubordinate to her superiors. That is why she was fired.

Even if Plaintiff's evidence otherwise establishes a temporal proximity or a pattern of antagonism, Plaintiff has included evidence in her Complaint which establishes a legitimate, nondiscriminatory reason for her termination. Even if Plaintiff's Complaint sets forth a *prima facie* case, it also sets forth a legitimate reason for Plaintiff's termination. Thus, to survive a motion to dismiss, Plaintiff must set forth sufficient allegations in the Complaint from which a jury can conclude that the legitimate reasons identified for her termination in the Complaint are merely pretextual.[11] There is no basis in the Complaint for a jury to conclude that Plaintiff's termination was the result of anything other than insubordination. Plaintiff's Complaint, therefore, fails to state a claim upon which relief may be granted.

### IV.  PLAINTIFF'S FIRST AMENDMENT CLAIM FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Plaintiff contends that the speech she engaged in was "protected" because it involved a matter of public concern. Plaintiff's argument fails, however, because it is clear from the Complaint and its exhibits that any comments she was making were in her capacity as the school

---

[11] *See Shaner v. Synthes (USA)*, 204 F.3d 494, 500 (3d Cir. 2000) (discussing the *McDonnel Douglass* burden shifting analysis used in retaliation cases). Pursuant to the burden shifting analysis, where a legitimate, non-discriminatory reason has been provided, the plaintiff must come forward with evidence establishing that the given reason was pretextual. *Id.*

Case 1:05-cv-00194-JJF   Document 29   Filed 10/03/2006   Page 11 of 17

psychologist. She was not making these statements in her capacity as a private citizen.[12] Her speech, therefore, was not protected speech.

Plaintiff contends that the *Garcetti* distinction between speech made as a citizen and speech made pursuant to an official duty is not dispositive in this case because, even in the face of *Garcetti,* the allegations of the Complaint are sufficient to require that discovery be taken to enable the Court to determine the precise capacity and nature of Plaintiff's speech.[13] Plaintiff's argument fails because she does not identify what discovery she needs, or how it would change the outcome. Moreover, a review of the Complaint and the exhibits attached thereto belie Plaintiff's position.

Plaintiff, in conclusory fashion, contends that her complaints regarding IDEA noncompliance were not a requirement of her job. Plaintiff's contention is specious as it fails to address the allegations in the complaint, or the merits of her position.

Paragraph 18 of the Complaint clearly establishes that reporting incidents of non-compliance with the IDEA were a part of Plaintiff's job description, although on or about August of 2003, Defendant Walls-Culotta changed the individual to whom those reports were made. In addition, Exhibit 2 of the Complaint references insubordination by an employee who Plaintiff, as Coordinator of Special Education, felt was not properly complying with her requests.[14] The April 18, 2002 and November 14, 2001 "Job Analysis" forms included with Exhibit 7, further

---

[12] *See Garcetti v. Ceballos*, 126 S.Ct. 1951, 1960 (2006) (stating that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes and the Constitution does not insulate their communications from employer discipline.").

[13] Ans. Brf. at p. 18.

[14] A-9

DOCS_DE 131337v.1

establish that providing suggestions on ways to improve how the department was run was a part of Plaintiff's job.[15] In addition, the "Job Analysis" form dated November 14, 2001 establishes that meeting with her superiors to discuss manifestation forms and procedures was also a part of Plaintiff's job.[16] The complaint unequivocally establishes that Plaintiff's complaints regarding procedures were part of her official duties, and are not subject to First Amendment protection.[17] Because of the unequivocal nature of the allegations in the Complaint, the Court can conclude, without further discovery, that Plaintiff's complaints were made as part of her official duties.

Plaintiff, relying on a quote from *Pickering*[18] related to public comment by teachers, suggests that her complaints are protected because they relate to her job and like teachers commenting on public funding for schools, she must be able to speak freely on issues of public concern without fear of retaliatory dismissal.[19] Plaintiff's argument fails, however, because the passage upon which she relies does not eliminate the requirement that a teacher's comments be made as a citizen.

---

[15] A-40 (areas for discussion and future consideration section); A-43 (areas for discussion and future consideration section).

[16] A-41 (§ I Planning/Preparation). *See also* C-1 to C-21 (selected sections of Delaware's administrative manual for Special Education Services, which establish the school psychologist's integral role in the IDEA evaluation process).

