# EXHIBIT A.

DOCS_DE 86103v1

Westlaw.

Not Reported in A.2d                                                                                         Page 1
Not Reported in A.2d, 1996 WL 769331
(Cite as: Not Reported in A.2d)

H
Not Reported in A.2d, 1996 WL 769331
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Delaware.
Caroline P. AYRES, Plaintiff,
v.
JACOBS & CRUMPLAR, P.A.; Robert Jacobs, individually and as agent/senior partner; and Thomas C. Crumplar, individually and as agent/senior partner, Defendants.
No. 96C-07-258-WTQ.

Submitted: Nov. 6, 1996.
Decided: Dec. 31, 1996.

Caroline P. Ayres, pro se, Wilmington, Delaware.
Thomas Stephen Neuberger, Thomas S. Neuberger, P.A., Wilmington, Delaware, Attorney for Defendants.

*Defendants' Motion for Summary Judgment-GRANTED in part, DENIED without prejudice in part*

QUILLEN, J.
*1 The following is the Court's decision on Defendants' Motion for Summary Judgment. For the reasons herein stated, Defendants' Motion is GRANTED in part and DENIED without prejudice in part.

*A. Facts*

This Court is the third court which thus far has had occasion to touch upon the facts and allegations pressed forth in this case. The facts and allegations are not new, but the federal and state actions have overlapped, so the Court will attempt to unravel this tangled web. From the outset, it is clear that the only undisputed facts concerning the substance of the federal and state complaints are that Defendant Jacobs & Crumplar, P.A. hired Plaintiff Caroline Ayres ("Ayres"), an African-American woman, as an associate in December 1988, and that she worked for Jacobs & Cmmplar, P.A. until August 1993. The intervening factual allegations are made by Ayres. According to Ayres, Robert Jacobs ("Jacobs") and Thomas Crumplar ("Crumplar") at the time of her hiring promised her that she would be "promoted" from associate to partner in two or three years, if her work has satisfactory. On at least two occasions, in January 1991 and March 1992, Ayres claims that Defendants Jacobs and Crumplar told her that her work was satisfactory and qualified her for partnership. It was not until January 1993, however, that she says defendants told her that the firm had decided to offer her membership as a partner, but that the offer would be announced in August 1993. Ayres says she accepted the promotion at the January meeting. In July of that same year, however, defendants held a meeting with Ayres in which they told plaintiff that she would not be promoted to partner and would instead be discharged on the ground that she was incapable of trying a case by herself.

On December 7, 1994, Ayres filed a *pro se* complaint in the federal District Court for the District of Delaware, in which she alleged a veritable host of unlawful activity by Jacobs & Crumplar, P.A., Robert Jacobs, Thomas Crumplar, and Douglas Canfield, FN1 including racial and gender discrimination, assault and battery, retaliatory discharge, breach of implied covenant of good faith and fair dealing, breaches of contract, fraud in the inducement, economic duress, malicious conspiracy, defamation, wrongful termination, and the intentional and negligent infliction of emotional distress. The District Court issued a scheduling order on February 2, 1995. Discovery was scheduled over seven months until stayed by the District Court on September 19, 1995 in order to consider the motion to dismiss. Plaintiff undertook little discovery, filing one set of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

interrogatories which was later withdrawn. The federal case docket reveals that over this seven month period Ayres initiated no requests for documents, took no depositions, never obtained any experts, and never served any subpoenas for records. *See* Defendants' App. at A47-A56, Docket No. 6; Defendants' Mot. to Stay Disc. at 2, Docket No. 5. The District Court found, in describing the pace at which plaintiff pursued her cause of action, that she "stonewalled quite a bit in this case." *See* Tr. of Proceedings before Latchum, J., *reproduced in* Defendants' App. at A55, Docket No. 6.

*2 The District Court dismissed the complaint and entered judgment in favor of defendants on the ground of deficient service of process. Ayres had failed to obtain the District Court Clerk's signature on the summonses and have the seal of the court affixed, as required by Rule 4 of the Federal Rules of Civil Procedure. She claimed, instead, that " technical niceties of service of process" should be overlooked. *Ayres v. Jacobs & Crumplar, P.A.*, D. Del., CA. No. 94-658, Robinson, J., 1995 U.S. Dist. LEXIS 17712 at *4 (Nov. 25, 1995). The District Court found that Ayres failed to demonstrate good cause for her failure to comply with the federal rules, and, moreover, that "plaintiff has exhibited flagrant disregard for the rules." *Id.* at *11. Having received ample opportunity to correct her failure within the 120 day period as required by the federal rules, she did not do so. *Id.*

Ayres filed a timely appeal with the Third Circuit Court of Appeals. While a decision from the Third Circuit was pending, Ayres filed this action in Superior Court on July 25, 1996. Her state complaint dropped the gender discrimination charge and now numbers some fifteen counts, in roman numerals "I" through "XVII," skipping "VI" and " XII." A timely answer was filed by defendants. On August 26, 1996, defendants filed a Motion to Stay Discovery, which was granted by this Court on September 19, 1996 (Docket No. 9). They filed the present Motion on September 5, 1996. Before the scheduled date for oral arguments on this Motion, the Third Circuit Court of Appeals issued its decision on Ayres' appeal from the District Court's dismissal. *Ayres v. Jacobs & Crumplar, P.A.*, 3d Cir., 99 F.3d 565 (1996). In affirming the District Court, the Circuit Court found that the District Court did not abuse its discretion in holding that there did not exist good cause for failure to effect service within the 120 day period. *Id.* at 658. The Circuit Court also found that the unsigned summons did not confer personal jurisdiction over the defendants, and that defendants did not waive the defective service. *Id.* at 570.

