IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DOROTHY HOULIHAN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 05-194-JJF |
| | : | |
| SUSSEX TECHNICAL SCHOOL DISTRICT, SUSSEX TECHNICAL SCHOOL DISTRICT BOARD OF EDUCATION, SANDRA WALLS-CULOTTA, individually, and in her official capacity, and STEVEN HUBER, individually, and in his official capacity, | : | |
| | : | |
| Defendants. | : | |

Robin R. Cockey, Esquire of COCKEY BRENNAN & MALONEY PC, Salisbury, Maryland.
Brian F. Dolan, Esquire of STUMPF, VICKERS & SANDY, P.A., Georgetown, Delaware.

Attorneys for Plaintiff.

John D. Balaguer, Esquire and William L. Doerler, Esquire of WHITE AND WILLIAMS LLP, Wilmington, Delaware.

Attorneys for Defendants.

O P I N I O N

November 16, 2006
Wilmington, Delaware

Farnan, District Judge.

Pending before the Court is Defendants' Renewed Motion To Dismiss For Failure To State A Claim Or, In The Alternative, Motion For A More Definite Statement (D.I. 24). For the reasons discussed, the Court will grant-in-part and deny-in-part Defendants' Renewed Motion.

**BACKGROUND**

**I.   Procedural Background**

Plaintiff filed the instant action against Defendants alleging claims of retaliation in violation of the Rehabilitation Act, 29 U.S.C. § 794(d), retaliation in violation of the First Amendment of the United States Constitution, and wrongful termination under Delaware law, in connection with Defendants' decision not to renew Plaintiff's employment contract. In response to Plaintiff's Complaint, Defendants filed a Motion To Dismiss For Failure To State A Claim Or, In The Alternative, Motion For A More Definite Statement.

Shortly thereafter, Defendants filed a Motion For A Stay Pending A Decision By The United States Supreme Court in Garcetti v. Ceballos, 361 F.3d 1168 (9th Cir. 2004), cert. granted, 125 S. Ct. 1395 (2005), a case relevant to Plaintiff's First Amendment retaliation claim. The Court granted Defendants' Motion For A Stay and denied with leave to renew Defendants' Motion To Dismiss.

1

On May 30, 2006, the Supreme Court issued its decision in Garcetti v. Ceballos, 126 S. Ct. 1951 (2006). On August 17, 2006, Defendants renewed their Motion To Dismiss, and the parties stipulated to a briefing schedule for the Motion. Briefing has been completed on the Motion, and therefore, it is ripe for the Court's review.

## II. Factual Background[1]

Plaintiff was employed as School Psychologist for the Sussex Technical High School (the "High School") in the Sussex Technical School District (the "School District") beginning on October 8, 2001. During the relevant time, Defendant Sandra Walls-Culotta was the Principal of the High School and Defendant Steven Huber was the Vice Principal and Supervisor of Special Education.

Plaintiff alleges that immediately upon assuming the position, she began to bring to the attention of the School District and Defendant Huber various incidents of the School District's noncompliance with the Individuals with Disabilities Education Act ("IDEA"). By September 2002, Plaintiff was asked to assume the additional position of Special Education Coordinator and to perform the duties of that position in addition to the duties of her position as School Psychologist.

---

[1] For purposes of adjudicating Defendants' Motion To Dismiss, the factual background of this action is derived from Plaintiff's Complaint. (D.I. 1).

2

Shortly thereafter, Plaintiff found that her dual positions conflicted with each other. Plaintiff believed the conflicting roles diluted her authority among the teaching staff and created repeated incidents of noncompliance and insubordination. As a result, Plaintiff asked to be relieved of her position as Special Education Coordinator, and Defendants complied with her request.

Plaintiff alleges that during her tenure as School Psychologist, she continued to bring instances of IDEA noncompliance to the attention of the School District. Plaintiff alleges that she was accused of being uncooperative, unfocused, dragging out meetings and undermining the High School's administration. Plaintiff alleges that, as of August 2003, Defendant Walls-Culotta rewrote her job description to prevent Plaintiff from speaking out on IDEA violations and directly addressing those violations with the alleged noncompliant staff member. According to her new job description, Plaintiff was required to direct any perceived IDEA violations directly to Defendant Walls-Culotta and/or Defendant Huber, who would then decide what, if any, actions should be taken.

