IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DOROTHY HOULIHAN<br>19576 Beaver Damn Road<br>Lewes, DE 19958 | * <br> * | |
| Plaintiff | * | |
| v. | | Civil Action No.: 05-194-JJF |
| | * | |
| SUSSEX COUNTY VOCATIONAL-<br>TECHNICAL SCHOOL DISTRICT<br>17137 County Seat Highway<br>Georgetown, DE 19947 | * <br><br> * <br> * | DEMAND FOR JURY TRIAL |
| SUSSEX COUNTY VOCATIONAL-<br>TECHNICAL SCHOOL DISTRICT<br>BOARD OF EDUCATION<br>P.O. Box 351<br>Georgetown, DE  19947 | * <br> * <br> * <br> * | |
| SANDRA WALLS-CULOTTA<br>Individually, and in her Official capacity<br>6 East Clarke Street<br>Milford, DE 19963 | * <br> * <br> * | |
| Defendants | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## AMENDED COMPLAINT

### PREAMBLE

The Amended Complaint is filed by Plaintiff to correct a misnomer and delete references to Defendant Steven Huber in accordance with this Court's Order of November 16, 2006. Plaintiff in its Amended Complaint does not assert any new causes of action, and in filing the Amended Complaint, Plaintiff does not abandon or withdraw her original Complaint, and the filing of the Amended Complaint is intended to relate back to the filing of the original Complaint.

### NATURE OF THE CASE

COMES NOW, Plaintiff, Dorothy Houlihan ("Ms. Houlihan"), and through counsel files this Complaint against her former employer, Sussex County Vocational-Technical School District ("STSD"), and Sussex County Vocational-Technical School District Board of Education (the "Board"), Sandra Walls-Culotta ("Ms. W-C"), asserting claims for violation of

the Rehabilitation Act, 29 U.S.C. §794(d), in violation of her First Amendment rights under 42 U.S.C. Section 1983, and wrongful termination.  Ms. Houlihan contends Defendants committed such violations by terminating her by virtue of her attempts to bring STSD into compliance with the Individuals with Disabilities Education Act ("IDEA").

## PARTIES

1. Ms. Houlihan is a resident of Sussex County, in the State of Delaware.

2. STSD is a school district organized as an agency of the State of Delaware.

3. The Board is the governing entity responsible for the actions of STSD.

4. Ms. W-C, at all relevant times, was the Principal of Sussex Technical High School (the "High School).

5. <u>Intentionally omitted.</u>

## JURISDICTION

6. This case is a civil action arising under the laws of the United States. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. §1331.

7. The events giving rise to Plaintiff's claims occurred in Delaware.  STSD maintains its administrative office in Delaware and there is no district in which this action may otherwise be brought.  Accordingly, venue lies in this Court, pursuant to 28 U.S.C. §1391(b).

## FACTS COMMON TO ALL COUNTS

8. Ms. Houlihan began working as a School Psychologist for the High School on October 8, 2001.  Supervision of her position was placed with the Vice Principal, Mr. Huber.

9. Beginning immediately, Ms. Houlihan began to bring to the attention of STSD and Mr. Huber various incidents of non-compliance with the IDEA.  ***See memo dated 10/22/2001, attached hereto as Exhibit 1, and incorporated by reference herein.***

10. In September 2002, Ms. Houlihan was asked by STSD to assume the position of Special Education Coordinator.  She was asked to assume this position *in addition to* her position and responsibilities as School Psychologist.  Ms. Houlihan agreed to take on the additional position.

11. Shortly into her position as Special Education Coordinator, Ms. Houlihan discovered that her two positions often came into conflict.  She found that the position of School Psychologist conflicted with the position of Special Education Coordinator.  Ms. Houlihan felt that her commitment to two positions (with no obvious support for either one)

effectively diluted her authority among teaching staff, creating repeated incidents of noncompliance and insubordination. *See memo dated 2/4/2003, attached hereto as Exhibit 2, and incorporated by reference herein.* Accordingly, in March 2003, Ms. Houlihan asked to be relieved of the Special Education Coordinator position.

12. Ms. Houlihan was removed from the Special Education Coordinator position, and supervision of her School Psychologist position was then placed with the Principal, Ms. W-C.

13. Ms. Houlihan continued to bring to light incidents of non-compliance with the IDEA. She tried to implement IDEA-required steps (which had been blatantly missing) into Special Education Meetings, and was accused of dragging out meetings, and being unfocused.

14. Ms. Houlihan pointed out one teacher's illegal state assessment accommodation, and was accused of attacking staff.

15. Instead of correcting IDEA violations, STSD criticized Ms. Houlihan as being uncooperative.

16. Several times, Ms. Houlihan was told that she was making various members of the administration look bad (because she knew the IDEA requirements and they did not).

17. Ms. Houlihan was also told that the school had been doing things this way for 12 years now and the staff simply did not want to change. She was told that her expectations were too high, and that she must learn how to "go with the flow."

18. In August 2003, Ms. W-C re-wrote Ms. Houlihan's job description. Ms. W-C re-engineered the job description to prevent Ms. Houlihan's input on incidences of non-compliance with IDEA regulations. Ms. Houlihan was now to report any alleged IDEA violations to Ms. W-C and/or Mr. Huber, who then could decide what, if any, action to take, and in the process look like they knew the law/requirements.