[17] *Cf. Bailey v. Dept. of Elementary and Secondary Ed.*, 451 F.3d 514, 518-520 (8th Cir. 2006) (holding that a state psychologists' internal complaints regarding a superior's implementation of a federal program, which the psychologist was responsible for administering, were made as part of his official duties, and not as a private citizen); *Mills v. City of Evansville, Indiana*, 452 F.3d 646 (7th Cir. 2006) (holding that a police sergeant's comments regarding deficiencies in her boss' planned reorganization of the deployment of crime prevention officers, over whom she had supervisory duties, were not made in her capacity as a citizen, but were part of her official duties).

[18] *Pickering v. Brd. of Educ. of Twp. High Sch. Dist.* 205, 391 US 563 (1968).

[19] *See* Ans. Brf. at 19.

*Garcetti* clarifies that protected speech must be made in the plaintiff's capacity as a citizen. In *Pickering*, the plaintiff, a teacher, sent a letter to the newspaper criticizing the way the Board handled past proposals to raise revenue for the school. These comments, made in a public forum, were only tangentially and insubstantially related to her employment.[19] The comments made by Plaintiff in the case *sub judice*, however, were directly and substantially related to her employment, and were not made in her capacity as a citizen. "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen."[20]

Plaintiff's reliance on *Sweet*, is similarly misplaced. Plaintiff, relying on *Sweet*, contends that "[s]peech by a teacher advocating for disabled students is constitutionally protected."[21] *Sweet* was decided prior to *Garcetti* and there is no analysis in *Sweet* with respect to whether the plaintiff's statements were made as part of her official duties, or in her capacity as a citizen. *Sweet*, therefore, does not establish that comments made by a school psychologist as part of her official duties are protected by the First Amendment. Even if it did, it was subsequently overruled by *Garcetti*.

Plaintiff's comments with regard to potential noncompliance with the IDEA and parental due process rights are simply a red herring. Her speech was not made in her capacity as a private citizen and, therefore, was not protected speech. Even if the speech was otherwise protected, it is clear from Plaintiff's Complaint, including her exhibits, that the speech was disruptive and that

---

[19] *Pickering*, 391 S.Ct. at 574.

[20] *Garcetti*, 126 S.Ct. at 1060.

[21] Ans. Brf. at 20 (citing *Sweet*, 2005 WL 19531 at *3).

she directly challenged the competency of her superiors.[22] The only reasonable inference to be drawn from the exhibits and allegations in Plaintiff's Complaint is that the balance of the interests weighs in favor of Defendants.[23] As such, her speech was not protected.

Even if the speech was otherwise protected, it is clear that Plaintiff's communications with her superiors, particularly just prior to her termination, were disruptive and disrespectful. Any mistake on the part of her superiors with respect to Plaintiff's free speech rights, therefore, was reasonable.[24] Thus, Defendants Huber and Walls-Culotta are entitled to qualified immunity based upon the facts alleged in the Complaint.[25]

V.  **DEFENDANT'S COMPLAINT FAILS TO STATE A CLAIM AGAINST DEFENDANT HUBER**

Plaintiff contends that Defendant Huber was an "active participant" in the wrongs committed against Plaintiff. Although Defendant Huber may have communicated with Plaintiff, there is no allegation in the Complaint that Defendant Huber took any adverse employment action against Plaintiff in retaliation for Plaintiff's having engaged in protected speech. Mr.

---

[22] *See* Op. Brf. IV(C).

[23] *Id.*

[24] *See Malley v. Briggs*, 475 U.S. 335, 341 (1986) (holding that officials are entitled to qualified immunity if officials of reasonable competence could disagree on an issue); *Sweet*, 2005 WL 19531 at *3 (holding that because the plaintiff's comments were disrespectful and her coworker's complained to her supervisors that she was hard to work with, the individual defendants were entitled to qualified immunity because "any mistake by the public employees with regard to Sweet's free speech rights was . . . within the 'hazy border' between lawful and unlawful conduct."); *Good v. Dauphin County Soc. Serv. for Children and Youth*, 891 F.2d 1087, 1092 (3d Cir. 1989) (stating that even where officials should have been aware of the governing legal principles, "they are nevertheless entitled to immunity if based on the information available to them they could have believed their conduct would be consistent with those principles.").

[25] *Id.*

Case 1:05-cv-00194-JJF    Document 29    Filed 10/03/2006    Page 15 of 17

Huber was not Plaintiff's supervisor at the time of her dismissal[26] and Plaintiff has identified no adverse employment action, in the Complaint or otherwise, taken against Plaintiff by Mr. Huber. Plaintiff's Complaint fails to state a claim with respect to Mr. Huber.