In the present Motion, defendants argue that all of the counts in plaintiff's Complaint may be dismissed. They assert that Counts I-V, VII, IX, X, XI, XVI, and XVII are personal injury claims and therefore barred by a two year statute of limitations, while Counts VII, VIII, XIII, XIV, and XV are contract-based claims and are barred by the Statute of Frauds and the at-will doctrine of employment. Plaintiff disputes that any of the counts should be dismissed.

*B. The Standard for Summary Judgment*

When considering a motion for summary judgment under Superior Court Civil Rule 56, FN2 the Court's function is to examine the record to determine whether genuine issues of material fact exist. *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, Del.Super., 312 A.2d 322, 325 (1973). If, after viewing the record in a light most favorable to the non-moving party, the Court finds there are no genuine issues of material fact, summary judgment is appropriate. *Id.* The Court's decision must be based only on the record presented, including all pleadings, affidavits, depositions, admissions, and answers to interrogatories, not on what evidence is "potentially possible." *Rochester v. Katalan*, Del.Supr., 320 A.2d 704 (1974). All reasonable inferences must be drawn in favor of the non-moving party. *Sweetman v. Stescon Indus.*, Del.Super., 389 A.2d 1319 (1978). Summary judgment will not be granted if the record indicates that a material fact is in dispute or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances. *Ebersole v. Lowengrub*, Del.Supr., 180 A.2d 467 (1962).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*C. Counts I-IV-Civil Rights Violations*

*3 The first four counts of the Complaint allege a variety of racially discriminatory acts by defendants, all of which culminate in plaintiffs invocation of 42 U.S.C. § 1981 as the jurisdictional basis for these counts. Section 1981 is one of the provisions within Title 42 that prohibits racial discrimination. In their Motion, defendants assert that, because the last wrongful act which allegedly occurred took place no later than August 30, 1993, the date of plaintiff's termination, Counts I-IV are time-barred because plaintiff failed to file her cause of action within the two-year statute of limitations for § 1981 claims.

In opposition, plaintiff raises three issues. Asserting there is no state precedent, plaintiff argues that this State's interpretation of the statute of limitations with regard to § 1981 claims need not be consistent with federal court interpretations. The second issue argued is that this State's statute of limitations for personal injuries is limited to injuries accompanied by force. The third is that the period of limitations in Delaware for breaches of employment contracts is three years. Arguing from these premises, plaintiff asserts that since she is seeking to recover for injuries resulting from a breach of contract, rather than an injury accompanied by force, the Court must apply Delaware's three year statute of limitations in order to be consistent with the State's intent to apply § 8119 only to personal injuries involving force.

There are several fatal errors in plaintiff's arguments. With regard to the first and third premises, it is true that § 1981 does not contain any express statute of limitations and that our state courts have apparently never ruled on the issue. It is equally true that the statute of limitations on actions for breach of contract are three years. See 10 *Del. C.* § 8106. In Delaware, however, the federal courts, consistent with the general trend, have determined that § 1981 claims are most closely analogous to suits for personal injuries and are therefore governed by the two-year statute of limitations on personal injury actions in 10 *Del. C.* § 8119. See *Cuffy v. Getty Ref & Mktg. Co.,* D. Del., 648 F.Supp. 802, 807 (1986). See also *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 660-62 (1987) (Pennsylvania); *Runyon v. McCrary,* 427 U.S. 160, 181-82 (1976) (Virginia); *Demery v. City of Youngstown,* 6th Cir., 818 F.2d 1257, 1260 (1987) (Ohio); *Ortiz v. Morgenthau,* S.D. N.Y., 772 F.Supp. 1430, 1432, *aff'd,* 962 F.2d 4 (1991) (New York); *Van Pool v. City and County of San Francisco,* N.D. Cal., 752 F.Supp. 915, 925, *aff'd,* 966 F.2d 503 (1990) (California).

Notwithstanding the holding of the federal District Court in Delaware, the state courts have not ruled on whether 10 *Del. C.* § 8119 's two-year statute of limitation applies to § 1981 claims. As the Court noted at oral argument, however, it would be " screwy" to have our state court interpret a statute of limitations for a *federal* statute differently than the federal court in our state. Delaware courts have followed the interpretation of the federal courts with regard to § 1983 and applied the statute of limitations applicable to personal injury actions. *Marker v. Talley,* Del.Supr., 502 A.2d 972, 975-76 (1985); *Vanaman v. Palmer,* Del.Super., 506 A.2d 190, 191 (1986). This is consistent with the United States Supreme Court's holding in *Wilson v. Garcia* that a single statute of limitations should govern all suits under § 1983, and that since claims under § 1983 are in essence claims for personal injuries, the state statutes of limitations applicable to personal injuries should control. 471 U.S. 261, 276-79 (1985).

*4 More importantly, the United States Supreme Court, in the *Goodman* decision cited above, expressly approved the extension of *Wilson's* § 1983 ruling to § 1981. In so holding, the high court rejected an argument by appellants identical to the one advanced by Ayres here.

> [Appellant's] submission is that § 1981 deals primarily with economic rights, more specifically the execution and enforcement of contracts, and that the appropriate limitations period to borrow is the one applicable to suits for intereference with contractual rights, which in Pennsylvania was six years.
> The Court of Appeals properly rejected this submission. Section 1981 has a much broader focus than contractual rights. The section speaks not only of personal rights to contract, but

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                    Page 4
Not Reported in A.2d, 1996 WL 769331
(Cite as: Not Reported in A.2d)

> personal rights to sue, to testify, and to equal rights under all laws for the security of persons and property; and all persons are to be subject to like punishments, taxes, and burdens of every kind .... Insofar as it deals with contracts, it declares the personal right to make and enforce contracts, a right, as the section has been construed, that may not be interfered with on racial grounds. The provision asserts, in effect, that competence and capacity to contract shall not depend upon race. It is thus part of a federal law barring racial discrimination, which, as the Court of Appeals said, is a fundamental injury to the individual rights of a person.... *Wilson* 's characterization of § 1983 claims is thus equally appropriate here. That § 1981 has far-reaching economic consequences does not change this conclusion.