Plaintiff alleges that her relationship with Defendant Walls-Culotta deteriorated, and her efforts to bring the School District into compliance with the IDEA were frustrated. Plaintiff then contacted School Board Member Charles Mitchell directly to discuss her concerns about the School District's IDEA

3

noncompliance. Following her phone call to Mr. Mitchell, Plaintiff alleges that she was given several written reprimands and/or negative evaluations by Defendant Walls-Culotta which were contrary to her previous positive and complimentary evaluations. Plaintiff contends that these reprimands were a pretext for Defendants' anger with Plaintiff for continuing to raise the issue of the School District's noncompliance with the IDEA.

On April 6, 2004, Plaintiff met with Carol Schreffler, Assistant Superintendent/Personnel Director/Special Education Director, Wayne Dukes, President of the Teacher's Union, and Defendant Walls-Culotta. At this meeting, Plaintiff was informed that the School Board would not be renewing her contract. Plaintiff contends that she was terminated in retaliation for her efforts to bring the School District into compliance with the IDEA.

**STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). When considering a motion to dismiss, a court must accept as true all allegations in the complaint and must draw all reasonable

4

factual inferences in the light most favorable to the plaintiff. <u>Neitzke v. Williams</u>, 490 U.S. 319, 326 (1989); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255 (3d Cir. 1994). The Court is "not required to accept legal conclusions either alleged or inferred from the pleaded facts." <u>Kost</u>, 1 F.3d at 183. Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45 (1957). The burden of demonstrating that the plaintiff has failed to state a claim upon which relief may be granted rests on the movant. <u>Young v. West Coast Industrial Relations Assoc., Inc.</u>, 763 F. Supp. 64, 67 (D. Del. 1991) (citations omitted).

As a general matter, a court may not consider matters outside the pleadings when adjudicating a motion to dismiss. However, a court may consider "document[s] integral to or explicitly relied upon in the complaint" without converting a motion to dismiss to a motion for summary judgment. <u>In re Rockefeller Center Properties, Inc. Securities Litigation</u>, 184 F.3d 280, 287 (3d Cir. 1999).

5

## DISCUSSION

### I. Whether Plaintiff's Federal Claims Should Be Dismissed

#### A. Whether Plaintiff's Claim Under The Rehabilitation Act Should Be Dismissed

Like the Americans with Disabilities Act (the "ADA"), Section 504 of the Rehabilitation Act includes an anti-retaliation provision which protects an individual engaged in a protected activity regardless of whether he or she is disabled. The elements required to establish a claim of retaliation under the Rehabilitation Act are the same as those required for a claim of retaliation under Title VII and the ADA. Krouse v. American Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997). Specifically, a prima facie case of retaliation under the Rehabilitation Act requires the plaintiff to show (1) he or she was engaged in protected activity; (2) the alleged retaliator knew the plaintiff was involved in protected activity[2]; (3) adverse action was taken by the employer either after or contemporaneous with the

---

[2] The Third Circuit does not necessarily require the plaintiff to show that the alleged retaliator knew that the plaintiff was engaged in protected activity. Krouse, 126 F.3d at 500 (listing only three elements of the prima facie case). However, at least one court in this Circuit has added this element to the prima facie case, see P.N. v. Greco, 282 F. Supp. 2d 221, 242 (D.N.J. 2003) (citing Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138, 148 (2d Cir. 2002)), and for purposes of responding to Defendants' Motion, Plaintiff has included this element in discussing the requirements for the prima facie case. (D.I. 27 at 7). Accordingly, the Court will address the element of whether the alleged retaliator knew plaintiff was engaged in protected activity.

6

employee's protected activity; and (4) a causal connection exists between the protected activity and the adverse action. Id.

       1.   Whether Plaintiff was engaged in a protected activity

As a threshold matter, Defendants contend that Plaintiff's allegations do not demonstrate that she engaged in protected activity. Specifically, Defendants contend that Plaintiff has not specifically identified any illegal activity by the School District, and her suggestions regarding streamlining the process for disability eligibility evaluations do not amount to "opposition to illegal activity." As Defendants recognize, however, a plaintiff alleging a claim of retaliation need not demonstrate that the conduct he or she opposed was actually a violation of the law, so long as he or she possessed a reasonable, good faith belief that the underlying actions of the employer violated the law. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996) (discussing a Title VII retaliation case). Thus, Plaintiff need not identify any actual violations of the Rehabilitation Act to state a claim upon which relief may be granted. In this case, Plaintiff has alleged that she advocated on behalf of disabled students and their parents in an attempt to correct what she believed were instances of noncompliance with the IDEA. Courts have recognized that such activity is properly considered protected activity for the purposes of establishing a prima facie case of retaliation under