19. From this point forward, relations between Ms. Houlihan and Ms. W-C deteriorated, as Ms. Houlihan continued to fight for STSD to comply with the IDEA, but now had to do so "behind the lines," by going directly to Ms. W-C and/or Mr. Huber with each and every incident of non-compliance, rather than addressing each incident with the specific, noncompliant staff member. *See emails attached hereto as Exhibit 3, and incorporated by reference herein.* For each incident of non-compliance reported by Ms. Houlihan, Ms. W-C and/or Mr. Huber refused to acknowledge Ms. Houlihan's expertise, and in fact, often blatantly refuted Ms. Houlihan's recommendations, thereby ensuring STSD's perpetual non-compliance with the IDEA. *See, for example, memos and emails attached hereto as Exhibit 4 and incorporated by reference herein.*

20. After repeatedly being frustrated by Ms. W-C and Mr. Huber in her attempts to bring STSD into compliance with the IDEA, Ms. Houlihan finally turned to STSD Board member Charles Mitchell ("Mr. Mitchell"). On February 26, 2004, Ms. Houlihan contacted

3

Mr. Mitchell directly to express her concerns regarding the issues of IDEA non-compliance occurring at STSD.

21. While waiting for the Board to act, Ms. Houlihan continued to identify instances of noncompliance. ***See, for example, emails attached hereto as Exhibit 5 and incorporated by reference herein.***

22. Following her phone call to the Board, rather than coordinating with Ms. Houlihan to ascertain what steps were needed to assure compliance with the IDEA, Ms. W-C and STSD sent Ms. Houlihan numerous written reprimands within the very next month. ***See Letters, attached hereto as Exhibit 6 incorporated by reference herein.***

23. All previous written evaluations in Ms. Houlihan's personnel file were quite positive and complimentary, as well as were all evaluations from any previous school districts which had employed Ms. Houlihan. ***See Evaluations, attached hereto as Exhibit 7, and incorporated by reference herein.***

24. The three written reprimands sent to Ms. Houlihan in the month of March 2004 were mere pretext for the real reason that Defendants were angry with Ms. Houlihan: her continued insistence that STSD come into complete compliance with the IDEA.

25. On April 6, 2004, Ms. Houlihan met with Carol Shreffler (Assistant Superintendent/Personnel Director/Special Education Director), Wayne Dukes (President of Teacher's Union) and Ms. W-C. At this meeting, Ms. Houlihan was informed that the Board had met the day before and voted not to renew Ms. Houlihan's contract. Thus, on April 6, 2004, Ms. Houlihan was effectively terminated.

26. Ms. Houlihan was terminated because of her efforts to bring STSD into compliance with the IDEA.

27. As a direct and proximate consequence of her termination, Ms. Houlihan suffered a loss of income and economic benefits and endured emotional distress, mental anguish, humiliation, and harm to her reputation.

28. The above described actions of Defendant Ms. W-C were taken in reckless, willful and wanton disregard of Plaintiff's rights.

## CAUSES OF ACTION

### COUNT I
(The Rehabilitation Act)

29. The facts alleged above are incorporated by reference.

4

30. By terminating Ms. Houlihan because of her efforts to bring STSD into compliance with the IDEA, Defendants failed to meet the individual educational needs of handicapped persons, and discriminated against Ms. Houlihan because she opposed such failures, proximately causing her to suffer the damages alleged above.

## COUNT II
(42 U.S.C. Section 1983-First Amendment Retaliation)

31. The facts alleged above are incorporated by reference.

32. By terminating Ms. Houlihan because she complained of violations of federal statute and regulations at various public meetings, Defendants violated Ms. Houlihan's rights under Section 1983 and the First Amendment of the U.S. Constitution, proximately causing her to suffer the damages alleged above.

## COUNT III
(Wrongful Termination)

33. The facts alleged above are incorporated by reference.

34. By terminating Ms. Houlihan because she asserted her First Amendment rights, as well as the rights of handicapped individuals under the IDEA, Defendants wrongfully terminated Ms. Houlihan in violation of public policy, proximately causing her to suffer the damages alleged above.

## PRAYERS FOR RELIEF

As relief for her claims asserted above, Plaintiff prays the following relief:

## COMPENSATORY DAMAGES
(As to Defendant Walls-Culotta)

1. Plaintiff prays for an award of compensatory damages against Defendant Walls-Culotta, in her individual capacities, jointly and severally.

## PUNITIVE DAMAGES
(As to Defendant Walls-Culotta)

2. Plaintiff prays an award of punitive damages against Defendant Walls-Culotta, in her individual capacity, jointly and severally.

### INJUNCTIVE, DECLARATIVE AND EQUITABLE RELIEF
(As to all Defendants)

3. Plaintiff prays that she be reinstated to her School Psychologist position at STSD, and awarded corollary injunctive relief, including, but not limited to, front pay.

4. Plaintiff prays a declaratory judgment pronouncing Defendants to have violated Plaintiff's rights under the Rehabilitation Act and 42 U.S.C. Section 1983-First Amendment.

### ATTORNEY'S FEES AND COSTS
(As to all Defendants)

5. Plaintiff prays an assessment of reasonable attorney's fees and costs against all Defendants.

### OTHER RELIEF
(As to all Defendants)

6. Plaintiff prays such other and further relief as the nature of Plaintiff's cause may warrant.

_____/s/_____
Brian F. Dolan
Stumpf, Vickers & Sandy, P.A.
8 West Market Street
Georgetown, DE 19947


_____/s/_____
Robin R. Cockey
Cockey, Brennan & Maloney, P.C.
313 Lemmon Hill Lane
Salisbury, MD 21801

Attorneys for Plaintiff

S:\Staff\rcockey\ACTIVE CASES\Houlihan\Complaint\pld_Amended Complaint.doc