### VI. TO THE EXTENT THAT THE COURT CONCLUDES THAT PLAINTIFF HAS OTHERWISE STATED A CLAIM, DEFENDANTS ARE ENTITLED TO A MORE DEFINITE STATEMENT

To the extent that the Court concludes that Plaintiff has otherwise stated a claim, Defendants are entitled to a more definite statement.[27] The Federal Rules of Civil Procedure state that pleadings are to be concise and direct.[28] The Complaint should provide a "short and plain" statement of the claim, which shows that Plaintiff is entitled to relief.[29] Plaintiff's Complaint is neither short, plain, concise nor direct. Rather, it contains a rambling sequence of conclusory allegations, supported by numerous memorandum and letters, none of which show that Plaintiff is entitled to relief.

Rule 12(e) provides that where a pleading is so vague or ambiguous a party cannot reasonably be required to frame a responsive pleading, that party may move for a more definite statement.[30] Plaintiff's Complaint asserts that she made protected statements regarding alleged violations of the IDEA over a period of time spanning several years. She fails to identify any violations, requiring Defendants to speculate with respect to the nature of the statements and how

---

[26] *See* Complt. ¶ 12 (indicating that Ms. Walls-Culotta became Plaintiff's supervisor around March of 2003).

[27] In the Opening Brief, Defendants argued that a heightened pleading standard applied to § 1983 civil rights actions. It appears, however, that the case relied upon by Defendants, *Bartholomew v. Fischl*, 782 F.2d 1148, 1153 (3d Cir. 1986) was overruled, *sub silentio*, in *Alston v. Parker*, 363 F.3d 229 (3d Cir. 2004).

[28] F.R.C.P. 8(e).

[29] F.R.C.P. 8(a).
[30] F.R.C.P. 12(e).

-12-

DOCS_DE 131337v.1

the IDEA was violated. In addition, Plaintiff's Complaint fails to identify any individuals who were deprived of an educational opportunity, or who were not permitted to meaningfully participate in their child's IEP Plan. This failure will also require Defendants to speculate when answering the Complaint. The Court, therefore, should require the Plaintiff to provide a more definite statement.

## VII. CONCLUSION

Based upon the foregoing, it is clear that Plaintiff's Complaint, which includes her exhibits, fails to state claim upon which relief may be granted. Plaintiff's Complaint fails to identify either protected activity or adverse action causally related to that activity. The Court, therefore, should dismiss Plaintiff's Complaint. Alternatively, the Court should require Plaintiff to provide a more definite statement.

Respectfully submitted,

WHITE AND WILLIAMS, LLP

　/s/ William L. Doerler
JOHN D. BALAGUER
Bar ID. # 2537
WILLIAM L. DOERLER
Bar ID. # 3627
P.O. Box 709
Wilmington, DE 19899-0709
302-467-4508
Attorneys for Defendants

Date: October 3, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DOROTHY HOULIHAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 05-00194 JJF |
| v. | ) |
| | ) |
| SUSSEX TECHNICAL SCHOOL DISTRICT, | ) TRIAL BY JURY OF TWELVE |
| SUSSEX TECHNICAL SCHOOL DISTRICT | ) DEMANDED |
| BOARD OF EDUCATION, SANDRA WALLS- | ) |
| CULOTTA, individually, and in her official | ) E-FILE |
| capacity, and STEVEN HUBER, individually, and | ) |
| in his official capacity, | ) |
| | ) |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

I, William L. Doerler, do hereby certify that on this 3rd day of October, 2006, **Defendants' Reply Brief in Support of Their Renewed Motion to Dismiss or, In the Alternative, Motion for A Motion for a More Definite Statement** was served upon the following via electronic filing and/or regular mail:

Brian F. Dolan, Esquire
Stumpf, Vickers & Sandy, P.A.
8 West Market Street
Georgetown, DE 19947
*Attorney for Plaintiff*

                                       WHITE and WILLIAMS LLP

                                           /s/ William L. Doerler
                                       WILLIAM L. DOERLER (Bar I.D. 3627)
                                       824 North Market Street, Suite 902
                                       P.O. Box 709
                                       Wilmington, DE 19899-0709
                                       (302) 467-4501
                                       *Attorney for Defendants*