*Goodman,* 482 U.S. at 661.

Although the United States Supreme Court and the District Court of Delaware have endorsed use of personal injury statutes of limitations with respect to § 1981, plaintiff argues that our personal injury statute of limitations is inapplicable to this case because it is limited to personal injuries accompanied by force. Such an assertion ignores both the text of the statute and settled law in this jurisdiction. Title 10, Section 8119 of the Delaware Code states the following:

> No action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained....

This section covers *all* actions for the recovery of damages upon a claim for personal injuries, whatever the nature of the personal injury and " regardless of the theoretical basis underlying the requested remedy." *Johnson v. Hockessin Tractor, Inc.,* Del.Supr., 420 A.2d 154, 156 (1980). It is the plaintiff's "characterization of her injuries, rather than the nature of her underlying cause (or form of action) or its theoretical basis, [that] is controlling." *Cole v. Delaware League for Planned Parenthood,* Del.Supr., 530 A.2d 1119, 1123 (1987). *See also Patterson v. Vincent,* Del.Super., 61 A.2d 416, 418 (1948) (construing Rev.Code 1935, § 5133, the predecessor to 10 *Del. C.* § 8119). It is not limited to personal injuries caused in any particular manner.

*Natale v. Upjohn Co.,* 3d Cir., 356 F.2d 590, 590-91 n. 1 (1966). In fact, the cases Ayres cites in support of her argument address 10 *Del. C.* §§ 8106 and 8106A , which defined, in part, the statute of limitations in civil actions under the prior enactments of the Code, and which are now codified at Sections 8106 and 8107. *See Hood v. McConemy,* D. Del., 53 F.R.D. 435, 443-44 (1971) ; *Bradford Inc. v. Travelers Indem. Co.,* Del.Supr., 301 A.2d 519, 524 (1972). It is well-settled today that § 8119 's two-year limitation governs in all cases where recovery is sought for personal injuries, superseding § 8106's three-year limitation in cases in which both could be deemed applicable. *Nationwide Ins. Co. v. Rothermel,* Del.Supr., 385 A.2d 691,693 (1978) ; *Heritage v. Board of Educ.,* D. Del., 447 F.Supp. 1240, 1242-43 (1978). Plaintiffs argument in this regard, to the extent that it seeks to make use of either Section 8106 or 8107 of Title 10, ignores the plainly settled case law of this jurisdiction: all personal injury suits have a two-year statute of limitations. *See also* Parts F and G, *infra.*

*5 In light of the United States Supreme Court's apparent approval of applying personal injury statutes of limitation to § 1981 claims, of the federal District Court's application of the two year limitation of 10 *Del. C.* § 8119 to § 1981 claims, and of the interest in maintaining a uniform application of § 1981 in Delaware's federal and state courts, this Court holds that 10 *Del. C.* § 8119 is applicable to all actions brought in this Court pursuant to 42 U.S.C. § 1981. Since all of the acts alleged in Counts I-IV occurred not later than August 30, 1993, and this action was not filed until July 25, 1996, barring some other avenue of relief, Counts I-IV are time-barred by § 8119.

### D. Savings Clause

Perhaps recognizing that she would have an uphill battle in convincing the Court not to apply 10 *Del. C.* § 8119 to 42 U.S.C. § 1981 claims, Ayres argues that even if there is a two-year statute of limitation, the one-year savings clause of 10 *Del. C.* § 8118 would operate to allow her cause of action to survive. The statute is designed to mitigate

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                              Page 5
Not Reported in A.2d, 1996 WL 769331
(Cite as: Not Reported in A.2d)

against the harsh result of the statute of limitations defense.

> If in any action duly commenced within the time limited therefor in this chapter, the writ fails of a sufficient service or return by any unavoidable accident, or by any default or neglect of the officer to whom it is committed; or if the writ is abated, or the action otherwise avoided or defeated by the death of any party thereto, or for any matter of form; or if after a verdict for the plaintiff, the judgment shall not be given for the plaintiff because of some error appearing on the face of the record which vitiates the proceedings; or if a judgment for the plaintiff is reversed on appeal or a writ of error; a new action may be commenced, for the same cause of action, at any time within one year after the abatement or other determination of the original action, or after the reversal of the judgment therein.

10 *Del. C.* § 8118(a). So long as the plaintiff meets the conditions of the statute, she has the absolute right to bring a new action, without leave of court. *Gosnell v. Whetsel,* Del.Supr., 198 A.2d 924, 927 (1964). The commencement of a suit in Delaware's federal court is equivalent to one brought in state court for purposes of applying this statute. *Frombach v. Gilbert Assoc.,* Del.Supr., 236 A.2d 363, 365 (1967), *cert. denied,* 391 U.S. 906 (1968) (assuming without deciding); *Howmet Corp. v. City of Wilmington,* Del.Super., 285 A.2d 423, 426 (1971).