the Rehabilitation Act. See e.g., Sweet v. Tigard-Tualatin School District, 2005 WL 19531, *2 (9th Cir. 2005) (holding that a school psychologist's reports of potential IDEA violations constituted protected activity); P.N. v. Greco, 282 F. Supp. 2d 221 (D.N.J. 2003) (holding that advocacy on behalf of disabled student is protected activity). Construing the allegations of the Complaint in the light most favorable to Plaintiff, her allegations are not mere suggestions regarding procedures but complaints concerning the School District's alleged noncompliance with the requirements of the IDEA. That Plaintiff's complaints may have concerned procedural issues does not diminish their status as protected activity, because the procedural rights afforded to students and parents under the IDEA are considered as important as the IDEA's substantive rights. Board of Education v. Rowley, 458 U.S. 176, 205-206 (1982). Accordingly, the Court concludes that Plaintiff has adequately alleged that she was engaged in protected activity for purposes of withstanding Defendants' Motion To Dismiss.

      2.    Whether Plaintiff has alleged that Defendants knew she was engaged in protected activity

To the extent that Plaintiff is required to allege that Defendants were aware that she was engaging in protected activity, the Court likewise concludes that Plaintiff's allegations are sufficient, at this juncture, to satisfy this element of the prima facie case. Plaintiff alleges that she

8

brought her complaints about IDEA noncompliance to the attention of the School District by apprising her supervisor, Defendant Walls-Culotta, and others of the alleged violations and by conferring with at least one member of the School Board. Plaintiff's allegations are amplified and supported by the exhibits referenced in and attached to her Complaint.

>   3.  Whether Plaintiff has alleged an adverse employment action taken after or contemporaneously with her protected activity

As for the third requirement of the prima facie case, Plaintiff must show that an adverse employment action was taken after or contemporaneous with her protected activity. Here, Plaintiff alleges that she received several written reprimands and/or negative evaluations shortly after approaching a School Board Member about the alleged incidences of IDEA noncompliance, and was, within five or six weeks thereafter, terminated from her employment in the form of a decision by the School Board not to renew her contract. Plaintiff further contends that these reprimands were a pretext for Defendants' anger at Plaintiff for insisting that the School District come into compliance with the IDEA.

Defendants contend that these reprimands were not in response to complaints raised by Plaintiff concerning alleged violations of the IDEA, but in response to Plaintiff's unprofessional behavior. In the Court's view, however,

9

Defendants' arguments are more appropriately considered in the context of summary judgment proceedings concerning the issue of whether Defendants had a legitimate, non-retaliatory reason for the adverse employment actions that were taken against Plaintiff, rather than in the context of determining whether Plaintiff has adequately pled a claim for retaliation for purposes of withstanding a motion to dismiss. Weston v. Pennsylvania, 251 F.3d 420, 430 (3d Cir. 2001) (holding in the context of summary judgment that written reprimands were not sufficient adverse employment action where plaintiff could not establish a significant change in his employment status). Accordingly, the Court concludes at this juncture that Plaintiff has alleged adverse employment actions taken by her employer after or contemporaneously with her protected activity.

    4.    Whether Plaintiff has alleged a causal connection between her protected activity and the adverse employment action

Lastly, Plaintiff is required to show a causal connection between her protected activity and the adverse employment actions. In evaluating this causation prong, the Third Circuit has recognized that "temporal proximity between the protected activity and the [adverse employment action] is [itself] sufficient to establish a causal link." Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir. 2003) (quoting Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997)). However,

10

temporal proximity alone will be insufficient to establish the necessary causal connection, unless the temporal relationship is "unusually suggestive." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000) (citations omitted).

In this case, Plaintiff's first written reprimand was dated one week after she contacted a Board Member to express her concerns over the School District's alleged noncompliance with the IDEA. Within five weeks of speaking to the Board Member, Plaintiff received three written reprimands and/or negative evaluations and was shortly thereafter effectively terminated from her position as a result of the Board's decision not to renew her contract. In the Court's view, the timing of these actions is sufficiently suggestive to demonstrate a causal connection for purposes of withstanding dismissal at this juncture.

In sum, the Court concludes that Plaintiff's Complaint adequately states a claim for retaliation under the Rehabilitation Act for purposes of Federal Rule of Civil Procedure 12(b)(6). Accordingly, the Court will deny Defendants' Motion To Dismiss Plaintiff's retaliation claim under the Rehabilitation Act.

    B.    <u>Whether Plaintiff's First Amendment Retaliation Claim Should Be Dismissed</u>

To state a claim of retaliation under the First Amendment, the plaintiff must allege (1) that the activity at issue is

11

protected by the First Amendment, and (2) the protected activity was a substantial factor in the alleged retaliatory action. Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006). The first prong presents a question of law, and the second prong presents a question of fact. Id.