Ayres asserts that § 8118 is applicable to her case because "the original action was timely filed in Federal Court, but was dismissed without prejudice for defective service." Such description may accurately describe the result's legal effect, *see* F.R.C.P. 4(m), but it is not very helpful in determining if this "defective service" case fits within the statutory categories of "any unavoidable accident or by any default or neglect of the officer to whom it is committed...." Notwithstanding its remedial purpose, the Court does not believe that the savings clause applies in this case. Section 8118 generally applies to defects caused by unavoidable accident or by the default or negligence of some third party, usually the officer to whom service is entrusted. *Giles v. Rodolico,* Del.Supr., 140 A.2d 263, 267 (1958) ; *Bros v. Wilkins,* Del.Super., 134 A.2d 636, 638 (1957). Section 8118 applies when a party plaintiff, *through no fault of her own,* finds that her cause of action is barred by the statute of limitation because of a lapse of time. *Giles,* 140 A.2d at 267; *Leary v. Saunders,* Del.Super., 319 A.2d 44, 46-47 (1974).

*6 Here, the failure in service was the fault of no one but Ayres herself. Neither the Circuit nor District Courts found excusable neglect or good cause. Moreover, the District Court found that plaintiff had exhibited a "flagrant disregard of the rules." The Court Clerk for the District Court put Ayres on notice that she had a defect in service, yet she failed to correct it. Her only explanation for such failure was that she did not think it necessary to observe such "technical niceties" of service. Such actions do not meet the letter or spirit of 10 *Del. C.* § 8118. Consistent with the case law of this jurisdiction, the Court holds that plaintiff has not persuaded this Court that the failure of effective service was the fault of anyone but herself, and, therefore, the savings clause for lack of sufficient service does not operate to save Counts I-IV.

*E. Continuing Violation Doctrine*

Plaintiff's next attempt to save her racial discrimination causes of action involves the continuing violation doctrine. The general theory behind the doctrine is that a plaintiff may recover for acts barred by the applicable limiting statute if she can show a "continuing violation." *Jones v. Merchant Nat'l Bank & Trust Co.,* 7th Cir., 42 F.3d 1054, 1058 (1994). FN3 A continuing violation " is occasioned by continual unlawful acts, not by continual ill effects from an original violation." *Ward v. Caulk,* 9th Cir., 650 F.2d 1144, 1147 (1981). *See also Sandutch v. Muroski,* 3d Cir., 684 F.2d 252, 254 (1982) (citing *Ward* ). In other words, there must be a present violation of which to complain. *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558 (1971). The doctrine is applicable to claims brought pursuant to 42 U.S.C. § 1981. *Berry v. E.I. dupont de Nemours & Co.,* D. Del., 625 F.Supp. 1364, 1376 (1985).

Ayres argues that the continuing violation doctrine

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                Page 6
Not Reported in A.2d, 1996 WL 769331
(Cite as: Not Reported in A.2d)

is applicable to her case because defendants continue to discriminate against her with regard to her pension and health insurance benefits after her termination in August 1993. The Court finds her argument unpersuasive. By way of further explanation, it is useful to refer to the *Jones v. Merchant National Bank & Trust Company* decision, in which the Seventh Circuit cogently outlined three different theories upon which the continuing violation doctrine may rest.

> The first theory encompasses decisions, usually relating to hiring and promotions, where the employer's decision-making process takes place over a period of time, making it difficult to determine the actual date of the allegedly discriminatory act.
> The second continuing violation theory involves an employer's express, openly espoused policy that is alleged to be discriminatory....
> Finally, a plaintiff can show a continuing violation where an employer covertly follows a practice of discrimination over a period of time. In such a case, the plaintiff can only realize that she is a victim of discrimination after a series of discrete acts has occurred. The limitations period begins to run when the plaintiff gains such insight.... However, if the plaintiff knew, or " with the exercise of reasonable diligence would have known after each act that it was discriminatory and had harmed" her, she must sue over that act within the relevant statute of limitations.

*7 *Jones v. Merchant Nat'l Bank & Trust Co.*, 42 F.3d at 1058. Neither of the first two theories applies here, since Counts I-IV cite specific instances of allegedly discriminatory conduct and because Ayres does not claim that Jacobs & Crumplar, P.A. had an express or clearly conveyed policy of some sort that discriminated against African-Americans. Plaintiff's Complaint must proceed on the third theory.

The Seventh Circuit's analysis with regard to the third theory is particularly persuasive and quite fatal to plaintiff's cause of action in Counts I-IV. There is nothing in the record to suggest that she did not or could not know of the alleged acts of discrimination until after they occurred. There is no doubt that Ayres knew or had reason to know at the date of her termination the significance of the unlawful acts she alleges against defendants. Ayres admits in her Complaint that the offensive statements caused her much pain and distress at the time that they allegedly were made. In short, even assuming, *arguendo,* that her health benefits and pension claims constitute a continuing offense, a highly doubtful proposition, given her discharge from employment, they bear no relation to the offenses alleged in Counts I-IV. Since the limitations period begins to run when the plaintiff gains the insight that she is a victim of discrimination, it appears that the period in this case began to run no later than August 30, 1993, the date of the termination of her employment. Since neither the continuing violation doctrine nor the savings clause discussed in Part E, *supra,* does not sustain Counts I-IV of Ayres' Complaint, these counts consequently are time-barred by the application of 10 *Del. C.* § 8119, and summary judgment is appropriate and granted.
IT IS SO ORDERED.