A public employee's statement is protected activity when (1) the employee is speaking as a citizen; (2) the statement involves a matter of public concern; and (3) the government employer does not have adequate justification for treating the employee differently from any other member of the general public as a result of the statement he or she made. Garcetti v. Ceballos, 126 S. Ct. 1951, 1958 (2006). When a public employee makes a statement pursuant to his or her "official duties," the public employee is not speaking as a citizen.

After reviewing the allegations of Plaintiff's Complaint in the light most favorable to Plaintiff, the Court concludes that Plaintiff has not alleged that she was speaking as a citizen when she voiced her concerns about alleged IDEA violations. In her Complaint, Plaintiff states:

> In August 2003, [Defendant Walls-Culotta] re-wrote [Plaintiff's] job description. [Defendant Walls-Culotta] re-engineered the job description to prevent [Plaintiff's] input on incidences of non-compliance with IDEA regulations. [Plaintiff] was now to report any alleged IDEA violations to [Defendant Walls-Culotta] and/or [Defendant] Huber, who could then decide what, if any, action to take, and in the process look like the knew the law/requirements.

12

(D.I. 1 at ¶ 18). The clear import of Plaintiff's allegation is that her job duties always entailed reporting alleged incidences of IDEA noncompliance, but that Defendant Walls-Culotta changed the individuals to whom those reports were to be made. This reading of Plaintiff's Complaint is confirmed by her subsequent allegation that she could no longer "address[] each incident [of noncompliance] with the specific, noncompliant staff member" involved, but had to go "'behind the lines'" by going directly to [Defendant Walls-Culotta] and/or [Defendant] Huber with each and every incident of noncompliance." (Id. at ¶ 19). Further, both in the allegations of her Complaint and the exhibits attached thereto, Plaintiff repeatedly refers to the "insubordination" of staff members whom she confronted with alleged IDEA violations, but who ignored her. In the Court's view, the fact that Plaintiff acknowledges her authority to approach these individuals directly and characterizes their refusal to comply with her requests as "insubordination" infers that Plaintiff was approaching these individuals as part of her official duties as School Psychologist and/or Special Education Coordinator. See e.g. Hill, 455 F.3d at 242 (concluding that public employee's speech was not protected where plaintiff's complaint alleged that he received complaints about co-worker and reported those complaints "as part of his duties as Manager and otherwise"). That Plaintiff's job responsibilities included commenting on

13

procedures like those involved with IDEA compliance is further demonstrated by the Job Analysis forms attached to Plaintiff's Complaint. These forms solicit Plaintiff's opinions concerning procedure used during IEP meetings and indicate that Plaintiff met with Defendants to discuss forms and meeting procedures that were used in the School District.

In sum, the Court concludes that Plaintiff has failed to allege that her statements concerning alleged IDEA noncompliance were made in her role as a citizen. Instead, the Court is persuaded that the allegations of Plaintiff's Complaint and the exhibits attached thereto establish the opposite, that Plaintiff was speaking in connection with her official duties as School Psychologist and/or Special Education Coordinator. Indeed, some of Plaintiff's concerns went to the very heart of the manner in which Plaintiff carried out her job, and therefore, the Court concludes that Plaintiff has not established that her speech was protected by the First Amendment. Accordingly, the Court will dismiss Plaintiff's First Amendment retaliation claim.

    C.    <u>Whether Plaintiff's Claims Against Defendant Huber Should Be Dismissed</u>

Defendants contend that Plaintiff's Complaint fails to state a claim against Defendant Huber. Defendants point out that Defendant Huber was not Plaintiff's supervisor at the time of her dismissal, and Defendants contend that Plaintiff has not alleged that Defendant Huber took any adverse employment actions against

14

her.

In response, Plaintiff contends that Defendant Huber was "an active participant" in the wrongs committed against Plaintiff. Plaintiff contends that Defendant Huber was in a "position of heightened responsibility, especially with regard to issues involving special education, or disabled, students" as both Vice Principal and Supervisor of Special Education. Despite his "heightened" responsibilities, Plaintiff contends that Defendant Huber ignored e-mails and memoranda directly addressed to him concerning alleged noncompliance with the IDEA. (D.I. 27 at 22).