*F. Counts XI, XVI, & XVII-Defamation, Intentional & Negligent Infliction of Emotional Distress*

Counts XI, XVI, & XVII allege various defamatory acts and other acts that either intentionally or negligently caused Ayres emotional distress. Defendants argue that, because these claims seek damages for personal injuries, they must be brought within two years of the date of injury. 10 *Del. C.* § 8119. Defamation and the intentional and negligent infliction of emotional distress are classic examples of the types of personal injuries covered by § 8119. *See, generally, DeMoss v. News-Journal Co.,* Del.Supr., 408 A.2d 944, 944-45 (1979) (holding that the two year statute of limitations applies to actions for defamation); *Lankford v. Scala,* Del.Super., CA. No. 94C-04-023, Lee, J., 1995 Del.Super. LEXIS 115 at *14 (Feb. 28, 1995) (applying the two-year statute of limitations to the intentional infliction of emotional distress); *Avallone v. Wilmington Medical Ctr., Inc.,* D. Del., 553 F.Supp. 931, 937 (1982). Plaintiff does not dispute this. Instead, she asserts that these counts are not time-barred because these offenses have continued up to the present day. In opposing the Motion, she alleges in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                 Page 7
Not Reported in A.2d, 1996 WL 769331
(Cite as: Not Reported in A.2d)

her response that defendants have made additional defamatory statements in 1996. She cites Exhibit A of her response, her own affidavit, to support her assertion.

*8 There are several problems with plaintiff's argument. Defense counsel, during plaintiff's deposition, asked her if she had any additional evidence regarding her defamation claim. To that point in time, the only testimony Ayres had given concerned defamatory statements allegedly occurring prior to her termination. Plaintiff indicated that she did not have any such additional evidence, even though there were seven months of discovery, in the federal gestation of this case, in which she could conceivably have obtained it.
Instead, Ayres now alleges that there were new defamatory acts. She submits an affidavit, dated the same day and submitted at the same time as her response, 10:49 p.m. the night before oral argument. The Court assumes she intends for this document to bolster the assertions in that response.
The affidavit is not formally notarized in the traditional form, as it contains an illegible signature by the supposedly-notarizing party with no name printed beneath the signature to identify said party or the party's office. Although the Court has some concerns as to the form of the affidavit, the Court will, in light of the fact that plaintiff is a member of the Bar of this State, assume for purposes of this Motion that the affidavit is not invalid for reasons of form.

The Court does find, however, that the affidavit is invalid because it does not meet the requirements of Superior Court Civil Rule 56(e).

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

Super. Ct. Civ. R. 56(e). The affidavit only alleges that one of the defendants contacted her former husband and accused her of committing adultery while still married. Insofar as it concerns Counts XI, XVI, and XVII, the affidavit is not based on personal knowledge. To be based on personal knowledge, plaintiff would have to have been present at the time the conversation took place and actually heard the exchange herself, which she evidently did not. If it were based on personal knowledge, plaintiff should have been a little more specific as to when this occurred, instead of saying " in or about 1996." *See, generally, Monsanto Co. v. Aetna Casualty & Surety Co.,* Del.Super., C.A. No. 88C-JA-1 18, Ridgely, P.J., 1993 Del.Super. LEXIS 462 at *7-8 (Dec. 21, 1993) (holding ineffective an affidavit whose declarant was not competent to testify to the matters therein).

The affidavit is defective because it does not set forth such facts as would be admissible in evidence. The allegations in the affidavit lack foundational proof. They are hearsay not within a recognized exception and consequently render the affidavit ineffective. *See, e.g., Continental Cas. Co. v. Ocean Accident & Guar. Corp.,* Del.Super., 209 A.2d 743, 747 (1965) (holding that on a request for summary judgment a court need not give effect to an affidavit based on hearsay). Ayres is attempting to offer what is, at best, second-hand information in an attempt to prove the truth of the matter asserted. Delaware Rule of Evidence 802 and Superior Court Civil Rule 56(e) prohibit this.

*9 The Court cannot accept the allegations made in the Ayres affidavit. Since Ayres has failed to produce any admissible evidence to contradict her admissions made during deposition, the Court finds that the claims for defamation and the intentional and negligent infliction of emotional distress in Counts XI, XVI, and XVII are, like Counts I-IV, time-barred by 10 *Del. C.* § 8119. Summary judgment is therefore granted. IT IS SO ORDERED.

*G. Counts V, IX, & X-Fraud in the Inducement, Economic Duress, and Malicious Conspiracy*

Ayres also alleges that defendants' conduct constituted fraud in the inducement (Count V), economic duress (Count IX), and malicious conspiracy (Count X). She alleges, with respect to Count V, that defendants fraudulently induced her to undertake and remain in employment with Jacobs & Cumplar, P.A. by misrepresenting to Ayres that she would be offered partnership when they never

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                            Page 8
Not Reported in A.2d, 1996 WL 769331
(Cite as: Not Reported in A.2d)

had any intention of extending such an offer. As a result of defendants' conduct, Ayres alleges that she has suffered and will continue to suffer injuries, including substantial economic loss, pain, and suffering. With respect to Count IX, plaintiff alleges that that defendants intentionally and maliciously caused her "economic duress" because they tied her economic "gain and survival" to the receipt of "unfair, harassing, and discriminatory" treatment. As a result of such conduct, Ayres suffered embarrassment, anxiety, economic loss, humiliation, extreme emotional distress, and pain and suffering. Finally, Count X alleges that defendants intentionally and maliciously engaged in a conspiracy to bring about plaintiffs "disgrace, humiliation and ruin" in causing her wrongful discharge and depriving her of her "right to employment." As a result of the alleged conduct, Ayres suffered embarrassment, anxiety, stress, pain and suffering, extreme emotional distress, and substantial economic loss.

Counts V, IX, and X all appear to be personal injury claims. However these counts may be worded, they essentially sound in tort and assert personal injury types of damages. The two-year statute of limitations of 10 *Del. C.* § 8119 consequently applies. *See Cole v. Delaware League for Planned Parenthood,* Del.Supr., 530 A.2d 1119, 1123 (1987) (holding, *inter alia,* that § 8119 applies when plaintiff seeks injuries to the person rather than to property). Since all of these alleged offenses occurred during plaintiff's employment with Jacobs & Crumplar, P.A., the statute of limitations began to run no later than the last day of her employment with the firm, August 30, 1993. Since this action was filed more than two years after that date, these counts are barred by the statute of limitations of 10 *Del. C.* § 8119. Summary judgment is granted. IT IS SO ORDERED.