To establish a claim pursuant to 42 U.S.C. § 1983 for retaliation under the First Amendment, the plaintiff must, as a threshold matter, demonstrate that he or she was deprived of a Constitutional right by a person acting under color of state law. Generally, to act under the color of state law, the alleged wrongdoer must occupy a supervisory position over the plaintiff. Bonenberger v. Plymouth Township, 132 F.3d 20, 23-25 (3d Cir. 1997). However, the alleged wrongdoer need not have the authority to hire, fire, or issue regular evaluations of the plaintiff, so long as he or she regularly supervises the plaintiff. In this regard, the Third Circuit has recognized that "[t]here is simply no plausible justification for distinguishing between the abuse of state authority by one who holds the formal title of supervisor, on the one hand, and abuse of state

15

authority by one who bears no such title but whose regular duties nonetheless include a virtually identical supervisory role, on the other . . ." Id. at 23-24.

Although Defendant Huber was Plaintiff's supervisor during her tenure as Special Education Coordinator, Plaintiff does not allege that any adverse employment action was taken against her by Defendant Huber during this time. Plaintiff alleges that once she voluntarily resigned her position as Special Education Coordinator, "supervision of her School Psychologist position was . . . placed with the Principal, [Defendant Walls-Culotta]." (D.I. 1, ¶ 2). Plaintiff suggests that Defendant Huber's job titles as "Vice Principal" and "Supervisor of Special Education" are sufficient to make him an active participant in the alleged wrongs against Plaintiff. However, the Third Circuit has made it clear that formal titles are not dispositive. Bonenberger v. Plymouth Township, 132 F.3d at 23-24. Rather, the operative question is whether the individual assumed a supervisory role over the Plaintiff. In this case, Plaintiff has not alleged that Defendant Huber had any supervisory power over Plaintiff's daily activities, and Plaintiff has not alleged that Defendant Huber took any adverse employment action against her. Accordingly, the Court concludes that Plaintiff has failed to state a claim for relief against Defendant Huber, and therefore, the Court will grant Defendants' Motion To Dismiss each of Plaintiff's claims

16

against Defendant Huber.

**II. Whether Plaintiff's State Law Claim Should Be Dismissed**

In Count III of her Complaint, Plaintiff alleges a claim under Delaware law for wrongful termination in violation of public policy. Defendants' argument that Plaintiff's state law claim should be dismissed is premised on their arguments that Plaintiff's claims under the Rehabilitation Act and the First Amendment fail. Because the Court has concluded that Plaintiff has stated a claim under the Rehabilitation Act, the Court declines to dismiss Plaintiff's state law claim at this juncture.

**III. Whether Defendants Are Entitled To A More Definite Statement**

In the event that the Court concludes that Plaintiff's claims should not be dismissed for failure to state a claim, Defendants request, in the alternative, that the Court require Plaintiff to file a more definite statement. Defendants contend that Plaintiff has failed to identify any IDEA violations in her Complaint. Defendants also contend that Plaintiff has failed to identify any individuals who were deprived of an educational opportunity or not permitted to meaningfully participate in their child's IEP plan.

Federal Rule of Civil Procedure 8(a) requires only that the Complaint contain a "short, plain statement of the claim showing that the pleader is entitled to relief." However, a party may move for a more definite statement under Federal Rule of Civil

Procedure 12(e) "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading . . . " Rule 12(e) motions are typically disfavored, see Wellington Power Corp. v. Lockheed Martin, 2006 WL 266809, *1 (W.D. Pa. Sept. 15, 2006), and relief is only granted in the "rare case" where the complaint is so vague or incomprehensible that the defendant cannot frame a responsive pleading. Schaedler v. Reading Eagle Publications, Inc., 370 F.2d 795, 798 (3d Cir. 1967)

In this case, the Court concludes that Plaintiff has satisfied the requirements for notice pleading under Rule 8, and her Complaint is not so vague or incomprehensible as to preclude Defendants from framing an adequate response. As the Court has previously concluded, Plaintiff is not required to allege specific IDEA violations to state a claim for relief. To the extent that further development of Plaintiff's allegations is required, the Court concludes that such additional details are the appropriate subject of discovery. 5C Wright & Miller, Federal Practice & Procedure 1376 & 1378 (recognizing that Rule 12(e) is not a substitute for discovery). Accordingly, the Court will deny Defendants' alternative request for a more definite statement.

## CONCLUSION

For the reasons discussed, the Court will grant-in-part and deny-in-part Defendants' Renewed Motion To Dismiss For Failure To State A Claim Or, In The Alternative, Motion For A More Definite Statement (D.I. 24). Specifically, Defendants' Motion is granted with respect to Plaintiff's claim for retaliation under the First Amendment and her claims against Defendant Huber and denied in all other respects.

An appropriate Order will be entered.