*H. Counts VIII, XIII, XIV, & XV Breach of Contract Count VII-Breach of the Implied Covenant of Good Faith and Fair Dealing*

In addition to the foregoing alleged offenses, Ayres also asserts that defendants breached a variety of contractual obligations with her. Count VIII alleges breach of contract for employment; Count XIII alleges breach of contract for promotion; Count XIV alleges breach of contract for partnership; and Count XV alleges a claim for a wrongful/bad faith termination. Both parties during summary judgment proceedings have argued all four counts together, and have treated them as though they were a single contractual claim. In addition, Ayres has included Count VII, a separately-alleged breach of the covenant of good faith and fair dealing.

*10 The defendants have raised the defense of the Statute of Frauds, 6 *Del. C.* § 2714. In pertinent part, the Statute of Frauds requires certain formalities in the execution of contracts that come within its provisions:

> *No action shall be brought to charge any person* upon any agreement made upon consideration of marriage, or upon any contract or sale of lands, tenements, or hereditaments, or any interest in or concerning them, or *upon any agreement that is not to be performed within the space of one year from the making thereof,* or to charge any person to answer for the debt, default, or miscarriage, of another, in any sum of the value of $25 and upwards, *unless the contract is reduced to writing, or some memorandum, or notes thereof are signed by the party to be charged therewith,* or some other person thereunto by him lawfully authorized in writing.

6 *Del. C.* § 2714(a) (emphasis added). The section does not apply to contracts, including those of indefinite duration, that can by any possibility be performed within one year, even if such performance is highly unlikely. In other words, there must be no possibility of performance within one year. *Haveg Corp. v. Guyer,* Del.Supr., 211 A.2d 910, 912 (1965).

Notwithstanding the strictures of the statute, there are two exceptions. The first is written into subsection (a) of § 2714. A collection of several writings, only one of which contains the signature of the party to be charged, can satisfy the Statute of Frauds. *Abramson v. Delrose, Inc.,* D. Del., 132 F.Supp. 440, 442 (1955). *See also Hessler, Inc. v. Farrell,* Del.Supr., 226 A.2d 708, 712 (1967). "

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                           Page 9
Not Reported in A.2d, 1996 WL 769331
(Cite as: Not Reported in A.2d)

The memorandum may consist of several writings if one of the writings is signed and the writing in the circumstances clearly indicate that they relate to the same transaction." *Restatement (Second) of Contracts* § 132 (1981). For an employment contract, the writings must identify, with some moderate degree of precision, such items as subject matter, duration, job description, and hours of employment. *Lindsey v. M.A. Zeccola & Sons, Inc.,* 3d Cir., 26 F.3d 1236, 1239 (1994).

The second "well-rooted" exception to the " absolute command" of the statute is the equitably-derived principle that a partly-performed oral contract may be enforced by an order for specific performance upon proof by clear and convincing evidence of actual part performance. *Shepherd v. Mazzetti,* Del.Supr., 545 A.2d 621, 623 (1988). Part performance acts as a substitute for a writing on the theory that it constitutes substantial evidence that a contract actually existed. *Quillen v. Sayers,* Del.Supr., 482 A.2d 744, 747 (1984).
There is, however, some authority for the proposition that the partial performance exception does not apply to employment contracts with fixed durations exceeding one year. FN4

In defendants' Motion, in addition to their aforementioned defense based on the Statute of Frauds, defendants assert that plaintiff has failed to overcome the presumption that employment relationships are at-will, meaning that an employee could quit or be fired at any time. For her part, Ayres responds by arguing that defendants converted her at-will employment to one terminable only for cause when they promised her that she would become a partner in two of three years if her work was satisfactory. This later matures, it is alleged, into an agreement for partnership.

*11 The Court's view is that it seems desirable to inquire more thoroughly into the facts to clarify the application of law to the circumstances of the contract claims. While the Court has some doubt that there is independent legal merit in any of the counts other than Count XIV, it seems wise to withhold judgment on Counts VII, VIII, and XIII, since they all serve to support Count XIV, at least by way of pleading evidentiary background. In particular, it is not clear to the Court precisely what happened in the January 1993 meeting and what conversations, actions, and documentation preceeded and followed that alleged conversation. But the plaintiff does have a difficult row to hoe and some preliminary exploration might be helpful.

As to the question of at-will status, Delaware does have a strong and "heavy presumption that a contract for employment, unless otherwise expressly stated, is at-will in nature, with duration indefinite." *Merrill v. Crothall-American, Inc.,* Del.Supr., 606 A.2d 96, 102 (1992). This is an old and established principle of Delaware law. *See, e.g., Greer v. Arlington Mills Mf'g Co.,* Del.Super., 43 A. 609, 610 (1899). Statements and conduct by employers can alter the at-will status of the employment relationship, provided such a change is stated with a reasonable degree of specificity. *Merrill,* 606 A.2d at 102. *See also Peterson v. Beebe Medical Center, Inc.,* Del.Supr., No. 565, 1992, Moore, J. (March 24, 1993) (ORDER) at 3-4 (holding that employer's statement to employee that "we trust you will be here until you retire" did not alter at-will status); *Edwards v. Lutheran Social Servs. of Dover, Inc.,* Del.Super., C.A. No. 83C-JN-22, Ridgely, J. (April 8, 1987) (ORDER) at 4 (holding that employer's expressing hope that hiree would be working with the agency for a long time did not alter at-will status). At Ayres' deposition, she said she did not consider herself bound to work for a fixed term, and she actively sought other employment while working for Jacobs & Crumplar, P.A. *Cf. Heideck v. Kent General Hosp.,* Del.Supr., 446 A.2d 1095, 1096 (1982) (holding that similar statements by the plaintiff in that case pointed to at-will status).

Delaware recognizes a limited implied covenant of good faith and fair dealing as an exception to the weighty presumption of the doctrine of at-will employment. *E.I. dupont de Nemours & Co. v. Pressman,* Del.Supr., 679 A.2d 436 (1996). Although Ayres addressed the covenant in a separate count of her Complaint (Count VII), the covenant is inextricably related to the contract for employment. *Id.* at 440.

In the *Pressman* decision, the Delaware Supreme

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                              Page 10
Not Reported in A.2d, 1996 WL 769331
(Cite as: Not Reported in A.2d)

Court examined the implied covenant and its relationship to the doctrine of at-will employment. The Supreme Court stated that the covenant constrains the at-will doctrine in very limited categories; finding, in essence, three exceptions to the doctrine. The first is a public policy exception, whether conceived of independently as a tort or arising from the covenant itself. This exception requires a clear mandate of public policy, a public interest recognized by some legislative, administrative, or judicial authority. *Id.* at 441-42 (citing *Shearin v. E.F Hutton Group, Inc.,* Del. Ch., 652 A.2d 578, 587-89 (1994)). The second occurs when the employer misrepresents "some important fact, most often the employer's present intentions, and the employee relies thereon either to accept a new position or remain in a present one." *Id.* at 442.

The third exception applies "when an employer uses its 'superior bargaining power [to] depriv[e] the employee of compensation that is clearly identifiable and is related to the employee's past service." *Id.* (quoting *Magnan v. Anaconda Indus., Inc.,* Conn.Supr., 479 A.2d 781, 788 (1984)).

*12 In some respects, Subparts (a)-(c) of Paragraph 59 of Count VII of the Complaint, plaintiff's claim for breach of the covenant of good faith and fair dealing, merely echoes her discrimination claims, already dismissed by this opinion. It would obviously destroy the public policy of the limitations period on the tort claims to permit them to be restated as implied common law contract claims. FN5 Personal injuries are governed by a two-year statute of limitations. 10 *Del. C.* § 8119. Actions based upon a claim for wrongful termination of an employment contract are governed by the three year statute of limitations in 10 *Del. C.* § 8106, *Goldman v. Braunstein 's, Inc.,* Del.Supr., 240 A.2d 577, 578 (1968), which apparently includes actions for breach of the implied covenant of good faith and fair dealing. *Shearin,* 652 A.2d at 589. Were this Court to recognize racial discrimination as an exception under the covenant, it would allow a plaintiff to escape the established two-year personal injury statute of limitations on racial discrimination claims in employment, e.g., § 1981 and § 1983 claims, simply by couching her allegations of racial discrimination in terms of a breach of an implied contractual obligation.

In particular, it would be counter-productive to recognize a broader common law exception to the at-will doctrine when there exist elaborate statutory schemes at both the federal and state levels that address this same public policy concern. *See* 42 U.S.C. §§ 1981-*et seq.;* 19 *Del. C.* §§ 710 -718. *See also Finch v. Hercules, Inc.,* D. Del., 809 F.Supp. 309, 312 (1992) (indicating same belief under the covenant in Delaware with regard to age discrimination); *Blum v. Witco Chem. Corp.,* 3d Cir., 829 F.2d 367, 377 (1987) (holding the same under the covenant in New Jersey with regard to age discrimination); *Bruffett v. Warner Comm., Inc.,* 3d Cir., 692 F.2d 910, 920 (1982) (holding the same under the covenant in Pennsylvania with regard to discrimination on the basis of disability).

Since both the federal and state governments have enacted statutory procedures for dealing with the type of racial discrimination alleged by Ayres, it seems neither desirable nor wise to upset the balance deliberately created by the federal and state anti-discrimination statutes as they have been construed. FN6 Therefore, Subparagraphs (a), (b), and (c) of Paragraph 59 of the Complaint are dismissed on summary judgment. IT IS SO ORDERED.

Plaintiff alleges that she performed all the stipulations, conditions, and agreements required of her in order to be offered partnership status. While the Court does not foreclose the other contract claims, it seems to the Court that the appropriate date of formation of this alleged contract for partnership was in January 1993, when defendants allegedly told plaintiff that they had decided to offer her a partnership interest in the firm and that they would announce the partnership in August 1993. while the prior relationship provides evidentiary background, this January 1993 date provides an allegation of a specific statement of intent and neither a Statute of Frauds nor a statute of limitations problem. The contract, if made in January, specifically called for performance to occur within seven months and is therefore not within the Statute of Frauds. Since a breach of contract of this nature is not a personal injury, its statute of limitations is three years, which plaintiff

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 1996 WL 769331
(Cite as: Not Reported in A.2d)

has met. *See* 10 *Del. C.* § 8106.

*13 In the absence of statutory defenses, the issue is whether an offer for partnership was made and accepted, and whether the resulting contract was breached, causing injury to plaintiff. Taking the facts in a light most favorable to the non-moving party, it appears that plaintiff has alleged sufficient facts which, if proven, would support a claim for breach of contract for partnership and injury to plaintiff. Discovery has been stayed pending the outcome of this Motion. There may be evidence which supports her allegation that an offer for partnership was made and accepted and resulted in a binding contract. Exhibits B and C to Ayres' response to this Motion are two electronic mail messages in which partnership is discussed. While the Court is troubled by the seeming lack of foundational proof for these electronic mail messages, it is not prepared to state, at this stage of the proceedings, that they are invalid, or that they do not raise the possibility that evidence to support her allegation could be found during discovery.

As for demonstrating injury, plaintiff alleges that she reasonably relied, to her detriment, upon defendants' statements at the January 1993 meeting. She offers Exhibit E, which appears to be a letter, dated July 27, 1993, from Ayres to Dean Michael Goldberg of the Widener University School of Law in which she tells Dean Goldberg that she is looking forward to teaching on an adjunct basis in the fall. She mentions having previously turned down an opportunity to teach at the school on a full-time basis because she was to become a partner with Jacobs & Crumplar, P.A. in August 1993. Like the electronic mail messages, the Court is concerned about the offer of proof here. This letter is neither the actual offer of employment from the law school nor her actual rejection. It is simply a letter in which she tells Dean Goldberg that such an offer was made. For purposes of summary judgment, however, the Court will accept that the letter at least raises the possibility that evidence regarding detrimental reliance may be found during discovery.

In light of the foregoing analysis, the Court will deny, without prejudice, defendants' Motion for Summary Judgment with respect to the contract claims. FN7 Should discovery subsequent to this decision make it apparent that there is no genuine issue of material fact with regard to this claim, defendants will be permitted to file a motion for summary judgment at a later time.

While the Court has let all of the contract claims stand, this decision, as the Court sees it, primarily permits Ayres to pursue her claim of breach of contract for partnership. The Court previously granted a Motion to Stay Discovery pending the outcome of this Motion for Summary Judgment. The stay will be lifted so as to permit the case to go forward on the remaining counts.

By way of conclusion, it appears to the Court, after a review of the record, a study of the applicable law, and upon further reflection on the arguments advanced by both parties, that it should make the following rulings as a matter of law: Defendants' Motion for Summary Judgment is hereby GRANTED with respect to Counts I-V, IX-XI, XVI, and XVII. IT IS SO ORDERED. Defendants' Motion for Summary Judgment is DENIED without prejudice with respect to Counts VII, VIII, and XIII-XV, except that it is GRANTED as to that portion of Count VII contained in Subparagraphs (a), (b), and (c) of Paragraph 59 of the Complaint. IT IS SO ORDERED. The stay of discovery is hereby lifted. IT IS SO ORDERED.

FN1. By stipulation of the parties, Mr. Canfield is no longer a party to the case.

FN2. Under Superior Court Civil Rule 12(b), a Motion to Dismiss for failure to state a claim upon which relief may be granted is converted to a Rule 56 Motion for Summary Judgment when defendant offers affidavits, depositions, and other matters outside of the pleadings, as defendants have done here. *See Schultz v. Delaware Trust Co.,* Del.Super., 360 A.2d 576, 578 (1976).

FN3. Delaware courts also apply the doctrine. *See, e.g., Hampden Pk. Prop. Owner's Ass'n v. Gramkow,* Del. Ch., C.A.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                          Page 12

Not Reported in A.2d, 1996 WL 769331
(Cite as: Not Reported in A.2d)

No. 1186, Berger, V.C., 1988 Del. Ch. LEXIS 91 (June 27, 1988) ; *Boney v. City of Dover*, C.A. No. 91C-05-189, Babiarz, J., 1994 Del.Super. LEXIS 412 (Jan. 25, 1994). There appears to be, however, no reported decision that explains the doctrine with respect to the statute of limitations.

FN4. The Third Circuit Court of Appeals has expressed concern that allowing partial performance in such a context would allow "any employee who claims an oral employment contract for a term in excess of one year to avoid the Statute of Frauds without written proof of the contract's duration." *Lindsey*, 26 F.3d at 1243. It is unnecessary in this case for the Court to decide whether partial performance applies in this context as a matter of state law, since, as will be shown, the Statute of Frauds does not apply to any of the contracts at issue.

FN5. *See, e.g., Cole*, 530 A.2d at 1123; *Johnson v. Hockessin Tractor, Inc.*, Del.Supr., 420 A.2d 154, 156 (1980) (holding that 10 *Del. C.* § 8119 applies whenever a plaintiff alleges a personal injury, regardless of the basis of the underlying remedy); *Heritage v. Board of Educ.*, D. Del., 447 F.Supp. 1240, 1242-43 (1978) (holding that the Delaware limitations scheme is based on the particular injury suffered, not on the type of action instituted).

FN6. The Court reaches this conclusion notwithstanding the Delaware Supreme Court's implicit approval of the public policy exception in *Monge v. Beebe Rubber Company*, N.H.Supr., 316 A.2d 549 (1974), in which the New Hampshire Supreme Court held that the employer breached the covenant when it terminated an employee for refusing to submit to her employer's sexual demands. *See Pressman*, 679 A.2d at 441-42. While the Delaware Supreme Court's implicit approval of the *Monge* decision gives

pause, in light of the available federal and state remedies for sexual harassment, it should be noted that the Supreme Court carefully noted the public policy exception could be "conceived of independently as a tort or as arising from the covenant...." This dual conception leaves open the issue of the statute of limitations as a second policy question and, in this Court's judgment, permits reliance, as the better choice, on the same two year limitations period.

FN7. So as to give the parties some guidance for proceedings subsequent to this decision, the Court notes that plaintiffs attempt to recover punitive damages for the breach of contract for partnership may not be permissible under Delaware law. *See Pressman*, 679 A.2d at 444-48.

Del.Super.,1996.
Ayres v. Jacobs & Crumplar, P.A.
Not Reported in A.2d, 1996 WL 769331

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.